DAVE FOX (Bar No. 254651)
JOANNA FOX (Bar No. 272593)
COURTNEY VASQUEZ (Bar No. 267081)
**FOX LAW, APC**
225 W. Plaza Street, Suite 102
Solana Beach, CA 92075
Tel:  858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

TY STEWART, JOCELYN
FIELDING, LAUREENE BUCK
and ANNA ALTOMARE,
individually and on behalf of all
others similarly situated,

              Plaintiffs,

v.

KODIAK CAKES, LLC, a Delaware
limited liability company,

              Defendant.

CASE NO.  **'19CV2454 MMA MSB**

**CLASS ACTION**

**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiffs Ty Stewart, Jocelyn Fielding, Laureene Buck, and Anna Altomare (collectively, "Plaintiffs") bring this class action against Kodiak Cakes, LLC ("Defendant" or "Kodiak Cakes"), individually and on behalf of all others similarly situated, and allege the following upon personal knowledge as to Plaintiffs' acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiffs' attorneys.

# I

# INTRODUCTION

1.    Kodiak Cakes manufactures, markets, advertises, and sells a line of packaged breakfast and snack products. The company is most recognized for its pancake and waffle products, that comes in two forms: "just add water" mixes[1] or pre-made frozen flapjacks and waffles. Today, Kodiak Cakes is self-proclaimed as the "the best-selling pancake brand in its industry."[2]

2.    Since its inception, Kodiak Cakes' product line has expanded to include other products such as baking mixes for cookies, muffins, brownies, breads, and an all-purpose baking mix. The Kodiak Cakes product line also includes other breakfast and snack products such as syrups, oatmeal, and graham crackers, among others.

3.    Plaintiffs here bring five counts against Kodiak Cakes based on two overarching issues with Kodiak Cakes' products: (1) non-functional slack fill and (2) deceptive marketing practices.

## NON-FUNCTIONAL SLACK FILL

4.    California has a Fair Packaging and Labeling Act to prevent companies from misleading consumers about the amount of a given product contained within a package they are purchasing.

---

1 The "just add water" mixes are available in traditional multi-serving boxes, or also in single serving Kodiak Cups.
2 *https://kodiakcakes.com/bear-together/it-all-started-with-a-little-red-wagon/* (last visited, October 2, 2019.)

5.      Kodiak Cakes engages in a uniform packaging scheme for its waffle, flapjack and baking mixes (collectively "cooking mixes") that conceals the amount of the product actually contained in the package and misleads consumers into believing there is more product inside the packaging than there actually is.

6.      At all relevant times, Kodiak Cakes has sold its cooking mixes in an entirely non-transparent box that resembles cardboard.  The box is filled substantially less than the capacity of the package by more than half.  This packaging entirely conceals the amount of product actually contained therein and prevents consumers from directly seeing or handling the product inside the packaging to facilitate value comparisons.  This deceptive packaging leads the reasonable consumer to believe that the package contains substantially more product than it actually does.



*Slack fill Demonstration*

-2-

7.      Kodiak Cakes' deceptive and misleading practice of filling less than half of the opaque box with its cooking mixes misrepresents the products as having quantities that they do not have.

8.      Plaintiffs are informed and, on that basis, believe that the empty space inside the package is for no functional purpose and therefore consists of non-functional slack fill in violation of California's Fair Packaging and Labeling Act and related consumer fraud statutes alleged herein.

## DECEPTIVE MARKETING CLAIMS

9.      Kodiak Cakes deceptive sales practices extend to its labeling, marketing and advertising claims as well.  Defendant's advertising and marketing scheme focus on the following misleading claims that are materially the same for all its products.  These central and uniform claims fall into three main categories (collectively referred to hereinafter as the "Claims") and affect the entirety of Kodiak Cakes' product line: Natural Claims, Health Claims, and Nutrient Claims.

| "Natural Claims" | "Health Claims" | "Nutrient Claims" |
| --- | --- | --- |
| *All-Natural* | *Healthy* | *Protein-Packed* |
| *Free of Artificial Additives* | *Nourishing* | |
| *Non-GMO* | | |
| *No Preservatives* | | |

10.     The Claims are the primary features that differentiate these products from other pancake, waffle, baking, breakfast and snack products that have dominated the market in the past such as Aunt Jemima, Bisquick, Krusteaz, and Betty Crocker, to name a few.

11.     At all relevant times, each of these Claims have been prominently featured on Kodiak Cakes' packaging and are uniform across Kodiak Cakes' advertising and marketing platform for the entire product line.  Thus, every

///

-3-

consumer, including Plaintiffs, are exposed to these Claims and rely upon them when deciding to purchase Kodiak Cakes products or pay a higher price for it.

12.    A reasonable consumer would expect that a product branded and marketed with these Claims does in fact contain the characteristics and qualities as packaged, labeled, marketed and advertised.  Consequently, Kodiak Cakes' uniform advertising and marketing scheme is designed to cause consumers to purchase Kodiak Cakes products *because of* these deceptive messages.  Defendant has succeeded.



*Examples of Kodiak Cakes' Packaging of Top Selling*
*Buttermilk Flapjack and Waffle Mix*

13.    Plaintiffs and other consumers have reasonably relied upon Defendant's deceptive advertising and packaging in purchasing Kodiak Cakes products.  If Plaintiffs and other consumers had known the Claims were false and known the actual amount of the product contained inside the box of the flapjack, waffle and baking mixes, they would not have purchased the Kodiak Cakes

-4-

products or, alternatively, would have paid less for these products. Therefore, Plaintiffs and other consumers similarly situated have suffered injury-in-fact as a result of Defendant's deceptive, false and misleading practices.

14. As a result, Plaintiffs bring this action on behalf of themselves and other similarly situated consumers in the United States to halt these wrongful practices, to halt the dissemination of Defendant's false and misleading advertising message, to correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased Kodiak Cakes products. Plaintiffs allege violations of the California's Consumers Legal Remedies Act §§ 1750 *et seq.* ("CLRA"), Unfair Competition Law §§ 17200 *et seq.* ("UCL"), False Advertising Law §§ 17500, *et seq.* ("FAL"), breach of express warranty, restitution based upon quasi contract and unjust enrichment created by Defendant's false, deceptive and mislead advertising, labeling and packaging.

## II

## THE PARTIES

### *Plaintiff Ty Stewart*

15. Plaintiff Ty Stewart is a resident of San Diego County, and over the age of eighteen (18) years. Mr. Stewart is an athlete and an avid gym-goer. Consistent with his interest, Mr. Stewart strives to find food products that are healthy, all-natural and free of artificial and synthetic ingredients, contain no preservatives, are high in protein, and are non-GMO.

16. Mr. Stewart purchased Kodiak Cakes products on several occasions over the past few years at various stores in San Diego County, most frequently the Target store located at 3245 Sports Arena Blvd, San Diego, CA 92110. He purchased various products including Kodiak Cakes flapjack and waffle products and, in more recent years, baking mixes.

17. Each time he purchased a Kodiak Cakes cooking mix, Mr. Stewart believed that the package contained substantially more mix inside than it actually

did.  If he would have known that the package was only filled halfway or less, he would not have purchased the products or, alternatively, would have paid less for the products.

18.    When purchasing Kodiak Cakes products, Mr. Stewart was exposed to, read and relied upon each of the following claims that were prominently displayed on the outer label of the products he purchased that these products were "nourishing," "protein-packed," contained "no preservatives," were "free of artificial additives" and were "non-GMO."

19.    Mr. Stewart most recently purchased Kodiak Cakes products in May 2019 through the Kodiak Cakes online store.  This purchase included some of the Kodiak Cakes baking mixes including the Chocolate Chip Blondie Brownie Mix, the Frontier Cookie Mix, and the Double Dark Chocolate Muffin Mix.  When making this purchase, Mr. Stewart was exposed to, read, and relied upon the Claims made about these products on Kodiak Cakes' online store:

**Description:**
Kodiak Cakes Double Dark Chocolate Muffin Mix balances nutrition with the rich flavor of cocoa and semisweet chocolate chips. This easy-to-prepare muffin mix creates a moist, delicious, and healthy muffin you'll be glad you baked after you finish a tough workout or busy morning at the office. Crafted from all-natural ingredients and 100% whole grains, each protein-packed muffin is a nourishing treat you can feel good about indulging in.

*Example of Product Description on the Kodiak Cakes Online Store During the Class Period for the Double Dark Chocolate Muffin Mix*

///

///

///

1
2
3
4
5
6
7
8
9

**Features:**
- 100% whole grains are a good source of essential nutrients and dietary fiber
- 8 grams of protein as prepared make a more filling snack
- Made with freshly ground grains and no preservatives
- Non-GMO ingredients
- 12 servings per box

*Example of Product Description on the Kodiak Cakes Online Store During the Class Period for the Chocolate Chip Blondie Mix*

10      20.    Because of Mr. Stewart's exposure to these Claims, each time he
11  purchased Kodiak Cakes products, Mr. Stewart believed that Defendant's products
12  did in fact contain the claimed characteristics as labeled and advertised.

13      21.    Mr. Stewart relied on each of these misrepresentations in making his
14  decision to purchase the products and he would not have purchased Defendant's
15  products if he had known they did not in fact contain the claimed characteristics.
16  Mr. Stewart was injured in fact and lost money as a result of Defendant's improper
17  conduct.

18      22.    Alternatively, Mr. Stewart would not have paid as much as he did for
19  Defendant's products if he had known they did not in fact contain the claimed
20  characteristics. Mr. Stewart was injured in fact and lost money as a result of
21  Defendant's improper conduct.

22      ***Plaintiff Jocelyn Fielding***

23      23.    Plaintiff Jocelyn Fielding is a resident of San Diego County, and over
24  the age of eighteen (18) years. Health and fitness are important to Ms. Fielding
25  and she enjoys staying active in the outdoors. Consistent with this interest, Ms.
26  Fielding strives to find food products that are healthy, all-natural and free of
27  artificial and synthetic ingredients, contain no preservatives, are high in protein,
28  and are non-GMO.

24.    Ms. Fielding purchased Kodiak Cakes products on several occasions over the past few years at various stores in San Diego County, including Target stores.   She purchased various products including Kodiak Cakes' Flapjack and Waffle Mixes and several of Kodiak Cakes' frozen Power Waffles.  Ms. Fielding most recently purchased Kodiak Cakes' products in August 2019 at Target.  This purchase included Kodiak Cakes' Dark Chocolate Power Waffles and Buttermilk Flapjack and Waffle Mix.

25.    Each time she purchased the different varieties of flapjack and waffle mixes, Ms. Fielding believed that the package contained substantially more mix inside than it actually did.  If she would have known that the package was only filled halfway or less, she would not have purchased the products or, alternatively, would have paid less for the products.

26.    When purchasing these products, Ms. Fielding was exposed to, read and relied upon the Claims that were prominently displayed on the outer label of the products she purchased including claims that these products were "nourishing," "protein-packed," had "no preservatives," were "free of artificial additives" and were "non-GMO."

27.    Before Ms. Fielding purchased Kodiak Cakes products, Ms. Fielding had also been exposed to, read, and relied upon the Claims through Kodiak Cakes' online advertisements, on Kodiak Cakes social media profiles on Instagram and Facebook, on the Kodiak Cakes website and blog, and on Amazon.  She also recalls seeing the *Shark Tank* episode that aired on ABC which she also relied upon in deciding to purchase the Kodiak Cakes products.

28.    Because of Ms. Fielding's exposure to these Claims, each time she purchased Kodiak Cakes products, Ms. Fielding believed that Defendant's products did in fact contain these characteristics as labeled and advertised.

29.    Ms. Fielding relied on each of these misrepresentations in making her decision to purchase the products and she would not have purchased Defendant's

-8-

products if he had known they did not in fact contain all the claimed characteristics. Ms. Fielding was injured in fact and lost money as a result of Defendant's improper conduct.

30.    Alternatively, Ms. Fielding would not have paid as much as she did for Defendant's products if she had known they did not in fact contain all the claimed characteristics. Ms. Fielding was injured in fact and lost money as a result of Defendant's improper conduct.

### *Plaintiff Laureene Buck*

31.    Plaintiff Laureene Buck is a resident of San Diego County, and over the age of eighteen (18) years. Ms. Buck is a vegetarian and a mother of a young boy. Her son loves pancakes and enjoys baking with her. It is important to Ms. Buck to find breakfast items and baked goods for her son that are healthy, all-natural and free of artificial and synthetic ingredients, contain no preservatives and are non-GMO. Given Ms. Buck's vegetarian diet, it can be difficult to get enough protein in her diet and find filling snacks. Thus, Ms. Buck strives to purchase vegetarian foods that are high in protein and/or constitute an essential source of protein.

32.    Ms. Buck purchased Kodiak Cakes products on several occasions over the past few years at stores across San Diego County, including Costco and Target. She most often purchased various flavors of the Kodiak Cakes flapjack and waffle mixes and its baking mixes. Most recently, Ms. Buck purchased the Buttermilk Flapjack and Waffle Mix in August 2019 at the Costco located at 2345 Fenton Parkway, San Diego, CA 92108.

33.    Each time she purchased the different varieties of flapjack, waffle and baking mixes, Ms. Buck believed that the package contained substantially more mix inside than it actually did. If she would have known that the package was only filled halfway or less, she would not have purchased the products or, alternatively, would have paid less for the products.

CLASS ACTION COMPLAINT

34.     Each time Ms. Buck purchased these products, she was exposed to, read and relied upon the following claims that were prominently displayed on the outer label of the products she purchased including claims that these products were "nourishing," "protein-packed," contained "no preservatives," were "free of artificial additives" and were "non-GMO."

35.     Ms. Buck had also been exposed to, read, and relied upon the Claims made in the Kodiak Cakes marketing and advertising.  These included marketing claims and advertisements through Kodiak Cakes' online advertisements, on Kodiak Cakes' social media profiles on Instagram and Facebook, on the Kodiak Cakes website and blog, and on Amazon.

36.     Because of Ms. Buck's exposure to these Claims, each time she purchased Kodiak Cakes products, Ms. Buck believed that Defendant's products did in fact contain these characteristics as labeled and advertised.

37.     Ms. Buck relied on each of these misrepresentations in making her decision to purchase the products and she would not have purchased Defendant's products if she had known they did not in fact contain all the claimed characteristics.  Ms. Buck was injured in fact and lost money as a result of Defendant's improper conduct.

38.     Alternatively, Ms. Buck would not have paid as much as she did for Defendant's products if she had known they did not in fact contain all the claimed characteristics.  Ms. Buck was injured in fact and lost money as a result of Defendant's improper conduct.

### ***Plaintiff Anna Altomare***

39.     Plaintiff Anna Altomare is a resident of Los Angeles County, and over the age of eighteen (18) years.  Health and fitness are important to Anna and Cross-Fit is one of her passions.  Consistent with her interest, Ms. Altomare strives to find food products that are healthy, all-natural and free of artificial and synthetic ingredients, are without preservatives, are high in protein, and are non-GMO.

-10-

40.    Ms. Altomare purchased various Kodiak Cakes products on several occasions over the past few years at stores across Los Angeles County.  She purchased Kodiak Cakes Cups and several different varieties of baking mixes.

41.    When she purchased the baking mixes, Ms. Altomare believed that the package contained substantially more mix inside than it actually did.  If she would have known that the package was only filled halfway or less, she would not have purchased the products or, alternatively, would have paid less for the products.

42.    When purchasing these products, Ms. Altomare was exposed to, read and relied upon the following claims that were prominently displayed on the outer label of the products she purchased including claims that these products were "nourishing," "protein-packed," contained "no preservatives," were "free of artificial additives" and were "non-GMO."  She was also exposed to marketing and advertising of Kodiak Cakes promoting its products to CrossFit members and social media targeting gym members.

43.    Ms. Altomare also purchased Kodiak Cakes products online, including on the Kodiak Cakes online store and Target's online store.  Ms. Altomare most recently purchased the Double Chocolate Chunk, Triple Chocolate Brownie Mix, and the Chocolate Fudge Brownie Mix from the Kodiak Cakes online store.  Before buying these products, Ms. Altomare was exposed to, read, and relied upon the Claims made in the online store.

**Description:**
Whoever says brownies have to be a guilty indulgence have never tried Kodiak Cakes Chocolate Fudge Brownie Mix. Inspired by whole grain baking recipes from the frontier, this decadent, yet wholesome, fudge brownie mix is packed with protein and crafted from 100% whole grains and all-natural ingredients. The end result is just as simple: a better-tasting brownie you can feel good about eating.

*Example of Product Description on Kodiak Cakes' Online Store During the Class Period of the Chocolate Fudge Brownie Mix*

-11-

**Features:**
- Made with 100% whole grains for a healthy end to your day
- Three types of chocolate for a deep, rich flavor
- Non-GMO ingredients
- Made with freshly ground grains and no preservatives
- 12 servings per box

*Example of Product Description on Kodiak Cakes' Online Store During the Class Period of the Triple Chocolate Brownie Mix*

44.    Ms. Altomare was also exposed to, read, and relied upon these Claims made through Defendant's online advertisements, on Kodiak Cakes' social media profiles on Instagram and Facebook, on the Kodiak Cakes website and blog, and on Amazon.  She also recalls seeing the *Shark Tank* episode that aired on ABC before she began purchasing Kodiak Cakes products and the Claims made about the products on the show was one of Ms. Altomare's decision to purchase the products.

45.    Because of Ms. Altomare's exposure to these Claims, each time she made her purchases, Ms. Altomare believed that Defendant's products did in fact contain these characteristics as labeled and advertised.

46.    Ms. Altomare relied on each of these misrepresentations in making her decision to purchase the products and she would not have purchased Defendant's products if she had known they did not in fact contain all the claimed characteristics.  Ms. Altomare was injured in fact and lost money as a result of Defendant's improper conduct.

47.    Alternatively, Ms. Altomare would not have paid as much as she did for Defendant's products if she had known they did not in fact contain all the claimed characteristics.  Ms. Altomare was injured in fact and lost money as a result of Defendant's improper conduct.

-12-

*Defendant Kodiak Cakes*

48.     Plaintiffs are informed and, on that basis, believe that Defendant Kodiak Cakes is a privately held limited liability company established under the laws of Delaware, with its principal place of business located in Park City, Utah. Defendant manufactures, markets and sells Kodiak Cakes products throughout the United States, including in California.

49.     Defendant's first product to be marketed was the Kodiak Cakes Frontier Flapjack and Waffle Mix.  In 1995, the product was first sold to local gift shops and stores in ski towns like Park City, Utah and Sun Valley, Idaho.  Over nearly the next two decades, Kodiak Cakes slowly increased its product line, its brand exposure and sales of its products.  In November 2011, Kodiak Cakes landed a sales deal with the store Target.  Initially, Target was merely testing Kodiak Cakes flapjack and waffle mixes in about 40 stores across the nation.  However, by the following year, Kodiak Cakes could be found in all Target stores.

50.     Still, it was not until April 2014 when Kodiak Cakes was featured on ABC's hit television show *Shark Tank* that Kodiak Cakes sales really began to excel.  After *Shark Tank* aired, Kodiak Cakes products sold out at Target and Target introduced additional products from the Kodiak Cakes product line into its stores.  Sales rose from $3.6 million in 2013 to $6.7 million in 2014.[3]  In 2014, Kodiak Cakes Buttermilk Power Cakes became "the #1 selling pancake mix in the nation by September of that year."[4]

///

///

_____

3 Emily Canal, *This Startup Didn't Get a Deal on 'Shark Tank,' and That Helped Save It From Bankruptcy*, Inc.com (Apr. 3, 2018) *available at* https://www.inc.com/emily-canal/kodiak-cakes-shark-tank.html; *see also* https://www.cnbc.com/2018/08/08/how-kodiak-cakes-pancake-mix-became-a-bestseller-at-target.html (Kodiak Cakes did $3.5 million in sales in 2013).
4 *https://kodiakcakes.com/bear-together/no-noise-pancakes-til-now/* (lasted visited, October 2, 2019.)

-13-

51.    Thereafter, Kodiak Cakes continued to see rapid revenue growth. Sales rose from $6.7 million in 2015, to $16.5 million in 2016, to over $50 million in 2017 and a projection of $100 million in 2018.[5]

52.    In 2018, co-founder Joel Clark declared that Kodiak Cakes is "now the no. 1 best-selling pancake mix brand with a 54 percent category share, beating out big names like Aunt Jemima, and Bisquick."[6]

53.    Today, Kodiak Cakes is self-proclaimed as the "the best-selling pancake brand in its industry."[7]  It is an official food of Weight Watchers, Diabetic Living, and Shape Magazine.[8]  On Amazon, Kodiak Cakes boasts a no. 2 ranking in the fresh bakery breads category, and a no. 8 ranking in the pancakes and waffles mixes category.[9]

54.    Despite its success, this is not the first time Kodiak Cakes has been in violation of labeling laws.  Kodiak Cakes has misled and deceived its consumers before.  Just last year, in March 2018, Kodiak Cakes recalled its Blueberry Chia Energy Waffles because it had failed to disclose that the product contained milk, which posed the risk of serious or life-threatening allergic reactions to consumers of this product that had an allergy or sensitivity to milk.[10]  The improper labeling was discovered when a consumer notified Kodiak Cakes that a family member had a reaction to the product and that "milk" was not included in the allergen

---

5 *Id.; see also* Stephen Bronner, *This Entrepreneur Almost Quit Multiple Times, But After Appearing on 'Shark Tank' He Now Has a $100 Million Business* (May 7, 2018) *available at* https://www.entrepreneur.com/article/312400
6 Sarah Berger, *This family business was a 'Shark Tank' reject — now it's bringing in $100 million a year with the best-selling pancake mix at Target, available at* https://www.cnbc.com/2018/08/08/how-kodiak-cakes-pancake-mix-became-a-bestseller-at-target.html
7 *https://kodiakcakes.com/bear-together/it-all-started-with-a-little-red-wagon/* (last visited, October 2, 2019.)
8 Steven Khan, *Kodiak Cakes Update: What Happened After Shark Tank*, Gazette Review (Dec. 5, 2016) *available at https://gazettereview.com/2016/06/kodiak-cakes-update-shark-tank/*
9 *Supra,* note 6.
10 *https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/kodiak-cakes-issues-allergy-alert-undeclared-milk-kodiak-cakes-blueberry-chia-energy-waffles-1072-oz*

-14-

statement.[11]  The product was recalled in March 2018.

55.    At all times relevant herein, Defendant and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of Defendant, and at all times relevant herein, each were acting within the course and scope of that agency and employment.

56.    Whenever reference in this Class Action Complaint is made to any act by Defendant or its subsidiaries, affiliates, distributors, retailers, and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified, and/or directed that act or transaction on behalf of Defendant while actively engaged in the scope of their duties.

# III

## JURISDICTION AND VENUE

57.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interests and costs.

58.    Alternatively, this court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

59.    This Court has personal jurisdiction because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through its sales of its Kodiak Cakes products to consumers, including Plaintiffs.

_____

11 *Id.*

60.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant engages in continuous and systematic business activities within the State of California.  Moreover, because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities are located in this judicial district, and Defendant has received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of Kodiak Cakes products.  Further, Kodiak Cakes products inhabit and/or may be found in this judicial district, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

**IV**

**GENERAL ALLEGATIONS – NON-FUNCTIONAL SLACK FILL**

61.     Under California law, a container that does not allow the consumer to fully view its contents is misleading if it contains non-functional slack fill.  Slack fill is the difference between the actual capacity of a container and the volume of product contained therein.

62.     Kodiak Cakes utilizes this false and misleading slack fill practice to deceive consumers into believing that its products have qualities and quantities that they do not have.  Kodiak Cakes utilizes this practice by concealing cooking mixes in the form of powder within an entirely opaque cardboard-type box so that the consumer is unable to see any part of the actual amount of the contents within the package. Only when the consumer opens the package will they find a plastic pouch inside with the actual mix comprising less than half, and in many instances only 1/3, of the size of the box.

63.     The slack fill in Kodiak Cakes cooking mixes has no functional purpose because:

        i.   The cooking mixes are in a powdered form that do not need slack fill to protect the contents;

ii.  The slack fill is not required by the machines to enclose the contents of the product;

iii.  The slack fill is not the unavoidable product settling during shipping and handling as it is much too large;

iv.  The oversized package container is not required to provide adequate space for mandatory and necessary labeling by law;

v.  The box is not needed to prevent theft or accommodate tampering resistant devices;

vi.  Consumers do not mix, add, shake or dispense liquids into the cooking mixes at issue such that slack fill is necessary; and

vii.  No other safe harbor provision listed in California's Fair Packaging and Labeling Act applies.

64.  Kodiak Cakes knows, or should know, that consumers like Plaintiffs and the putative class, reasonably rely on the size of the packaging in purchasing its cooking mixes and would reasonably believe that the packaging contains much more mix than it actually does.

65.  In reasonable reliance on the size of the packaging, Plaintiffs and the putative class members purchased Kodiak Cakes cooking mixes, including its flapjack, waffle and baking mixes.

66.  Plaintiffs and all consumers do not know, did not know and had/have no reason to know that the Kodiak Cakes packaging contains a significant amount of empty, non-functional space, because the packaging is entirely opaque with no view of the contents inside at the time of purchase.  A reasonable consumer cannot accurately determine the fill of the products before purchasing.

67.  To this day, Kodiak Cakes continues to sell its Kodiak Cakes products in this deceptive slack fill packaging without disclosing the true quantities of its product's contents.  Each consumer that purchases Kodiak Cakes cooking mixes is exposed to this uniform practice of filling and packaging its products in this

deceptive manner and Kodiak Cakes continues mislead and cheat its consumers.

68.    If Plaintiffs and the putative class knew how little product was actually within the cooking mixes packages, they would not have purchased the products or would have only purchased them for less than they paid.  Therefore, Plaintiffs and other consumers purchasing these products suffered injury in fact and lost money as a result of Defendant's false, unfair, and fraudulent practices, as described herein.

# IV

## GENERAL ALLEGATIONS – DECEPTIVE MARKETING CLAIMS

69.    The consumer market is increasingly demanding greater transparency into the products they purchase.  Consumers want to know exactly what their products are made from and consist of.  This trend has been attributed to a multitude of factors including environmental awareness, Millennial trends, and an improving health and wellness education.[12]

70.    Research has shown that consumers seek several – not just one – health and nutrition claims relating to food products that contribute to their purchase decision.  According to FMI's 2015 US Grocery Shopper Trends, consumers now look at many data points related to health, nutrition and wellness. This report found that the average consumer seeks 5.4 nutritional claims on the front of the package when purchasing a food product.[13]

71.    A 2018 survey of nearly 1,600 consumers found that consumers (1) look for nuanced claims that communicate specific attributes related to health and wellness, ethics, and the environment, (2) want their food to have an increasingly

---

[12] Shovanna Delventhal, *Study Shows Surge in Demand for 'Natural' Products* (Updated Feb. 23, 2017) *available at https://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp*
[13] *https://www2.deloitte.com/us/en/pages/consumer-business/articles/us-food-industry-consumer-trends-report.html* (citing FMI US Grocery Shopper Trends, 2015).

wide range of benefits, and (3) will pay more for food that delivers the benefits it claims.[14]

72.    Kodiak Cakes has capitalized on this marketing concept. Kodiak Cakes focuses on three (3) main categories of claims when targeting consumers: Natural Claims, Health Claims and Nutrient Claims.

## NATURAL CLAIMS

73.    Kodiak Cakes makes four primary "Natural Claims" with respect to their products: "All-Natural," "Free of Artificial Additives," "No Preservatives" and "Non-GMO."

74.    There is a strong consumer demand for products that are "all-natural," do not contain any artificial or synthetic ingredients, and have no preservatives. Recent consumer reports show that consumers are now looking beyond general claims of "all natural" to more specifically looking for products that are free of added chemicals and preservatives.[15] For example, L.E.K.'s 2018 survey indicated that "no artificial ingredients or preservatives" are the "two most sought-after claims."[16]

75.    Plaintiffs and the reasonable consumer understand that the representation that a product is "all-natural," "free of artificial additives" and contains "no preservatives" means that none of its ingredients are non-natural, synthetic, artificial, or chemical preservatives.

76.    This understanding comports with the FDA's policy of defining natural to mean "that nothing artificial or synthetic ... has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).

///

---

14 *https://www.lek.com/insights/ei/next-generation-mindful-food-consumption*
15 *See id.*
16 *Id.*

-19-

77.    In a November 16, 2011 Warning Letter to Alexia Foods, Inc., the FDA concluded that use of the term "All Natural" on a product label that contains a synthetic chemical preservative is false and misleading, and therefore misbranded.[17]

78.    In a December 2014 letter to Consumers Union, the FDA's Acting Director reaffirmed this policy as to the term "all-natural" and stated that "FDA agrees that the use of the word 'natural' on products that contain any artificial ingredients is inappropriate." (emphasis added).[18]

79.    The plain meaning of the term "all natural" is also consistent with this common understanding of "being or composed of ingredients that are from nature and not artificial."[19]

80.    Furthermore, use of the words "all" and "free of" and "no" denotes to Plaintiffs and the reasonable consumer that the whole amount of the product is with or without the claimed quality.[20]  Thus, the combined use of the terms "All Natural," "Free of Artificial Additives," and "No Preservatives" indicates to Plaintiffs and to the reasonable consumer that the whole extent or quantity of the ingredients contained in Kodiak Cakes products do not contain any substances that are artificial or synthetic or are preservatives.  Thus, by making these claims Defendants have warranted and represented to consumers that its Kodiak Cakes products not simply contain natural ingredients but that the product contains *only* natural ingredients, and that none of the components of these products are artificial, synthetic or chemical preservatives.

///

---

17 FDA Warning Ltr from Michael W. Roosevelt to Alexia Foods, Inc. (Dept. of Health and Human Serv. Nov. 16, 2011)
18 Ltr. From Philip C. Spiller to Consumers Union/ Consumer Reports (Dept. of Health & Human Serv., dated Dec. 11, 2014)
19 *https://www.merriam-webster.com/dictionary/all-natural*
20 *See, e.g., https://www.merriam-webster.com/dictionary/all* (defining "all" as "the whole amount, quantity, or extent of;" "every member or individual component of;" "every member or individual component of."

81.    The claims "All Natural," "Free of Artificial Additives" and "No Preservatives" affected the purchasing decision of Plaintiffs and affect the purchasing decisions of the reasonable consumer.  For the past several years, sales of natural food products have been seen to greatly outpace sales of conventional products on a national scale.[21]  Reports have shown that for the year ending May 20, 2018, overall sales growth for food and beverages increased by 0.6 percent, but sales growth for natural food and beverages alone was 9 percent.[22] This same result was seen in the Mid-South region of the country with overall product growth at 1.7 percent with sales growth for natural food and beverages alone at 9.3 percent.[23]

82.    Research has shown that there is a well-recognized association amongst consumers between the concept of nature (or "natural" food and drink products) and positive feelings associated with nature.  For example, according to a 2017, peer-reviewed systematic review of 72 published journal articles on the importance of naturalness, "naturalness per se is perceived as a desirable product attribute."[24]

83.    A 2016 study by Kline Research suggested a growing number of consumers are choosing to pay a premium for products that are natural or that they "perceive to be natural."[25]  Kline found that products in the "truly natural category" saw tripled in growth rates in recent years.[26]

84.    Similarly, in 2017, Roman et al. published the results from a systematic review of the literature on consumers' perceived importance of food naturalness. Based on their scientific review of 72 studies conducted in 32

---

21 *https://www.newhope.com/market-data-and-analysis/every-us-region-seeing-serious-growth-natural-food-and-beverage-sales*
22 *Id.*
23 *Id.*
24 S. Roman et al., The importance of food naturalness for consumers: Results of a systematic review, Trends in Food Science & Technology 67:44-57 (2017).
25 *Supra*, note 12.
26 *Id.*

countries involving 85,348 consumers, the authors found that "independent of the country and the year of the study, naturalness was considerably important for consumers," and "for the majority of consumers in developed countries, naturalness in food products is important." According to the authors, "[i]t is important to realize that consumers' perceptions of a food product not only influence the willingness to buy it, but also the sensory experience of that product as well [as] other properties related to it" and therefore, "the food industry needs to develop foods that are perceived as natural and as a result evoke positive thoughts consumers associate with natural foods."[27]

85.    The same consumer trend exists as it relates to foods that are non-GMO.  Consumer research firm Nielsen reported that sales of food labeled "non-GMO" grew by more than $8 billion from 2012 to 2016, reaching nearly $21.1 billion in total sales.[28]

86.    In 2016, a Nielsen research report concluded that preservatives (62%) and genetically modified organisms (GMOs, 54%) were among the top list of ingredients that consumers around the world try to avoid.[29]  Other findings from this report conclude that 75% of consumers around the globe say they are worried about the long-term impact of artificial ingredients and will seek to avoid products that contain them.[30]

87.    A non-GMO market insight report released by Mintel in February 2017 states 34% of Baby Boomers and 29% of Millennials surveyed actively avoid genetically modified foods in their diet, demonstrating that consumer preference for non-GMO foods spans generations.

88.    Defendant knows that consumer demand for "natural" products that

---

27 *Supra*, note 24.
28 *http://foodsafety.merieuxnutrisciences.com/2017/03/07/insight-non-gmo-claim-market-trends/*
2929 *https://www.nielsen.com/us/en/insights/article/2016/reaching-for-real-ingredients-avoiding-the-artificial/*
30 *See id.*

do not contain artificial or synthetic substances or chemical preservatives is great and growing. Defendant has intentionally utilized the "all-natural," "free of artificial additives," "no preservatives" and "non-GMO" claims (the "Natural Claims") on each product label and in its marketing and advertising materials to take advantage of this trend.  These Natural Claims are material and central to each of the Kodiak Cakes products in Defendant's entire product line.

89.    Defendant has misrepresented its products through "Natural Claims" since its inception.  The marketing platform for Kodiak Cakes products rests upon nature and compares the company's products to the pioneer days where "lumberjacks and pioneers relied on food packed with protein and essential nutrients to get them through the long days on the frontier."[31] Kodiak Cakes, the company proclaims, is "Nourishment for Today's Frontier." This has become the company's main slogan.

90.    Early packaging of Kodiak Cakes products displayed the "All-Natural" claim prominently on the front of the package at relevant times during the Class Period.

91.    When Kodiak Cakes aired on ABC's television show, *Shark Tank* – which was the marketing turning point for the company – Kodiak Cakes brought this misrepresentation to the forefront of its marketing on the show.  The company described itself as creating "***all natural*** products that taste amazing" and warranted that "You and your kids will love our whole grain and ***all natural*** products." (Emphasis added.)  The *Shark Tank* episode, which marked a milestone in Defendant's success, and aired across the nation, rested upon this material misrepresentation concerning Defendant Kodiak Cakes products.

///

///

_____

[31] Kodiak Cakes Package Claim.

-23-

///



**S5 E22 Kodiak Cakes, Monkey Mat, Plated, The Paint Brush Cover**

04/04/14 | TV-PG | CC

**PITCH:** Kodiak Cakes

**About the Company:**

Kodiak Cakes creates 100% whole grain and all natural products that taste amazing. Based on an old Utah family recipe, Kodiak Cakes Flapjack and Waffle Mix went from being sold in paper lunch sacks to neighbors out of a red wagon in 1982, to being sold in ski-town gift shops in 1995, to now being sold in over 7000 grocery stores nationwide including Target, Safeway, Meijer, and many more. Our whole grain flapjack and waffle mixes are incredibly light and fluffy and you only add water to make them. People write to us every day to tell us Kodiak Cakes is the best pancake mix they've ever tried. Then they tell us they can't believe they are so healthy. You and your kids will love our whole grain and all natural products.

**LEARN MORE:** Visit www.kodiakcakes.com

*Kodiak Cakes Company Description for Shark Tank Episode*

92.   The power of this misrepresentation has continued throughout all relevant times in the class period.  For example, in marketing and advertising its Frozen Power Waffles through its online store, Defendant made the following misrepresentations:

- "These frontier-inspired toaster waffles are carefully crafted with ***all-natural*** ingredients,"

- "We craft Kodiak Cakes Chocolate Chip Power Waffles in the frontier tradition use ***all-natural*** ingredients," and

- "Each protein-packed waffle is crafted in the frontier tradition using only 100% whole grains and ***all-natural*** ingredients."

///
///
///
///
///

1  ///



POWER WAFFLES
# CHOCOLATE CHIP
**Toaster Waffles & Flapjacks**

## $5.50  *Pricing may vary by location

Enter City / Zip Code

Locate a store near you

**Description:**
We craft Kodiak Cakes Chocolate Chip Power Waffles in the frontier tradition using all-natural ingredients and 100% whole grains. And since we've taken the time to put these protein-packed waffles into hibernation, all you need to do is pop them in the toaster to wake up the nourishment you need before a big day up in the mountains, in the gym, or at the office.

*Description of Chocolate Chip Power Waffles on Kodiak Cakes Online Store*

93.    Kodiak Cakes also maintains a large presence on Amazon.com. A simple search on Amazon for Kodiak Cakes Flapjack and Waffle Mix takes you to a page for the sale of 6-pack of the original recipe sold by Kodiak Cakes.[32]  The product has nearly 700 customer reviews.  Notably, the product title reads: "Kodiak Cakes *All Natural* Frontier Pancake, Flapjack and Waffle Mix, Original, 24 Ounce (Pack of 6)."  (Emphasis added).  The product description further reads: "*All Natural* Frontier Mix is a 100% whole grain pancake and waffle mix that

---

32 *See, e.g., https://www.amazon.com/Kodiak-Cakes-Frontier-Flapjack-Original/dp/B003EJ9KLO*

CLASS ACTION COMPLAINT

actually tastes amazing, with no added fat, sugar, or cholesterol." (Emphasis added).

94.    Kodiak Cakes has stayed abreast of consumer market trends and has more recently transformed its more general "All-Natural" claim to specific claims that its products are "Free of Artificial Additives," have "No Preservatives" and are "Non-GMO." For example, the package of each of Kodiak Cakes' baking mixings in **bold** letters, Kodiak Cakes represents "***In our [baking] mix, we use only 100% whole grains that are non-GMO and free of preservatives and artificial additives because to us, simple food is better.***" (Emphasis in original).

95.    In addition, Kodiak Cakes has focused on its claim of "No Preservatives" to drive consumer sales of its frozen waffles. Kodiak Cakes sets itself apart from other manufacturers of frozen food products claiming that its frozen Power Waffles "**are made with only non-GMO ingredients and zero preservatives**." (Emphasis added.)

///

///

///

///

///

///

///

///

///

///

///

///

///

///

-26-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

# WHOLESOME

———

There are a lot of misconceptions surrounding frozen foods. One of them being that any frozen food item must be loaded with cheap fillers and preservatives. While that certainly is true of many food items you'll find in the frozen aisle, that isn't the case with Kodiak Cakes Power Waffles. In fact, our toaster waffles – like all of our products – are made with only non-GMO ingredients and zero preservatives. So, not only are you getting all the benefits of protein and whole grains, but you can also feel better about what you're eating because they're made with the same simple ingredients you'll find in our flapjack and waffle mixes and baking mixes.

*Kodiak Cakes Marketing of Frozen Waffles*

18
19
20
21
22

96.    Every Kodiak Cakes product prominently displays "**non-GMO**" on the package in multiple locations and it has become one of the key claims that appear as a descriptor of the product in nearly every advertisement for the products.

23    ///
24    ///
25    ///
26    ///
27    ///
28

-27-

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9



*Example of the Prominence of "Non-GMO" in Labeling and Advertising*

10
11

12    97.    Despite Defendant's Natural Claims—which are the bedrock of

13  Defendant's marketing and advertising—each one of Defendant's Kodiak Cakes

14  products contain one or more of the following non-natural, synthetic and/or

15  artificial substances:

16    •  monocalcium phosphate,

17    •  sodium bicarbonate,

18    •  sodium acid pyrophosphate ("SAPP")[33],

19    •  citric acid,

20    •  xanthan gum and potentially others.

21    98.    In addition, several of Defendant's Kodiak Cakes products that claim

22  to be Non-GMO contain ingredients that are genetically modified including but not

23  limited to soy lecithin, soy protein, and corn starch.

24    99.    Plaintiffs are informed and on that basis that when used in

25  Defendant's Kodiak Cakes products, these ingredients are synthesized, and

26  Defendant utilizes the synthesized form of these substances.

27  ///

28  _____
33 SAPP is also commonly referred to as disodium dihydrogen pyrophosphate.

-28-

100.   In addition, federal regulations recognize SAPP, citric acid and xanthan gum as synthetic substances.[34]

101.   The FDA has also confirmed that SAPP is a "chemical preservative" and further explained its reasoning as to why calling a food "All Natural" when it contained SAPP was false and misleading:

> "FDA considers use of the term 'natural' on a food label to be truthful and nonmisleading when "nothing artificial or synthetic…has been included in, or has been added to, a food that would not normally be expected to be in the food.' [58 FR 2302, 2407, January 6, 1993]. . . Your product contains disodium dihydrogen pyrophosphate [SAPP], which is a synthetic chemical preservative. Because your products contain this synthetic ingredient, the use of the claim 'All Natural' on this product label is false and misleading, and therefore your product is misbranded under section 403(a)(1) of the Act."

(See **Exhibit D**.)

102.   Citric acid is also synthetic substance.  Plaintiffs are informed and, on that basis, believe that citric acid is not extracted from citrus fruits, but industrially manufactured.  Plaintiffs are informed and, on that basis, believe that Defendant Kodiak Cakes utilizes industrially manufactured citric acid in its Kodiak Cakes products.

103.   As a result of the presence of these preservatives and artificial and synthetic ingredients in Defendant's Kodiak Cakes products, Defendant's Natural Claims are false, deceptive, and misleading.

104.   Plaintiffs and reasonable consumers have been misled by Defendant's false and misleading representations.

///

///

///

///

---

34 *See* 7 C.F.R. § 205.605(b).

-29-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROTEIN-PACKED

105.  Another seminal slogan for Defendant's Kodiak Cakes products is that the products are "Protein-Packed."  Defendant prominently displays this claim on the outside of all of its Kodiak Cakes product packaging and "Protein-Packed" is widespread through all of its marketing and advertising.  Given this widespread use, Plaintiffs and all consumers that purchase Kodiak Cakes products are exposed to this claim and necessarily rely upon it in deciding to purchase the products.



***Example of Protein-Packed Claim on Chocolate Fudge Brownie Mix***

///

-30-

106.   Reasonable consumers, including Plaintiffs, believe that the term "Protein-Packed" means that the products are "high" in protein or constitute an "excellent source" of protein.

107.   This consumer belief is consistent with FDA regulations that provide a benchmark for the ability to claim that a food product is "high," "rich in," or "excellent source of" a particular nutrient – 10 grams or more per serving for protein. *See* 21 C.F.R. § 101.54; 21 C.F.R. § 101.9(c)(7)(iii).[35]

108.   Kodiak Cakes targets the weightlifting and cross-fit community in marketing its "Protein-Packed" products.  Consumers looking to build muscle rely on getting about 1 gram of protein per pound of lean mass.[36]



***Photo from "A Stronger You" Advertising Platform***

---

35 To make a claim that a food is "high" in protein, the foods must meet a certain level of Reference Daily Intake (RDI) or Daily Reference Value (DRV).  For example, 21 C.F.R. § 101.54 requires that the "food contains 20 percent or more of the RDI or the DRV per reference amount customarily consumed."  For protein, the FDA has established that the RDI or DRV for adults and children over 4 years old is 50 grams. 21 C.F.R. § 101.9(c)(7)(iii).  Twenty percent of 50 grams is 10 grams per serving.
36 *https://www.healthline.com/nutrition/how-much-protein-per-day#muscles-and-strength; https://www.builtlean.com/2012/12/24/protein-build-muscle/*

109.   The following Kodiak Cakes products contain only 2-8 grams of protein per serving:  *Chocolate Fudge Brownie Mix; Triple Chocolate Brownie Mix; Chocolate Chip Blondie Mix; Blueberry & Maple Flapjack Cup; Cinnamon & Maple Flapjack Cup; Cinnamon Bear Bites; Chocolate Bear Bites; Honey Bear Bites*.

110.   Despite containing only small amounts of protein, consumers are misled by Defendant's marketing and advertising into believing that these products are high in protein or contain an excellent source of protein, when they do not.

## **HEALTH CLAIMS**

111.   Defendant makes two central Health Claims that form the basis of their Kodiak Cakes product branding, labeling, marketing and advertising: "Healthy" and "Nourishing" (collectively, "Health Claims").

112.   The Health Claims have created a brand awareness among consumers that misleads them into thinking that Defendant's Kodiak Cakes products are healthy and nourishing, when the Kodiak Cakes products are not.

113.   Defendant's main slogan is "Nourishment for Today's Frontier."  This claim appears on every single package for all Kodiak Cakes products and forms the basis of Defendant's Kodiak Cakes marketing platform.

114.   Nourishment means "(of food) containing substances necessary for growth, health, and good condition."  Healthy foods have become one of the most salient food characteristics that are important to consumers in this nation.

115.   Nielsen's 2015 Global Health & Wellness Survey polled over 30,000 individuals online and confirmed that the "consumer mindset about healthy foods has shifted and they are ready to pay more for products that claim to boost health and weight loss."[37]  Specifically, the results showed that approximately 88% of the

---

37 Nancy Gagliardi, *Consumers Want Healthy Foods – And Will Pay More for Them* (Feb. 18, 2015) *available at* https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4770ce5075c5

30,000 individuals across all demographics polled were willing to pay more for healthier foods, including those that are GMO-free, have no artificial coloring/flavors and are deemed all natural.[38]

116.    L.E.K. Consulting's 2018 food and beverage survey of almost 1,600 consumers found that 93% of consumers want to eat healthy at least some of the time, with 63% trying to eat healthy most or all of the time.[39]

117.    There are various reasons that are attributed as to why health product concerns continue to increase in importance.  These reasons include societal, demographic, technological, and governmental reasons and, perhaps most importantly, a shift in consumer focus on the role diet plays in health and the idea that food can be used to manage health risks.[40]

118.    Defendant has targeted the consumer market and has deceived Plaintiffs and consumers causing them to purchase several Kodiak Cakes products believing they are healthy and nourishing when they are not.  Indeed, Kodiak Cakes deceives consumers into believing that several of its baking mixes create "healthy" dessert, which is misleading.  For example, Kodiak Cakes disseminated the following message about its Double Dark Chocolate Muffin Mix:

> "The easy-to-prepare muffin mix creates a moist, delicious, and ***healthy muffin*** you'll be glad you baked after you finish a tough workout or busy morning at the office . . . each protein-packed muffin is a ***nourishing treat*** you can feel good about indulging in."

(Emphasis added).

///

///

///

///

---

38 *Id.*
39 *Supra*, note 14.
40 *Id.*

-33-

119.   Moreover, Kodiak Cakes targets consumers looking for healthy breakfast and snack items for them and their children.  For example, Kodiak Cakes disseminated the following message as one of its blog posts, deceiving consumers into purchasing its products for a "healthy breakfast."[41]



**HEALTHY LIVING ON A BUDGET**

*Nourishment for Today's Frontier*

Coming up with back to school breakfast ideas isn't always easy. We've all heard how breakfast is the most important meal of the day, but it's pretty easy to fall back on sugary cereals and grab-and-go breakfast bars when you're in a rush to get the kids – and yourself – ready for the day. But now that the kids are back in school, it's even more important to have a healthy breakfast every morning.

*Example of Kodiak Cakes Marketing of Its Products as Healthy*

120.   Defendant's Health Claims are deceptive, false and misleading as it respects the following products: *Chocolate Fudge Brownie Mix; Triple Chocolate Brownie Mix; Double Dark Chocolate Muffin Mix; Frontier Cookie Mix; Chocolate Chip Blondie Mix; Buttermilk and Vanilla Power Waffles; Chocolate Chip Power Waffles; Cinnamon Power Waffles; Dark Chocolate Power Waffles; Blueberry Power Waffles; Chocolate Chip Power Flapjacks; Maple Brown Sugar Flapjacks; Chocolate Chip Flapjack Mix; Dark Chocolate Flapjack Mix; Almond Poppyseed Flapjack Mix; Cinnamon Bear Bites; Chocolate Bear Bites; Honey Bear Bites; Chocolate Chip Muffin Mix; Cornbread Mix; all Kodiak Cups*, (collectively the "Health Claim Products").

121.   Plaintiffs and members of the Classes interpret "healthy" and "nourishing" food as those foods that have qualities such as low levels of fat, cholesterol and sugar and contain a certain level of vitamins and nutrients.

---

41 *https://kodiakcakes.com/feed-the-bear/food-thoughtfour-brain-boosting-breakfasts-students/*

122.   This consumer expectation is consistent with the FDA regulation and its benchmark for the ability to label a food as "healthy."  For example, 21 C.F.R. § 101.65 (d)(2) provides that a product can be labeled as "healthy" if the product meets the following: (1) At least 10% of the DV of Vitamin A, Vitamin C, calcium, iron, protein or fiber (2) Less than 60mg of cholesterol, (3) Less than 3 grams of fat; and (4) Less than 1 gram of saturated fat.

123.   The Health Claim Products do not meet these standards, which provide a benchmark to show that these products are not in fact healthy as they claim to be.  The Health Claim Products are unhealthy because they actually contain unhealthy levels of (1) fat and saturated fat, the consumption of which has been shown to cause heart disease and other serious health problems, (2) cholesterol, which has been shown to increase the risk of heart attack, stroke, and narrowed arteries (atherosclerosis), among other serious health problems; (3) contains high levels of sugar that can lead to heart disease, type 2 diabetes, and cancer, among other serious health conditions and (4) fails to meet at least 10% of the DV of Vitamin A, Vitamin C, calcium, iron, protein or fiber.

124.   Defendant's Claims are material representations because consumers attach importance these Claims when making purchase decisions. Defendant markets and advertises Kodiak Cakes products with these Claims in order to differentiate the products, increase sales and induce consumers to purchase its products. Plaintiff and members of the Class were among the intended recipients of Defendant's deceptive Claims.  Plaintiff and members of the Class reasonably relied to their detriment on Defendant's misleading representations.

125.   Defendant's false, misleading, and deceptive misrepresentations are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and members of the Class.

///

-35-

126.    As a result of Defendant's false, misleading, and deceptive representations Defendant injured Plaintiffs and members of the putative class ("Class"), in that Plaintiff and members of the Class:

    a.    Paid a sum of money for the Kodiak Cakes products that did not have the characteristics, qualities or quantities they were represented and promised to have;

    b.    Were deprived of the benefit of the bargain because the Kodiak Cakes' products they purchased were different from what Defendant warranted;

    c.    Were deprived the benefit of the bargain because the Kodiak Cakes products they purchased had less value than what Defendant represented;

    d.    Were denied the benefit of truthful food labels.

127.    Plaintiffs and members of the Class would not have purchased the Kodiak Cakes products if they had known that the products did not contain the characteristics, quality and quantities Defendant represented them to have.

128.    Alternatively, Plaintiffs and members of the Class would not have purchased the Kodiak Cakes' products at the price paid had they known the products did not contain the characteristics, quality and quantities Defendant represented them to have.

129.    Had Defendant not made the false, misleading, and deceptive representations about the products, Plaintiffs and members of the Class would not have been economically injured.

130.    Accordingly, Plaintiff and members of the Class have suffered injury in fact, lost money or property, and suffered economic damages as a result of Defendant's wrongful conduct.

///

///

-36-

# V

# <u>CLASS ALLEGATIONS</u>

131.   Plaintiffs brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Nationwide Class, or, in the alternative Multi-State Class:

**<u>Nationwide Class</u>**

All citizens of the United States who purchased Defendant's Kodiak Cakes products for personal use until the date the notice is disseminated.

**<u>Multi-State Class</u>**

All persons in California and other states with similar laws[42], who purchased Defendant's Kodiak Cakes products for personal use until the date notice is disseminated.

132.   In the alternative, Plaintiffs bring this action on behalf of themselves and all other similarly situated California consumers pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following California Class:

**<u>California-Only Class</u>**

All persons in California who purchased Defendant's Kodiak Cakes products for personal use until the date the notice is disseminated.

133.   Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

---

42 Plaintiff preliminarily avers other states with similar consumer fraud laws under the facts of this case include, but are not limited to: Florida (Fla. Stat. §§ 501.201, et seq.); Illinois (815 Ill. Comp. Stat. Ann. §§ 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §§ 445.901, et seq.); Minnesota (Minn. Stat. §§ 325F.67, et seq.); Missouri (Mo. Rev. Stat. §§ 407.010, et seq.); New Jersey (N.J. Stat. §§ 56:8-1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349, et seq.; and Washington (Wash. Rev. Code §§ 19.86.010, et seq.) (collectively, the "Multi-State Class States").

-37-

134.   Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

135.   This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

136.   **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** Plaintiffs are informed and believe, and on that basis allege, that members of the class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of hundreds of thousands of purchasers dispersed throughout the United States, and the California Class likewise consists of thousands or tens of thousands of purchasers throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

137.   **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

     a.    Whether Defendant made material representations and omissions in the packaging, marketing and sale of Kodiak Cakes products;

     b.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling its Kodiak Cakes products;

     c.    Whether Defendant violated California Bus. & Prof. Code §§ 17200, *et seq.*, and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*;

     d.    Whether Defendants committed a breach of express warranty;

     e.    Whether Plaintiffs and the Class members are entitled to equitable

-38-

and/or injunctive relief;

f.    Whether Plaintiffs and the Class members have sustained damage as a result of Defendant's unlawful conduct; and

g.    The proper measure of damages sustained by Plaintiffs and Class members.

138.   **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because Plaintiffs, like the Class members, purchased Defendant's falsely packaged, labeled and advertised Kodiak Cakes products and Plaintiffs and the class members were exposed to the same misrepresentations. Thus, Plaintiffs' claims arise from the same events, practices, and/or course of conduct that gives rise to the claims of the other class members. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class members sustained similar injuries arising out of Defendant's conduct. Plaintiffs' and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

139.   **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the members of the Class Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect the interests of members of the Class and have retained counsel experienced and competent in the prosecution of complex cases including complex class action questions that arise in consumer protection litigation.

140.   **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy because it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary

1  hardship that would result from the prosecution of numerous individual actions and
2  the duplication of discovery, effort, expense and burden on the courts that
3  individual actions would engender.  The benefits of proceeding as a class action,
4  including providing a method for obtaining redress for claims that would not be
5  practical to pursue individually, are far superior than any difficulties that might be
6  argued with regard to the management of this class action.  This superiority makes
7  class litigation superior to any other method available for the fair and efficient
8  adjudication of these claims.  Absent a class action, it would be highly unlikely
9  that the representative Plaintiffs or any other members of the Class would be able
10 to protect their own interests because the cost of litigation through individual
11 lawsuits might exceed expected recovery.

12    141.   Because Plaintiffs seek relief for all members of the Class, the
13 prosecution of separate actions by individual members would create a risk of
14 inconsistent or varying adjudications with respect to individual members of the
15 Class, which would establish incompatible standards of conduct for Defendant.

16    142.   The prerequisites to maintaining a class action for injunctive or
17 equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted
18 or refused to act on grounds generally applicable to the Class, thereby making
19 appropriate final injunctive or equitable relief with respect to the Class as a whole.

20    143.   The prerequisites to maintaining a class action pursuant to Fed. R.
21 Civ. P. 23(b)(3) are also met as questions of law or fact common to Class members
22 predominate over any questions affecting only individual members, and a class
23 action is superior to other available methods for fairly and efficiently adjudicating
24 the controversy.

25 ///
26 ///
27 ///
28 ///

-40-

CLASS ACTION COMPLAINT

# CAUSES OF ACTION

## COUNT I

### Violation of the California Consumers Legal Remedies Act ("CLRA")

### Cal. Civ. Code §§ 1750, *et seq.*

144.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth verbatim herein.

145.    Plaintiffs bring this claim under the Consumer Legal Rights Act, Civil Code section 1750, *et seq.*, (the "CLRA"), on behalf of themselves individually and the Class against Defendant.

146.    At all times relevant hereto, Plaintiffs and members of the Class were "consumer[s]," as defined in Civil Code section 1761(d).

147.    At all times relevant hereto, Defendant constituted a "person," as defined in Civil Code section 1761(c).

148.    At all times relevant hereto, the Kodiak Cakes products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in Civil Code section 1761(a).

149.    The purchases of the Kodiak Cakes products by Plaintiffs and members of the Class were and are "transactions" within the meaning of Civil Code section 1761(e).

150.    Defendant disseminated, or caused to be disseminated, through its packaging, labeling, marketing and advertising misrepresentations that the Kodiak Cakes' products were and are:

- All-Natural
- Free of Artificial Additives
- No Preservatives
- Non-GMO
- Healthy

- Nourishing
- Protein-Packed
- And have a greater quantity that the products actually have.

151.  Defendant's representations violate the CLRA in at least the following respects:

    a.  In violation of Civil Code § 1770(a)(5), Defendant represented that the Kodiak Cakes products have characteristics, ingredients, uses, benefits, and quantities which they do not have;

    b.  In violation of Civil Code § 1770(a)(7), Defendant represented that the Kodiak Cakes products are of a particular standard, quality, or grade, which they are not;

    c.  In violation of Civil Code § 1770(a)(9), Defendant advertised the Kodiak Cakes products with an intent not to sell the products as advertised; and

    d.  In violation of Civil Code § 1770(a)(16), Defendant represented that the subject of the sale of Kodiak Cakes products has been supplied in accordance with a previous representation when it has not.

152.  Defendant knew or should have known that its Kodiak Cakes products did not contain the claimed characteristics because Defendant manufactured, marketed and sold its Kodiak Cakes products without those characteristics that it claimed.  Defendant knew or should have known that its representations about its products as described herein violated consumer protection laws, and that these statements would be relied upon by Plaintiffs and the members of the Class.

153.  Defendant's actions as described herein were done with conscious disregard of Plaintiffs' and the Class's rights and was wanton and malicious.

154.  Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA since Defendant is still representing that its Kodiak Cakes products have characteristics which they do not

-42-

have.

155.    Pursuant to Civil Code section 1782(d), Plaintiffs and members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein, and for restitution and disgorgement.

156.    Pursuant to Civil Code section 1782, Plaintiffs notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.  A copy of the two written notices provided to Defendant is attached hereto as **Exhibits A and B**.

157.    With respect to those violations of Civil Code § 1770 as to which notification was received and accepted by Defendant, Defendant failed to respond to Plaintiffs' timely demands within 30 days of Plaintiffs' notice.  Accordingly, Plaintiffs hereby request damages from Defendants as provided for in Civil Code § 1780 including:

      a.  actual damages in excess of the jurisdictional limits of this Court;

      b.  statutory damages allowable under Civil Code § 1780;

      c.  punitive damages;

      d.  attorneys' fees;

      e.  court costs and interest; and

      f.  any other relied which the court deems proper.

158.    Pursuant to § 1780(d) of the CLRA, attached as **Exhibit C** is an affidavit showing that this action was commenced in a proper forum.

///

///

///

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# COUNT II

## Violation of the California Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

159.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

160.    Plaintiffs bring this claim under California's Unfair Competition Law, Business and Professions Code section 17200, *et seq.* ("UCL"), on behalf of themselves and the Class against Defendant.  The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.

161.    Defendant committed unlawful business acts or practices by, among other things, making the representations (which also constitutes advertising within the meaning of § 17200), as set forth more fully herein, and violating Civil Code sections 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16), Business & Professions Code section 17500, *et seq.*, California's Fair Packaging and Labeling Act, Business and Professions Code section 12600, *et seq.*, and the common law. Plaintiffs, individually and on behalf of the other Class members, reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

162.    Defendant committed "unfair" business acts or practices by, among other things: (1) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and members of the Class; and (3) engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Class Action Complaint. There is no societal benefit from false advertising, only harm. Plaintiffs and the other Class members paid for a product that is not as advertised by Defendant. While Plaintiffs

-44-

and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

163.   Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding its Kodiak Cakes products as set forth fully herein.  Defendant's business practices as alleged herein are "fraudulent" under the UCL because they are likely to deceive customers into believing the Kodiak Cakes products contain the characteristics, qualities and quantities asserted in the Claims alleged herein even though they do not.

164.   Plaintiffs and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations, which are described above. This reliance has caused harm to Plaintiffs and the of the Class, each of whom purchased Defendant's Kodiak Cakes products. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of purchasing the Kodiak Cakes products and Defendant's unlawful, unfair, and fraudulent practices.

165.   Defendant's wrongful business practices and violations of the UCL are ongoing.

166.   Pursuant to Business & Professions Code section 17203, Plaintiffs, individually and on behalf of the Class, seek an order of this Court enjoining Defendant from engaging in the unfair competition alleged herein in connection with the sale of its Kodiak Cakes products.  Additionally, Plaintiffs requests an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant by means of the unfair competition alleged herein.

167.   Plaintiffs and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business

1    conduct.  The amount on which interest is to be calculated is a sum certain and

2    capable of calculation, and Plaintiffs and the Class are entitled to interest in an

3    amount according to proof.

4        168.   Plaintiffs request all applicable remedies, awards, damages, and relief

5    allowable under the UCL.

6                            **COUNT III**

7                    ***False Advertising in Violation of***

8            ***California Bus. & Prof. Code §§ l7500, et seq.***

9        169.   Plaintiffs re-allege and incorporate by reference all allegations set

10   forth in the proceeding paragraphs, as if fully set forth verbatim herein.

11       170.   Defendant uses advertising to sell the Kodiak Cakes products.

12   Defendant disseminates advertising concerning the Kodiak Cakes products which

13   by its very nature is deceptive, untrue, or misleading within the meaning of

14   California Business & Professions Code §§ 17500 *et seq.* because those

15   advertising statements are misleading and likely to deceive, and continue to

16   deceive, members of the class and the general public.

17       171.   In making and disseminating the statements alleged herein, Defendant

18   knew or should have known that the statements were untrue or misleading, and

19   acted in violation of California Business & Professions Code §§ 17500 *et seq.*

20       172.   The misrepresentations and non-disclosures by Defendant of the

21   material facts detailed above constitute false and misleading advertising and

22   therefore constitute a violation of California Business & Professions Code §§

23   17500 *et seq.*

24       173.   Through their deceptive acts and practices, Defendant has improperly

25   and illegally obtained money from Plaintiffs and the members of the Class. As

26   such, Plaintiffs request that this Court cause Defendant to restore this money to

27   Plaintiffs and the members of the Class, and to enjoin Defendant from continuing

28   to violate California Business & Professions Code §§ 17500, *et seq.*, as discussed

                                -46-

above.  Otherwise, Plaintiffs and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

174.   Pursuant to California Business & Professions Code § 17535, Plaintiffs seek an Order of this Court ordering Defendant to fully disclose the true nature of their misrepresentations.  Plaintiffs additionally request an Order requiring Defendant to disgorge their ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interest and attorneys' fees so as to restore any and all monies which were acquired and obtained by means of such untrue and misleading advertising, misrepresentations and omissions, and which ill-gotten gains are still retained by Defendant. Plaintiffs and those similarly situated may be irreparably harmed and/or denied an effective and complete remedy if such an Order is not granted.

175.   Defendant's conduct is ongoing and continues to this date.  Plaintiffs and the Classes are therefore entitled to the relief sought.

**COUNT IV**

**Breach of Express Warranty**

176.   Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

177.   Defendant promised and expressly warranted that its Kodiak Cakes products were All-Natural, Free of Artificial Additives, contain No Preservatives, are Non-GMO, Healthy, Nourishing, and Protein-Packed.

178.   These promises and affirmations of fact constitute express warranties that became part of the basis of the bargain between Plaintiff and the members of the Class on the one hand and Defendant on the other.

179.   All conditions precedent to Defendant's liability under the contract, including notice, have been performed by Plaintiffs and the Class.

///

180.   Defendant has breached the terms of its express warranties by failing to provide the Kodiak Cakes products as warranted.

181.   As a result of Defendant's breach of its warranties, Plaintiffs and others similarly situated have been damaged in the amount of the purchase price of the Kodiak Cakes products at issue.

## COUNT V

### Restitution Based on Quasi-Contract and Unjust Enrichment

182.   Plaintiffs re-allege and incorporate by reference all allegations set forth in the proceeding paragraphs, as if fully set forth verbatim herein.

183.   Defendant's conduct in enticing Plaintiffs and the Class to purchase Kodiak Cakes products through the use of false and misleading packaging as described throughout this Complaint is unlawful because the statements contained on the product labels and marketing and advertising are untrue.  Defendant took monies from Plaintiffs and the Class members for products promised to be of certain qualities, characteristics and quantities even though the products they sold were not as Defendant represented.  Defendant has been unjustly enriched at the expense of Plaintiffs and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class.

184.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

///

///

///

///

///

///

-48-

# VI

## **PRAYER**

**WHEREFORE,** Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this Class Action Complaint, as follows:

A.    Declaring that this action can be maintained as a class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.    Ordering restitution in such amount that Plaintiffs and the class members paid to purchase the Kodiak Cakes products or paid as a premium over other products;

C.    Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of Defendant's unlawful, unfair and fraudulent business practices;

D.    Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

E.    Ordering compensatory damages for Plaintiffs and the Class;

F.    Ordering statutory damages allowable under Civil Code § 1780;

G.    Ordering statutory penalties for all Counts for which they are available;

H.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

I.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

J.    Ordering such other and further relief as may be just and proper.

///

///

-49-

# VII

## **JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all causes of action and issues so triable.

Dated:  December 19, 2019                    Respectfully submitted,

                                             **FOX LAW, APC**

                                             **By:   s/Dave Fox**

                                             DAVE FOX

                                             Attorneys for Plaintiffs,
                                             TY STEWART, JOCELYN
                                             FIELDING, LAUREENE BUCK and
                                             ANNA ALTOMARE
                                             E-mail: dave@foxlawapc.com