DAVE FOX (Bar No. 254651)
Dave@FoxLawAPC.com
JOANNA FOX (Bar No. 272593)
Joanna@FoxLawAPC.com
COURTNEY VASQUEZ (Bar No. 267081)
Courtney@FoxLawAPC.com
**FOX LAW, APC**
225 W. Plaza Street, Suite 102
Solana Beach, CA 92075
Tel:  858-256-7616
Fax: 858-256-7618

*Attorneys for Plaintiffs and
the Proposed Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TY STEWART, et al., *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>KODIAK CAKES, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 3:19-cv-02454-MMA-MSB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT KODIAK CAKES, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR (1) LACK OF STANDING (FRCP12(b)(1)), AND (2) FAILURE TO STATE A CLAIM (FRCP 12(b)(6)), AND MOTION TO STRIKE (FRCP 12(f))**<br><br>Judge: Hon. Michael M. Anello<br>Ctrm:  3D<br>Date:  Jan. 11, 2021<br>Time: 2:30 p.m. |

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND .................................................................... 2

III. LEGAL STANDARDS ............................................................................ 2

    A. FRCP 12(b)(1) ................................................................................ 2

    B. FRCP 12(b)(6) ................................................................................ 3

IV.  PLAINTIFFS PLAUSIBLY ALLEGE FACTS ABOUT THEIR
     PURCHASING DECISIONS UNDER FRCP 8 ...................................... 3

    A. Plaintiffs Plead Sufficient Facts About the Products They Purchased
       and Why They Were Misled ............................................................ 5

    B. Plaintiffs Sufficiently Plead Reliance Under Rule 8 ........................ 7

V.   PLAINTIFFS MEET RULE 9(b)'S STANDARD ................................... 9

VI.  PLAINTIFFS' NATIONWIDE CLASS CLAIMS SURVIVE
     DISMISSAL ........................................................................................ 14

    a. Kodiak's Argument that Plaintiffs Lack Standing to
       Assert Nationwide Class Claims is Premature .............................. 14

    b. Plaintiffs' Count I is Properly Pled .............................................. 16

    c. Plaintiffs' Warranty and Restitution Claims Are Properly Pled . 16

VII. PLAINTIFFS' ALLEGATIONS OF CONSUMER FRAUD
     PLEAD A PLAUSIBLE CLAIM OF DECEPTION .......................... 18

    a. Kodiak Has Failed to Show that No Reasonable Consumer
       Could Find the Size of the Slack Fill Products Misleading .......... 20

       i.  Kodiak does not defend Plaintiffs claims on the grounds that
             any slack fill is *functional* ...................................................... 20

       ii. Plaintiffs sufficiently allege that a reasonable consumer
             can be misled by a baking mix that requires cooking ............. 21

-i-

**iii. No Authority Exists that Slack Fill Excludes Online Purchases** ..............................................................................24

**iv. Allegations that Plaintiffs Couldn't Compare Price Per Ounce or Shake the Product to Feel its Weight Are Not Required** ....25

**v.  Slack fill claims are not limited to the initial purchase**..........27

**b.  Plaintiffs Have Adequately Alleged Injury Caused by Slack Fill** 27

**c.  The Size of the Box *Is* a Representation** ..........................................28

**d.  A Reasonable Consumer Could be Misled by "Protein-Packed"** 28

**e.  "Healthy" is NOT "Non-Actionable" Puffery**................................29

**f.  A Reasonable Consumer Could Believe "Free of Artificial Additives" and "No Preservatives" Meant That There Were *NO* Synthetic Ingredients or Preservatives**........................30

**g.  A Reasonable Consumer Could be Misled by the Claim "Non-GMO"**.........................................................................................................32

**VIII. BREACH OF WARRANTY IS PROPERLY PLED** ..........................33

**IX.    RESTITUTION IS PROPERLY PLED** ..............................................34

**X.     EQUITABLE RELIEF IS PROPERLY PLED** ...............................35

**a.  Plaintiffs Can Allege Equitable Relief in Tandem with Legal Remedies under Rule 8of the Slack Fill Products Misleading**......35

**b.  Plaintiffs Have Standing to Seek Injunctive Relief**.....................35

**XI.    CONCLUSION**........................................................................................35

-ii-

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2013 WL 5407039 (N.D. Cal. Sept. 25, 2013)................................................................ 11, 12

*Aguiar v. Merisant*, 2015 WL 6492220 (C.D. Cal. Mar. 24, 2014)...................... 33

*American Master Lease, LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451 .. 34

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................... 3, 4

*Aspinall v. Philip Morris Co., Inc.*, 813 N.E.2d 476 (Mass. 2004) ...................... 18

*Astiana v. Ben & Jerry's Homemade, Inc.*, C 10–4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011)...................................................................................... 11

*Astiana v. Kashi*, 291 F.R.D. 493 (2013) ............................................................. 31

*Astiana v. Hain*, 783 F.3d 753 (9th Cir. 2015)................................................ 34, 35

*Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317 (S.D. Cal. 2019)....................................................................................................................... 17

*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001) ............................. 18

*Ballard v. Bhang Corporation*, 2020 WL 6018939 (C.D. Cal. Sept. 25, 2020).. 6, 7

*Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694 (9th Cir. 2016) ..... 19, 20, 31

*Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019)... 25

*Boswell*, 2016 WL 3360701 ................................................................................... 33

*Brown v. Starbucks Corp.*, No. 18CV2286 JM (WVG), 2019 WL 4183936 (S.D. Cal. Sept. 3, 2019)........................................................................................ 17

*Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014)..................................................................13, 19, 22, 27, 29, 30

*Buso v. ACH Food Companies, Inc.*, 445 F. Supp. 3d 1033 (S.D. Cal. 2020) 21, 26

*Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005).............. 9

*Chapman v. Skype*, 220 Cal. App. 4th 217 (2013)................................................ 18

-iii-

*Chester v. TJX Companies, Inc.*, No. 515CV01437ODWDTB, 2016 WL 4414768 (C.D. Cal. Aug. 18, 2016) ....................................................... 26

*Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013)...................... 11

*Cruz v. Mylan, Inc.*, No. 8:09CV1106T17EAJ, 2010 WL 598688, at *2 (M.D. Fla. Feb. 17, 2010)................................................................ 33

*Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN RBB, 2014 WL 1666427 (S.D. Cal. Apr. 17, 2014) ................................................................ 16

*Dix v. Am. Bankers Life Assur. Co. of Florida*, 415 N.W.2d 206 (Mich. 1987) ... 18

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005) ................................................ 3

*Dinosaur Develop., Inc. v. White*, 216 Cal. App. 3d 1310 (1989)........................ 34

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016)................................................ 24

*Escobar v. Just Born Inc.*, No. CV1701826BROPJWX, 2017 WL 5125740 (C.D. Cal. June 12, 2017)........................................18, 22, 24, 26, 28, 35

*Fagan v. Neutrogena Corp.*, 2014 WL 92255, (C.D. Cal. Jan. 8, 2014)................................................................19, 27, 29, 31, 32

*Food Parade, Inc. v. Office of Consumer Affairs of Cty. of Nassau*, 859 N.E.2d 473 (N.Y. 2006)................................................................ 18

*Frigard v. United States*, 862 F2d 201 (9th Cir. 1988) ............................................ 3

*Franz v. Beiersdorf, Inc.*, No. 14CV2241, 2019 WL 2192635 (S.D. Cal. May 21, 2019) ................................................................ 4

*Haley v. Macy's, Inc.* 263 F. Supp. 3d 819 (2017) ........................................... 13, 14

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)........................................ 27

*In re Checking Account Overdraft Litig.*, 2016 WL 5848730 (S.D. Fla. July 5, 2016)................................................................ 15

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011)...............23, 29, 30, 33

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 422 F. Supp. 3d 194 (D.D.C. 2019) ........................................20, 21, 24

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)................................................ 13

*Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013)....................................................................................19, 26, 27, 31

*Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568 (N.D. Cal. 2015).......................33

*Khan v. Med. Bd.*, 12 Cal. App. 4th 1834 (1993)......................................................9

*Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009)....................................10

*Kennard v. Lamb Weston Holdings, Inc.*, No. 18-CV-04665-YGR, 2019 WL 1586022 (N.D. Cal. Apr. 12, 2019)..................................................................23, 24

*Knappenberger v. City of Phoenix*, 566 F.3d 936 (9th Cir. 2009) ..........................3

*Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310 (2011) ..................................................7

*Macy's*, 263 F. Supp. 3d at 823 .............................................................................14

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000) ......................................34

*Luman v. Theismann*, 647 Fed. Appx. 804 (9th Cir. 2016) ..................................35

*McDevitt v. USA Xpress Hardwood Flooring, Inc.*, No. FSTCV166028183S, 2017 WL 1429863 (Conn. Super. Ct. Mar. 24, 2017) ..........................................18

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)......................................14, 15

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ...................7, 8, 9

*Morgan v. AT & T Wireless Servs., Inc.,* 177 Cal. App. 4th 1235 (Cal. Ct. App. 2009)......................................................................................................................23

*Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038 (9th Cir. 2008).................29

*Pepper Prod. Mktg. & Sales Practices Litig.*, 215 F. Supp. 3d 51 (D.D.C. 2016)................................................................................................................20, 21

*Peterson v. Kitsap Cmty. Fed. Credit Union*, 287 P.3d 27 (Wash. 2012) .............18

*Robinson v. Unilever,* No. CV173010DMGAJWX, 2018 WL 6136139 (C.D. Cal. June 25, 2018)..........................................................................................14, 15

*Rhino Linings USA, Inc. v. Rocky Mt. Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003)......................................................................................................................18

*Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168 (S.D. Cal. 2012)................34

*Rubenstein v. Neiman Marcus Grp. LLC*, 687 Fed. Appx. 564 (9th Cir. 2017)....10

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ............................ 3

*Sailing v. Royal,* 2015 WL 5255367 (E.D. Cal. Sept. 9, 2015) ............................ 16

*Sauro v. L.A. Fitness Int'l, LLC*, No. CIV. 12-3682 JBS/AMD, 2013 WL 978807 (D.N.J. Feb. 13, 2013).................................................................................. 18

*Safransky v. Fossil Grp., Inc.*, 2018 WL 1726620 (S.D. Cal. Apr. 9, 2018)......... 35

*Starr v. Baca*, 652 F.3d, 1202 (2011)...................................................................... 17

*Stearns v. Ticketmaster*, 655 F.3d 1013 (9th Cir. 2011) ......................................... 9

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ................................................ 3, 4

*Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097 (9th Cir. 2003) ....................... 9, 10

*Viggiano v. Johnson & Johnson*, No. CV1407250DMGMRWX, 2015 WL ........ 18 12860480 (C.D. Cal. June 12, 2015)....................................................................... 15

*Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213 (2010)............................ 33

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000)............................................................. 2

*Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008) ..19, 20, 22, 23, 30, 31

*Young v. Cree, Inc.,* No. 17-CV-06252-YGR, 2018 WL 3659305 (N.D. Cal. Aug. 2, 2018) ………………………………………………………………….30

## **Statutes and Rules**

Fed. R. Civ. P. 8 .....................................................................................................27

Fed. R. Civ. P. 8(a)(2) ..............................................................................................4

Fed. R. Civ. P. 8(a)(3) ............................................................................................27

Fed. R. Civ. P. 8(d)(2) ............................................................................................27

Fed. R. Civ. P. 9(b)............................................................................................10, 11

21 C.F.R. § 100.10 .......................................................................................20, 22, 25

15 U.S.C. 1454(c)(4) ...............................................................................................20

58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993).......................................................22

Vincent A. Kleinfeld, Legislative History of the Federal Food, Drug, and Cosmetic Act, 50 Food & Drug L.J. 65, 82 (1995)................................................20

Cal. Bus. & Prof. Code § 12606.2 .................................................................. 21, 25

Cal. Bus. & Prof. Code § 12606(c) ...................................................................... 25

Bus. & Prof. Code section 12606.2 ...................................................................... 25

Cal. Com. Code § 2313 ........................................................................................ 33

Cal. Civ. Code 1770(a)(9) .................................................................................... 14

PLAINTIFFS' OPPOSITION TO KODIAK'S MOTION TO DISMISS (FRCP 12(B)(1), 12(B)(6))
AND MOTION TO STRIKE (FRCP 12(F))

Plaintiffs Ty Stewart, Jocelyn Fielding, Laureene Buck, Anna Altomare, Eliza Reid, Jennifer Jenkins, Chad Humphrey, Alyson Martin, Mary Hillary Pfeiffer, Evelyn Hernandez, Ivan Blanco, Victoria Johnson, Julie Lussier, Suzanne Dagesse, Robin Curless, Julie Stocker, Mary Mcleroy, Robert Riddell, Danielle Arno, Vicki Siverling, Harry Malakoff, Michael Smith and Tracy Hall submit this brief in opposition to Defendant Kodiak Cakes, LLC's ("Kodiak") Motion to Dismiss.

## I.    INTRODUCTION

As the Ninth Circuit recently emphasized: "labels matter." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020).  Consumer protection laws exist to protect consumer interests in accurate label representations. This is important "because consumers rely on the accuracy of those representations in making their buying decisions." *Moore*, 966 F.3d at 1021.  Kodiak asks this Court to ignore this settled law and dismiss Plaintiffs' well-pled claims seeking redress for Kodiak's longstanding deceptive packaging and labeling practices.  Plaintiffs seek relief on behalf of all others similarly situated based on two theories of deception: (1) of non-functional slack fill and (2) labeling and marketing messages that the products are (i) "free of artificial additives," (ii) contain "no preservatives," (iii) are "non-GMO," (iv) "healthy" and (v) "protein-packed," when they are not.

Plaintiffs detail their claims of deception in the First Amended Complaint ("FAC") and allege the "who, what, when, where and how" they were deceived by Kodiak's practices and have been harmed.  A basic read through the FAC reveals why Kodiak's Motion should be dismissed.  But Kodiak ignores the detailed allegations.  Instead, Kodiak fills its Motion with baseless lawyer arguments that are not supported with *any legal authority*, spends useless Rule 12 practice on needless procedural issues that can be readily curable by amendment or could have been resolved through discovery, and (most importantly) repeatedly asks this Court to address issues entirely outside the pleadings.  None of this has any place before the Court under Rule 12.  Kodiak's Motion should be denied outright.

-1-

## II.   FACTUAL BACKGROUND

Kodiak has been selling its flapjack and waffle mix since 1995.  (ECF #37 ¶ 70.)  It wasn't until about 2014 after Kodiak's television appearance on the TV show *Shark Tank* that Kodiak's success in the market really took off.  (*Id.* at ¶ 71.)  But as its market share increased, so did Kodiak's widespread deception.  Kodiak quickly expanded its product line from flapjack and waffle mixes to several types of baking mixes, including muffins, brownies, breads and cookies.  (ECF #37 ¶¶ 1-2.)  This case concerns 64 of those products.  (*Id.* at ¶ 12.)  Plaintiffs seek relief based on two main theories of deception: (1) non-functional slack fill and (2) false and misleading labels and marketing messages.  (*Id.* ¶¶ 3, 6-7, 10.)

Plaintiffs identify each of the 64 products they purchased during the time period from January 1, 2015 to the time of the filing the FAC.  (*Id.* ¶¶ 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61; *id.* Ex. B.)  Each allege that before purchasing each of the products, they read and relied upon Kodiak's product label and one or more of the five distinct marketing messages.  (*Id.* ¶¶ 63-65.)  Plaintiffs allege what they believe each of these claims meant and why they were deceived by these messages.  (*Id***.** ¶¶ 119-129, 139-42.)  Plaintiffs also allege that each time they purchased one of the products containing non-functional slack fill, they relied on the size of the box and were deceived by the amount of product that was entirely concealed inside.  (*Id.* ¶¶ 82-92.)  Plaintiffs allege that if they would have known of this deception, they would not have purchased the products or would have paid less for the products.  (*Id.* ¶¶ 14, 62, 66-67.)

## III.   LEGAL STANDARDS

### A. FRCP 12(b)(1)

A defendant may raise either a facial or a factual challenge to this Court's jurisdiction on the ground that a plaintiff lacks Article III standing.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal

-2-

jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Kodiak raises a facial attack because its challenge does not rely upon extrinsic evidence intended to rebut the FAC's allegations.  (ECF #44-1 at 30.)  Thus, the Court shall "presume the truthfulness of the plaintiff's allegations" and determine whether they afford Plaintiffs standing.  *See Safe Air*, 373 F.3d at 1039.  Generally, even if a Rule 12(b)(1) motion is granted, the dismissal is without prejudice.  *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).

## B. FRCP 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In doing so, courts must accept all factual allegations as true.  *See id.; see also Doe v. U.S.*, 419 F.3d 1058, 1062 (9th Cir. 2005).  The sole issue raised by a Rule 12(b)(6) motion is whether the facts pleaded would support a plausible claim for relief.  No matter how improbable the facts alleged are, they must be accepted as true for purposes of the motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## IV.   PLAINTIFFS PLAUSIBLY ALLEGE FACTS ABOUT THEIR PURCHASING DECISIONS UNDER FRCP 8

Kodiak argues that Plaintiffs fail to meet the plausibility requirements of Rule 8 regarding allegations pertaining to Plaintiffs' "purchase decisions."  (ECF # 44-1 at 6.)  Kodiak's assertions are flatly contradicted by the allegations in the FAC.  It is

-3-

clear that Kodiak's Rule 8 challenges are nothing more than a demand for "more facts" when no such additional facts are required. Indeed, Rule 8 requires only that a pleading state "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2).  A plaintiff must only plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.  This "plausibility" requirement sets a relatively "low bar." *Franz v. Beiersdorf, Inc.*, No. 14CV2241, 2019 WL 2192635, at *3 (S.D. Cal. May 21, 2019). Plausibility requires only "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft,* 556 U.S. at 678.  A complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id*. at 696.

### A.  Plaintiffs Plead Sufficient Facts About the Products They Purchased and Why They Were Misled

*First,* Kodiak challenges the statement each Plaintiff alleges that they "strive to find food products that are healthy, free of artificial and synthetic ingredients, contain no preservatives, are high in protein, and are non-GMO." (ECF #44-1 at 6.) Kodiak complains that Plaintiffs provide "no facts to support this conclusion." (*Id.*) This is non-sensical.  This very statement *is a fact*.  Simply because all Plaintiffs share these same interests does not turn this plain fact into a conclusion.  In addition, Kodiak's argument that "None of the plaintiffs provide facts to support this conclusion" directly contradicts the allegations in the FAC.  Plaintiffs *do* allege facts that support their interest in finding food products that have the subject claims. *See, e.g.,* (ECF # 37, ¶ 16 ( "Plaintiff Stewart is an athlete and avid gym-goer. Consistent with his interests, Mr. Stewart strives to find food products that are healthy, free of artificial and synthetic ingredients, contain no preservatives, are high in protein, and are non-GMO); *see also, e.g.,* ECF # 37, Ex. B, p. 75.) Similar facts are alleged about

1    the other Plaintiffs.[1]

2         ***Second,*** Kodiak argues that Plaintiffs are required to allege specific facts that

3    each Plaintiff "read any product-box labels (front or back)," whether they "read the

4    Nutrition Facts label," whether the Plaintiffs "handl[ed] the product [or] look[ed] at

5    competitor products," or whether they "compared prices."  (ECF # 44-1 at 6.)

6    Similarly, Kodiak also suggests that Plaintiffs' give a store location and date for every

7    single past purchase of Kodiak's products.   (*See id.* at 6 n.2.)  ***None*** of these

8    allegations are required under Rule 8, and Kodiak provides ***no authority*** otherwise.

9    Regardless, Kodiak's challenges are contradicted by the actual allegations in the

10   FAC.  Plaintiffs ***do*** allege that each of them "read and relied upon" the deceptive

11   claims which appeared on the outer package of the products.  (ECF #37 ¶ 63, *see also*

12   ECF # 37, Ex. B, p. 75.)  Plaintiffs also ***do*** allege that they "read and relied upon"

13   advertising and marketing regarding claims that the products are "free of artificial

14   additives," contain "no preservatives," are "non-GMO," "healthy" and "protein-

15   packed" that were "made on Kodiak Cakes' online store, on Kodiak Cakes' social

16   media profiles on Instagram and Facebook, on the Kodiak Cakes website and blog,

17   on Amazon and/or on the Shark Tank episode that aired on ABC."  (ECF #37 ¶ 64;

18   ECF # 37, Ex. B., p. 75.)

19         Finally, Plaintiffs ***do*** allege (1) the specific products they purchased, (2) that

20   purchases were over "the past several years" within the class period, and (3) the

21   locations of the purchases, including the specific store names (in-store and online).

22   (*See, e.g.,* ECF #37 ¶ 17 (listing the products Plaintiff purchased, stating that he made

23   purchases at stores throughout San Diego County, the specific address of a Target

24   store he most frequented, and that his purchases were made over the past several

25   years); *see also* ¶¶ 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51,

26   53, 55, 57, 59, 61; *see also, e.g.,* ECF # 37, Ex. B, 5.19.2019 Ltr to Kodiak Cakes,

27   _____

28   [1] (ECF # 37 ¶¶ 18, 22, 24, 26, 32, 36, 38, 40, 42, 44, 46, 54, 58, 60.)

"On or about March 5, 2019 and May 8, 2019, our client Anna Altomare purchased three of your brownie baking mixes . . . from your online store (citing 3/5/19 Order #19988; 5/8/19 Order #29108).) Thus, Kodiak's argument that Plaintiffs' "failure to allege facts that show they read the product label, saw advertising, and what was said on these labels or ads" (ECF # 44-1 at 7) is flatly contradicted by Plaintiffs' allegations. (*See, e.g., id.* at ¶¶ 63-65.)

**Third**, Kodiak cites **no authority** to support its Rule 8 pleading demands. The only case Kodiak cites is *Ballard v. Bhang Corporation*, 2020 WL 6018939 (C.D. Cal. Sept. 25, 2020). However, Kodiak ignores the stark differences between the allegations pled there and those pled here. *Ballard* concerned misrepresentations about the levels of CBD in defendant's chocolates. *Ballard*, 2020 WL 6018939, at *1. The court found that the plaintiff failed to meet Rule 8's standards, basing its opinion on deficiencies that are not present here. First, the *Ballard* plaintiff merely pled that "at least fifteen types of chocolate" were at issue and did not specify which of them Plaintiff actually bought. *Ballard*, 2020 WL 6018939, at *7. The FAC, on the other hand, specifically lists all 64 products at issue and the misrepresentations they are being sued upon. (ECF # 37, Ex. A, Per-Product Misrepresentation Chart.) The FAC also specifically identifies each of the products each Plaintiff purchased. (*Id.* at ¶¶ 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, *see also id.* Ex. B.)

Second, the *Ballard* plaintiff also failed to state how the chocolates were advertised and how they fell short of those claims. *Ballard*, 2020 WL 6018939, at *7. This was particularly concerning to the *Ballard* court because of representations by the plaintiff that he had at least one of the chocolates in his possession tested but failed to disclose actual results of the test. *Id.* Again, this is not at issue, here. The FAC clearly (and repeatedly) lists the representations Plaintiffs challenge, *i.e.* that the products are "free of artificial additives," contain "no preservatives," are "non-GMO," are "healthy" and are "protein-packed" (ECF #37, *passim.*), and why these

-6-

misrepresentations are false or misleading.  (*See id.* ¶¶ 119, 121-22, 124 ( "free of artificial additives" is false and misleading because the products contain one or more non-natural, synthetic and/or artificial substances), ¶ 123 (the claim "no preservatives" is false and misleading for products that contain SAPP because SAPP is a chemical preservative), ¶ 120 (the claim "non-GMO" is false and misleading for products that contain soy lecithin, soy protein, corn starch and other GMO ingredients), ¶¶ 128-129 (the claim "protein-packed" is false and misleading for products that contain less than 10 grams of protein per serving), and ¶ 140-141 (the claim "healthy" is false and misleading for products that contain (i) unhealthy levels of fat (more than 3 grams of fat and/or more than 1 gram of saturated fat per serving), (ii) unhealthy levels of cholesterol (more than 60 mg/serving), (iii) high levels of sugar, and/or (iv) fails to meet at least 10% of the DV of Vitamin A, Vitamin C, calcium, iron, protein or fiber.).  Thus, unlike the defendant in *Ballard*, the FAC gives Kodiak precise details about what products are at issue, what misrepresentations Plaintiffs challenge, and why they are challenged.  Plaintiffs' claims are plausibly alleged.  *Ballard* does not hold otherwise.

## B. Plaintiffs Sufficiently Plead Reliance Under Rule 8

Kodiak also argues that Plaintiffs fail to plausibly plead actual reliance to support their consumer fraud claims.  (ECF # 44-1 at 7.)  This argument fails.  Courts have consistently affirmed that to adequately plead reliance, plaintiff need only allege "that the defendant's misrepresentations were an immediate cause of the injury-causing conduct."  *See Moore*, 966 F.3d at 1020; *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 326, 330 (2011).  Plaintiffs can satisfy this requirement by alleging that the plaintiffs "would not have bought the product but for the alleged misrepresentation."  *Id.*

This is precisely what Plaintiffs alleged, here.  The FAC alleges that Plaintiffs would not have purchased the products, or in the alternative, would have paid less for the products, but-for Kodiak's misrepresentations.  (ECF # 37 ¶¶ 14, 67, 92, 145-47,

-7-

176.)  This is all that is required.  *Moore*, 966 F.3d at 1020; *Kwikset*, 51 Cal. 4th at 330.  Indeed, the Ninth Circuit recently rejected the very argument Kodiak asserts here and held that plaintiffs' allegations that "collectively alleged" that "as a result of" the misrepresentations, they would not have purchased the product or would have paid less for it are sufficient:

> Plaintiffs do not provide much detail in their individual allegations, but they collectively allege that as a result of the false and fraudulent prescription requirement, each Plaintiff paid more for Prescription Pet Food than each Plaintiff would have paid in the absence of the requirement, or would never have purchased Prescription Pet Food. This is sufficient under *Kwikset* to survive a motion to dismiss.

*Moore*, 966 F.3d at 1020. Despite this established authority, Kodiak maintains that Plaintiffs' reliance allegations still fail because "*not all of Kodiak's products have all the purported representations*" and Plaintiffs plead no "facts explaining why they were willing to purchase the products that did not have each advertising claim."[2] (ECF # 44-1 at 7 (emphasis in original).)  Once again, Kodiak fails to provide any authority that requires this information to establish reliance, which is contrary to established precedent. *See Moore,* 966 F.3d at 1020.  This argument also ignores that to plead reliance plaintiffs are "not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id.*  Thus, it makes no difference whether Plaintiffs purchased a product that did not have all the challenged representations on the package.  *See id.*  The only relevant inquiry is that in purchasing the products that Plaintiffs did, the misrepresentations on *that* product were *but one of the reasons* that caused Plaintiffs to purchase the product. *Id.* These allegations are properly pled. (ECF #37 ¶¶ 16, 18, 22, 24, 26, 28, 30, 32,

---

[2] Kodiak also asserts that Plaintiffs do not plead reliance because they fail to explain what "individual ingredients they think are problematic." (ECF # 44-1 at 7.) Kodiak ignores allegations in the FAC that allege the very facts Kodiak complains are lacking from the pleading.  (*Id.* at ¶¶ 119, 120-25, 128-29, 131, 140-42.)

-8-

34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60.)

Furthermore, and yet another reason to reject Kodiak's argument, courts have also made clear that at the motion to dismiss stage, "actual reliance is inferred from the misrepresentation of a material fact. Whether a misrepresentation is sufficiently material to allow for an inference of reliance is generally a question of fact that cannot be decided at the motion to dismiss stage." *Moore*, 966 F.3d at 1021 (citations and internal quotations omitted); *see also Stearns v. Ticketmaster*, 655 F.3d 1013, 1022 (9th Cir. 2011) *(abrogated on other grounds)*. Thus, it is only in the most "rare situation" that a motion to dismiss is appropriate on the grounds that reliance cannot be inferred. *See Moore*, 966 F.3d at 1021; *Stearns*, 655 F.3d at 1022. For reasons described more fully below in Section VI, this is not the case of such a "rare situation."

Kodiak has failed to establish that the pleading requirements of Rule 8 have not been met relating to Plaintiffs' purchasing decisions and reliance. Thus, Kodiak's motion to dismiss should be denied.

## IV.   PLAINTIFFS MEET RULE 9(b)'S STANDARD

Kodiak asserts that Plaintiffs' claims lack the requisite specificity under Rule 9(b). (ECF #44-1 at 8.) As an initial matter, as recently reiterated by the Ninth Circuit, "Rule 9(b) requirements may not even be necessary, given that a defendant can violate the UCL, FAL, and CLRA by acting with mere negligence." *Moore*, 966 F.3d at 1019 n.11 (citing *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (applying a "reasonable consumer" test to UCL, FAL, and CLRA claims); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005) (rejecting arguments that plaintiffs must show intent to deceive for CLRA and UCL claims); *Khan v. Med. Bd.*, 12 Cal. App. 4th 1834 (1993) (holding that FAL "can be violated through negligence")).[33]

---

[33] Distinct pleading standards also apply to different 'prongs' of the UCL Plaintiffs allege was violated. To the extent Plaintiffs' claims are based on violations of the "unfair" or "unlawful"

Nevertheless, regardless of whether the Rule 8 or Rule 9(b) standard applies, "whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made [at the pleading stage]." *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Even assuming Rule 9(b) applies to Plaintiffs' consumer fraud-based claims[4], Plaintiffs' allegations are sufficient.

In alleging fraud, the plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The plaintiff's allegations of fraud or mistake must be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). This requires the plaintiff to allege fraud or mistake by identifying "the who, what, when, where, and how" of the misconduct charged. *Id.* "Rule 9(b) 'may be relaxed as to matters within the opposing party's knowledge.'" *Rubenstein v. Neiman Marcus Grp. LLC*, 687 Fed. Appx. 564, 567 (9th Cir. 2017). "In those cases, a 'pleading is sufficient under Rule 9(b) if it identified the circumstances constituting fraud so that a Defendant can prepare an adequate answer from the allegations.'" *Id.*

Plaintiffs adequately alleged the who, what, when, where and how to provide Kodiak with sufficient notice of its misconduct: (i) ***the "who"*** is Defendant Kodiak Cakes, LLC (ECF # 37 ¶ 69), (ii) ***the "what"*** is Kodiak's unlawful non-functional slack fill packaging and five discrete marketing claims that have been disseminated on Kodiak's packaging and labeling as well as through Kodiak's website and online advertisements (*see, e.g., id.* at ¶¶ 6, 10, 16), (iii) ***the "when"*** is since January 1, 2015 throughout the class period (*id.* at ¶ 149; *see also* Ex. B, Ltrs to Kodiak (providing

---

prongs of the UCL, Plaintiffs need only meet Rule 8's notice pleading standard. *Vess*, 317 F.3d at 1105 ("allegations of non-fraudulent conduct [under the UCL] need satisfy only the ordinary notice pleading standards of Rule 8(a).")

[4] Rule 9(b) does not apply to Plaintiffs' breach of warranty or restitution based upon quasi contract claims as those claims do not sound in fraud. *See* Fed. R. Civ. P. 9(b).

-10-

details about specific purchases during the class period)), (iv) **the "where"** is Kodiak's package labels and marketing advertising including "statements made on Kodiak Cakes' online store, on Kodiak Cakes' social media profiles on Instagram and Facebook, on the Kodiak Cakes website and blog, on Amazon and/or on the Shark Tank episode that aired on ABC" (ECF #37 ¶¶ 63-64; *see also, e.g., id.* at ¶ 16); (v) ***"the how"*** is satisfied through the detailed allegations of the FAC that alleges that Kodiak's packaging is in violation of federal and state slack fill laws, that Kodiak's labels and advertising are false and misleading, and that Plaintiffs reasonably relied on those statements to purchase products they would not have purchased otherwise or paid less for (*see, e.g.,* ECF # 37 ¶¶ 82-148).

Courts have repeatedly held that allegations like Plaintiffs' here are sufficient in misbranded food cases to pass muster under Rule 9(b).  *Astiana v. Ben & Jerry's Homemade, Inc.*, C 10–4387 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011) (in case involving alleged misrepresentations concerning ice cream, "[t]he 'who' is Ben & Jerry's, Breyers, and Unilever. The 'what' is the statement that ice cream containing alkalized cocoa is 'all natural.' The 'when' is alleged as 'since at least 2006,' and 'throughout the class period.' The 'where' is on the ice cream package labels. The 'how the statements were misleading' is the allegation that defendants did not disclose that the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege is a 'synthetic.'"); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013) (finding sufficient pleading under Rule 9(b) that the "'who' is Bromley Tea Company and other defendants; the 'what' is nine discrete types of unlawful and deceptive claims by Defendants on the labeling and packaging of its products, including Pure Green Tea and 100% Organic Pure Black Tea, as well as on its website; the 'when' is since 2008 and throughout the class period; the 'where' is Bromley's package labels and website. The complaint alleges that Defendant's product labels and website were in violation of the Sherman Law, and that Plaintiff reasonably relied on those statements to purchase products he would not

-11-

have purchased absent these allegedly deceptive statements, satisfying the requirement to demonstrate 'how' the statements were misleading."); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2013 WL 5407039, at *3 (N.D. Cal. Sept. 25, 2013) (denying motion to dismiss based on failure to plead specificity under Rule 9(b) because "plaintiffs have identified 'the who' as defendant and 'the when' as the timeframe for the class allegations. Plaintiffs have also identified with specificity the precise representations alleged to be illegal, fraudulent and misleading, as well as the specific products on which that language is found.").

Kodiak continues to distort the factual allegations in the FAC and attempt to argue that Plaintiffs alleged only the "same conclusion: they were all exposed to the terms and they were all deceived." (ECF # 44-1 at 8.) But allegations that Plaintiffs read the marketing claims displayed on the package labels and relied on them in deciding to purchase the product *is a fact*, not a legal conclusion.

Kodiak also ignores all the detailed allegations in the FAC and continues to repeat that Plaintiffs alleged "no facts" as to their purchase decisions, what terms they relied on for specific products, when they saw the terms, or how the terms were false and misleading. (ECF #44-1 at 8-9.) Again, this is simply false. (*See, e.g.,* ECF #37 ¶¶ 63-64; *see also* ¶¶ 16, 18, 29, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60; *see also* ECF # 37, Ex. B, Ltrs to Kodiak detailing Plaintiff's purchases, reliance on deceptive practices and how they were deceived). A simple read-through of the FAC eviscerates Kodiak's argument.

Kodiak argues that evidence of the labels it seeks judicial notice of (ECF #44-2)[5] shows that some of the packaging does not contain the five misrepresentations and, therefore, the FAC must be dismissed because Plaintiffs did not identify the exact version of the labels they relied on. (ECF # 44-1 at 9.) Even if true, however, this fact does not require dismissal. Indeed, district courts have expressly rejected

---

[5] For all the reasons stated in Plaintiffs' Objection, the Court should deny Kodiak's request for judicial notice of the labeling exhibits.

-12-

1    Kodiak's very argument.  As explained in *Ang v. Bimbo Bakeries USA, Inc.*:

2
> Plaintiffs have identified the specific representations they
3
> claim were made by defendant and that they relied on.
> That is sufficient at this juncture. Even if the Court were
4
> to take judicial notice of the labels submitted by defendant,
> the fact that some labels for Thomas' Plain Bagel Thins
5
> may not state that they are an "excellent source of fiber"
> does not undermine plaintiffs' reliance on a Thomas' Plain
6
> Bagel Thins label that did make that claim (as the Court
> must assume occurred at this juncture).

7    2013 WL 5407039, at *4; *see also Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-

8    LHK, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014) (denying defendant's

9    motion to dismiss: "whether and when Gerber's product labels changed during the

10   class period is a factual issue not appropriately resolved at this stage of the

11   litigation.").

12          Finally, Kodiak's attacks on Plaintiffs' allegations concerning the *Shark Tank*

13   episode are misplaced.  First, Plaintiffs sufficiently allege that they ***did see*** the *Shark*

14   *Tank* episode.  (ECF # 37 ¶ 64.)  But even if they didn't, Plaintiffs' *Shark Tank*

15   allegations support Plaintiffs' position that the five marketing claims are a part of

16   Kodiak's decades-long, extensive advertisement campaign.  *In re Tobacco II Cases*,

17   46 Cal. 4th 298, 328 (2009).  In cases where, like here, "plaintiff alleges exposure to

18   a long-term advertising campaign, the plaintiff is not required to plead with an

19   unrealistic degree of specificity that the plaintiff relied on particular advertisements

20   or statements."). (ECF #37 ¶¶ 12, 13, 70-71, 112, 133.)  Taking all factual allegations

21   as true as the Court must do at this stage of the case, *Tobacco II Cases* and their

22   progeny compel denying Kodiak's challenges under Rule 9(b).

23          *Haley v. Macy's, Inc.* cited by Kodiak does nothing to support its argument.

24   That case involved claims challenging Macy's deceitful pricing practices.  263 F.

25   Supp. 3d 819, 823 (2017).  The challenged allegations there were far lacking and in

26   stark contrast to the detailed FAC in this case.  In *Haley*, not all the named plaintiffs

27   identified the products they purchased and merely described them as "numerous

28   clothing items, including one sports clothing item."  *Id.*  Furthermore, the plaintiffs

-15-

there did not claim that *all* Macy's clothes were deceptively priced.  *Id.*  Thus, the defendant had absolutely no way to identify the transactions involving purportedly misleading prices to mount a defense against the plaintiff's allegations.  *Id.*  Nor did the plaintiffs in *Haley* identify the misleading statements that they relied upon and only generally noted the "price tags, sales labels or on signs above the merchandise" were misleading.  *Id.*  But here Plaintiffs identified five distinct false and misleading claims Kodiak misrepresented.  (*See, e.g.,* ECF # 37 ¶ 10.)

Lastly, the *Haley* court found that the plaintiffs did not demonstrate the *"how"* of Rule 9(b), because they only alleged "on information and belief that Defendants did not sell their products at the original or regular price, while at the same time asserting that they have no realistic way to know whether that is true." *Haley,* 263 F. Supp. 3d at 824.  Again, this is distinct from the FAC that provides specific allegations regarding Kodiak's deceitful slack fill practices and marketing practices and why each of these are misleading.  (ECF #37 ¶¶ 82-92, 119-129, 140-142)[6]

## V.  PLAINTIFFS' NATIONWIDE CLASS CLAIMS SURVIVE DISMISSAL

### A. Kodiak's Argument that Plaintiffs Lack Standing to Assert Nationwide Class Claims is Premature

Kodiak argues that Plaintiffs lack standing to bring claims based on laws of states in which they do not reside.  (ECF #44-1, at 10.)  This is nothing more than a premature attempt to address class certification issues at the pleading stage.

The very argument Kodiak asserts here was expressly rejected by the Central District of California in *Robinson v. Unilever,* No. CV173010DMGAJWX, 2018 WL 6136139, at *1 (C.D. Cal. June 25, 2018).  In *Robinson*, the defendant sought to dismiss Plaintiffs' nationwide class claims on the grounds that the Plaintiff lacked standing to represent absent putative class members who are citizens of other states.

---

[6] Kodiak also specifically challenges Plaintiffs allegations under section 1770(a)(9) of the CLRA on the grounds that Plaintiffs' did not sufficiently allege an intent to defraud.  Taking the complaint as a whole and all factual allegations as true as this Court must, Plaintiffs did sufficiently plead such allegations.  (ECF #37 ¶¶ 11, 168, 186-87.)

*Id.* at \*3.  Relying on the Ninth Circuit opinion in *Melendres*, the court concluded that defendant's arguments were premature at the motion to dismiss stage.  *Id.*  The court held that "'[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of *typicality* and *adequacy* of representation.'"  *Id.* (citing *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) (emphasis in the original)); *see also Melendres*, 784 F.3d at 1261-62 (warning of "conflat[ing] standing and class certification").[7]

Here, Kodiak does not contend that any of the Plaintiffs lack standing to bring individual claims on this ground.  Thus, under the Ninth Circuit's controlling authority, "the standing inquiry is concluded."  *Melendres*, 784 F.3d at 1261.[8] Thus, Kodiak's challenges to whether Plaintiffs have standing to assert claims based on the laws of the states in which they do not reside must wait until Plaintiffs' motion for class certification.  *See Robinson,* 2018 WL 6136139, at \*4.

Kodiak's citation to *Mazza* is misplaced and confuses the issue.   Because Plaintiffs seek to apply the laws of each state in which the unnamed plaintiffs reside, the FAC is *consistent* with *Mazza.  Mazza* merely precludes application of California law to class members from *states whose consumer protection laws **differ materially** from California's*.  It does not categorically rule out application of California law to out-of-state class members.  *Mazza* simply stands for the proposition that a detailed

---

[7] Consistent with *Melendres*, but ordered before it, *Viggiano v. Johnson & Johnson*, No. CV1407250DMGMRWX, 2015 WL 12860480, at \*6 (C.D. Cal. June 12, 2015) held it would be premature to decide the issue of standing with respect to out-of-state state law claims.  *Viggiano* explained, "[d]eciding the Article III standing issue [on out-of-state claims] before class certification would be premature because 'there is no question that the proposed class would have standing to assert non-[state] claims if it were certified.'"

[8] Courts sitting in other federal districts have similarly held that "where a named plaintiff has established individual standing to bring specific claims against a defendant in his or her own right, but asserts parallel common law claims arising under different states' laws on behalf of a putative class," the issue is resolved in connection with Rule 23's requirements."  *See, e.g., In re Checking Account Overdraft Litig.*, 2016 WL 5848730, at \*4 (S.D. Fla. July 5, 2016).

choice of law analysis is required.  *See, e.g. Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN RBB, 2014 WL 1666427, at *2 (S.D. Cal. Apr. 17, 2014) (denying motion to strike nationwide classes for California consumer statutes).  In any event, *Mazza's* limited holding is of no avail to Kodiak because Plaintiffs' nationwide class does not seek to apply only California law to non-resident's claims.  The FAC makes clear that Plaintiffs seek to recover under the laws of each state's consumer protection laws. (ECF # 37 ¶ 166; *see also id.* at ¶ 149 (alleging multi-state and single state subclasses).)

## B. Plaintiffs' Count I is Properly Pleaded

Kodiak challenges Count I on issues of form over substance.  It is silly to continue useless Rule 12 motion practice on issues such as this that can be readily re-pleaded.  Kodiak argues that Plaintiffs' Count I fails *procedurally* because it cites each state's laws in a single count in violation of FRCP 8 and 10. (ECF #44-1 at 11.) As a preliminary issue, Kodiak did not move this Court for remedies under FRCP 10 and, thus, dismissal on this basis is improper.  (ECF #44 (moving the Court under FRCP 8, 9(b), 12(b)(1) and 12(b)(2).)  Even so, Count I does not violate Rule 10. Rule 10 merely provides that "A party must state its claims or defenses in numbered paragraphs."  Fed. R. Civ. P. 10(b).  That requirement is satisfied.  (ECF #37 ¶ 166(a)-(yy)-178.)  Similarly, Kodiak does not cite any portion of Rule 8 that requires that Plaintiffs plead Count I as Kodiak asserts.[9]

## C. Plaintiffs' Warranty and Restitution Claims Are Properly Pled

Kodiak makes another procedural challenge to Plaintiffs' causes of action for warranty and restitution and argues that Count I fails because it does not identify any

---

[9] The authorities cited by Kodiak are distinguishable.  In *Swafford*, the plaintiff titled the Count "Violation of California Labor Code" but in fact challenged several laws under the labor and separate violations under the Civil Code.  *Swafford v. IBM*, 383 F. Supp. 3d 916, 932 n.4 (N.D. Cal. 2019).  The plaintiff there tried to lump together different theories of liability.  Here, Plaintiffs have the same theory of liability and refer to the different citations of each state's specific statute.  Same for *Sailing v. Royal,* 2015 WL 5255367, at *4 (E.D. Cal. Sept. 9, 2015).

state's law that applies.  (ECF # 44-1 at 12.)  Kodiak maintains Plaintiffs failed to "identify *any state's law* that applies."  (*Id.* (emphasis added).)

Not so.  The FAC provides that Plaintiffs seek to recover under the laws of their 11 respective home states as well as seeking redress on behalf of a nationwide class under state laws that are substantially similar.  (ECF # 37 ¶¶ 149, 166.)  These allegations were stated in the Class Allegations as well as in Count I, which was entirely incorporated by reference into Counts V and VI.  (*Id.* at ¶ 149, 166, 211, 217.)  Moreover, it is clear from Counts II-IV that relate to California-specific law, that Plaintiffs are not seeking to apply California law to the nationwide class.  The allegations regarding violations of California-specific state statutes allege that these claims are being asserted only on behalf of the California class.  (*Id.* Counts II-IV alleging relief only on behalf of the Single-State California class.)  Drawing all reasonable inferences in favor of the pleading party as the Court is required to do (*Starr v. Baca*, 652 F.3d, 1202, 1216 (2011)), these Counts properly plead relief.

Second, the authorities Kodiak relies upon are distinguishable.  The ruling in *Augustine* concerned a complaint brought only by California residents seeking claims on behalf of a nationwide class where there was "no way to determine of the multi-state claims have been adequately pled absent the identification of the relevant state laws."  *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019).  That is not the case, here – Plaintiffs' allegations state that they are seeking relief on behalf of each of their respective state's laws and substantially similar laws.  Furthermore, in *Brown v. Starbuck's* the court found the plaintiffs' claims under common law warranty claims failed because "neither Starbucks nor the court can determine whether Brown alleges California law applies to the claims of out-of-state putative class members, or if she alleges the laws of various unidentified states apply to these putative class members' claims."  *Brown v. Starbucks Corp.*, No. 18CV2286 JM (WVG), 2019 WL 4183936, at *7 (S.D. Cal. Sept. 3, 2019).  There is no similar confusion, here.

-17-

Third, Kodiak cites *Mazza* to support its argument for dismissal.  (ECF # 44-1 at 12.)  Kodiak's basis as to how *Mazza* requires dismissal of the common law claims that are clearly not seeking to apply California law to out-of-state residents is unclear.  Nonetheless, and as explained in Section V.A, *supra*, the FAC is consistent with *Mazza* in that Plaintiffs are not seeking to apply California law to non-resident plaintiffs whose state's laws materially conflict with California – which is all the *Mazza* stands for.

## VI.   PLAINTIFFS' ALLEGATIONS OF CONSUMER FRAUD PLEAD A PLAUSIBLE CLAIM OF DECEPTION

As Kodiak correctly states, Plaintiffs' consumer fraud claims are analyzed under the "reasonable consumer" test.[10] (ECF #44-1 at 13.) The reasonable consumer is "neither the most vigilant and suspicious of advertising nor the most unwary or unsophisticated, but instead is the ordinary consumer with the target population. *Chapman v. Skype*, 220 Cal. App. 4th 217, 226 (2013).  This is an objective standard. A plaintiff asserting violations based on consumer fraud need "only to show that members of the public are likely to be deceived. *Chapman*, 220 Cal. App. 4th at 226. At the motion to dismiss stage, "the relevant inquiry is not what the consumer *actually* believes, but whether Plaintiff has plausibly pleaded facts indicating what a reasonable consumer *could* believe."   *Escobar v. Just Born Inc.*, No. CV1701826BROPJWX, 2017 WL 5125740, at *10 n.5 (C.D. Cal. June 12, 2017); *see also Williams,* 552 F.3d at 940 (reversing the district court's dismissal of the plaintiff's complaint and finding that, "given the opportunity, [the plaintiffs] have

---

[10] The laws of the states of the out-of-state Plaintiffs are also based upon an objective "reasonable consumer" standard.  *See Rhino Linings USA, Inc. v. Rocky Mt. Rhino Lining, Inc.*, 62 P.3d 142, 148 (Colo. 2003); *McDevitt v. USA Xpress Hardwood Flooring, Inc.*, No. FSTCV166028183S, 2017 WL 1429863, at *1 (Conn. Super. Ct. Mar. 24, 2017); *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (Florida); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (Illinois); *Aspinall v. Philip Morris Co., Inc.*, 813 N.E.2d 476, 487 (Mass. 2004); *Food Parade, Inc. v. Office of Consumer Affairs of Cty. of Nassau*, 859 N.E.2d 473 (N.Y. 2006); *Peterson v. Kitsap Cmty. Fed. Credit Union*, 287 P.3d 27, 37-38 (Wash. 2012); *Dix v. Am. Bankers Life Assur. Co. of Florida*, 415 N.W.2d 206, 209 (Mich. 1987); *Sauro v. L.A. Fitness Int'l, LLC*, No. CIV. 12-3682 JBS/AMD, 2013 WL 978807, at *5 (D.N.J. Feb. 13, 2013).

-18-

stated a claim and *could* plausibly prove that a reasonable consumer would be deceived by the Snacks packaging").

Courts have also clarified that the reasonable consumer test must be evaluated from the vantage of a reasonable consumer, not the vantage of the defendant. *See Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014) (Defendant's argument that the representations are literally true because the term '100%' only applies to the ingredients in the products that provide protection from the sun (and not to other ingredients in the lotions that serve other purposes) rests on one possible interpretation of the language, but it is not the only possible interpretation."). Thus, whether reasonable consumers would adopt a defendant's interpretation or plaintiff's interpretation should not be resolved on the pleadings. *See id.; see also Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013) ("Whether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion."); *Bruton,* 2014 WL 172111, at *10.

Kodiak argues that the Court can rule, as a matter of law, that no reasonable consumer would be deceived or misled by Kodiak's slack fill practices or its marketing messages. The Ninth Circuit has at least twice reversed dismissal on the pleadings where the defendants made similar arguments in food labeling cases. *See Williams*, 552 F.3d at 938; *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016). In those decisions, the Ninth Circuit held that "[w]hether a business practice is deceptive, misleading, or unfair is ordinarily a question of fact to be decided by a jury," and that it is only "the rare situation" in which that issue can be resolved on the pleadings. *Balser*, 640 F. App'x at 696; *Williams*, 552 F.3d at 938-39; *see also Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir.

2016) (reversing summary judgment for defendant in "natural" labeling case due to question of fact over the reasonable consumer standard).

Kodiak asks this Court to make the same reversible error made by the district courts in *Williams* and *Balser*.  Kodiak's motion should be denied.

### A. Kodiak Has Failed to Show that No Reasonable Consumer Could Find the Size of the Slack Fill Products Misleading

"Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity" for no functional purpose.  21 C.F.R. § 100.100; *see also* 15 U.S.C. 1454(c)(4).  Federal law recognizes that ***non-functional slack fill packaging objectively deceives consumers and is deceptive <u>as a matter of law</u>***. *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 215 F. Supp. 3d 51, 61 (D.D.C. 2016) ("non-functional slack-fill is considered deceptive as a matter of law"); 21 C.F.R. § 100.100 ("A container that does not allow the consumer to fully view its contents [is] considered to be filled as to be misleading if it contains nonfunctional slack-fill."); *see also* Vincent A. Kleinfeld, Legislative History of the Federal Food, Drug, and Cosmetic Act, 50 Food & Drug L.J. 65, 82 (1995) (quoting Report of the Senate Committee on Commerce (Senate Report No. 361, Seventy-Fourth Congress, First Session)) (slack fill products "create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label").  Taking direction from (and outright copying) federal law, forty-nine states (and the District of Columbia) have also enacted laws establishing that packages cannot contain misleading slack fill.  (ECF #37 at ¶¶ 5, 163 n.4.)

Contrary to this established law, Kodiak asserts numerous challenges to Plaintiffs' non-functional slack fill allegations on the grounds that a reasonable consumer could not be misled.  These arguments fail.

### i.  Kodiak does not defend Plaintiffs' claims on the grounds that any slack fill is *functio*nal

Notably, Kodiak does *not* argue that any of the empty space inside the product

-20-

packing *is functional* and therefore does not violate Cal. Bus. & Prof. Code § 12606.2. Instead, Kodiak solely maintains that no reasonable consumer could be misled by Kodiak's slack fill packaging. This is an important distinction that prevents dismissal of Plaintiffs' UCL claim as it relates to unfair and unlawful conduct in violation of section 12606.2. Since Kodiak does not challenge the sufficiency of the allegations for violation of 12606.2, Plaintiffs' claims for unfair and unlawful conduct survive. *See Buso v. ACH Food Companies, Inc.*, 445 F. Supp. 3d 1033, 1040 (S.D. Cal. 2020) (analyzing separately defendants' challenges to slack fill claims based on the reasonable consumer standard and for violation of section 12606.2 as a predicate for his UCL (unfair and unlawful prong) claim and permitting amendment as it relates to Plaintiffs' theory under the UCL).

Furthermore, even looking at Kodiak's own product line demonstrates that there can be no functional purpose for the empty space within the packages. (ECF # 37 ¶¶ 85-86.) In the same size box, Kodiak sells as much as 24 ounces and as little as 12.7 ounces, with no plausible explanation for the difference. This is as much as a 50% difference in fill across Kodiak's very own products. (*See id.*) Other district courts have found allegations of this same practice of underfilling packages within a manufacturer's own product line sufficient to surpass the pleading stage and form the basis for class relief. *See In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 422 F. Supp. 3d 194, 268 (D.D.C. 2019).

### ii.    Plaintiffs sufficiently allege that a reasonable consumer can be misled by a baking mix that requires cooking

Kodiak argues that no reasonable consumer could be misled by Kodiak's non-functional slack fill because the boxes state elsewhere on the package exactly "how much product is inside in weight, serving sizes, and often *by final product output*." (ECF #44-1 at 13). This argument necessarily (and improperly) considers facts outside the pleadings, which is inappropriate at this stage of the case. (*See* ECF 44-1 at 14 (Kodiak referencing Exhibits 1-21 and 30-31 to its request for judicial

notice).)  But even if these labels were properly considered, this Court could not rule *as a matter of law* that no reasonable consumer would be misled.

**First,** Kodiak misconstrues Plaintiffs' theory of liability for non-functional slack fill.  The essence of Plaintiffs' allegations is not that Kodiak made misrepresentations of the printed weight of the product, the serving size or product yields.  Plaintiffs allege that ***the design and exaggerated size of the box itself*** compared to the amount of contents inside is misleading.  (ECF #37 ¶¶ 7-9, 83.)

**Second,** Kodiak asserts that other indicators on the boxes, such as net weight, serving size, and final product output (i.e. 12 muffins) ameliorate any deception regarding the exaggerated size of the box.  (ECF #44-1 at 14.)   This argument asks this Court to hold that manufacturers shall be permitted to mislead consumers on the face of the packaging only to task consumers with the duty of relying on the small print elsewhere on the package to correct those misrepresentations.   This argument has already been rejected by the Ninth Circuit.  *See Williams,* 552 F.3d at 939 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").   The Food and Drug Administration takes the same position.  *See* Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100) ("the presence of an accurate net weight statement does not eliminate the misbranding … when a container is made, formed, or filled so as to be misleading.").

**Third,** several courts have held that the "reasonable consumer is not necessarily aware of a product's weight or volume and how that weight or volume correlates to the product's size." *Escobar*, 2017 WL 5125740 at *9.  Thus, "even if a product's packaging accurately displays its weight, it does not mean that the way in which the product was packaged may not be misleading." *Id.*  Indeed, the Ninth Circuit and California courts have recognized when addressing CLRA, UCL, and FAL claims that "even technically correct labels can be misleading." *Bruton*, 2017

WL 1396221, at *2; *see also In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) ("A statement may be deceptive and actionable under the UCL, FAL, and CLRA even though it is truthful."); *see also Morgan v. AT & T Wireless Servs., Inc.,* 177 Cal. App. 4th 1235, 1255 (Cal. Ct. App. 2009) (explaining that "[a] perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information" may give rise to a UCL claim (internal quotation marks omitted)).

**Fourth,** should the Court consider the labeling exhibits in ruling on this Motion, Kodiak's Cinnamon Oat Flapjack and Waffle Mix is a prime showing of how these additional indicators regarding net weight, serving size and yields could *actually add* to the deception of the reasonable consumer in the face of the oversized box rather than ameliorate it.  For example, the Cinnamon Oat Mix indicates that it contains 11 servings per container and provides recipes for flapjacks, waffles, muffins (12) *and* snickerdoodle cookies (24).  (*See, e.g.,* ECF #44-5 (Cinnamon Oat).)  A reasonable consumer *could* interpret this to mean that he or she could conceivably make 11 servings of 24 cookies, or a combined 11 servings of 24 cookies, 12 muffins, and three 4" flapjacks, etc.  When combined with the oversized box, these additional indicators could actually further the deception and lead the reasonable consumer to believe that there is significantly more product inside the box given all the baking varieties and options that could be made from a single box. *See Williams,* 552 F.3d at 939 (recognizing a number of features of the packaging perceived collectively furthered the likelihood to deceive the reasonable consumer). Thus, these varieties of recipes and additional indicators make it *less clear* to consumers "what they are getting" as Kodiak would have it. (ECF #44-1 at 14.)  At a minimum, Plaintiffs have sufficiently pled that a reasonable consumer *could* be misled but such misrepresentations.  *See Williams,* 552 F.3d at 939.

**Finally,** the authorities Kodiak cites are distinguishable.  In *Kennard*, it was "*undisputed* that the Alexia product packaging discloses the product net weight, the

-23-

number of fries per serving, and the approximate number of servings per container." *Kennard v. Lamb Weston Holdings, Inc.*, No. 18-CV-04665-YGR, 2019 WL 1586022, at *5 (N.D. Cal. Apr. 12, 2019) (emphasis added).  In this case, Plaintiffs *dispute* what statements were made to consumers on the package about net weight, serving size or final product.  (*See* Pltf.'s Obj. to RJN.)  In addition, the court held that the product at issue did *not* have any additional indicators that a reasonable consumer could draw a belief based on how much product is included in the package. As we know from Kodiak's own admission, that is not the case here.  (ECF #44-1 at 14 (recognizing multiple indicator on the box such as serving size, net weight, and recipes with total yields).)  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016), is also distinguishable.  *Ebner* involved slack fill claims of the end of the product left in the bottom of the "push-up" container of chapstick.  *Id.*  There, the court found that no reasonable consumer could be misled as to the amount of chapstick in the product because it disclosed the net weight *and* the consumer would tell at the end of the stick that there *was* more product at the time and then make the decision to use a small tool or finger to extract it.  *See id.*  These facts are entirely distinguishable from the product and slack fill claims at issue, here.

### iii.    No Authority Exists that Slack Fill Excludes Online Purchases

Kodiak cites ***no authority*** other than its own novel interpretation of California's slack fill statute to support its argument that liability for slack fill is limited to in-person/in-store purchases and cannot attach to a product purchased online.  (ECF # 44-1 at 15.)  No court has dismissed slack fill claims or limited class certification to only in-store purchasers.   Rather, courts routinely find slack fill allegations sufficient when they include online purchases and certify class actions for all purchasers of the product, regardless of the mode in which the consumers bought the product.  *See, e.g., Escobar,* 2019 WL 2619636, at *1 (granting class certification of California purchasers, without excluding online sales of purchasers of Mike and Ikes); *In re McCormick*, 422 F. Supp. 3d at 268 (D.D.C. 2019) (applying Cal. Bus. &

-24-

Prof. Code § 12606(c) to California slack fill claims and granting class certification of all purchasers from California, Florida, and Missouri (both in store and online) of pepper products).  Kodiak provides no explanation for these decisions that directly contravene its unilateral interpretation of California's slack fill statute[11].

Furthermore, Kodiak's argument is limited to California's Fair Packaging and Labeling Law under Cal. Bus. & Prof. Code 12606.2.  Kodiak states in a conclusory fashion, without any support that "even under federal regulations, a reasonable consumer could never be misled."  Not so.  Other slack fill laws, including federal law, do not contain similar provisions regarding "mode of commerce."  *See* 21 C.F.R. § 100.10; *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (apply federal law and finding plaintiff properly pleaded the "where" for her slack fill deception claims as Illinois stores and online).  Thus, even if the court deems Kodiak's interpretation correct, it applies only to Bus. & Prof. Code section 12606.2, and Plaintiffs' claims for violation of the UCL based on predicate violations of 21 C.F.R. § 100.10 remain alive.

### iv.   Allegations that Plaintiffs Couldn't Compare Price Per Ounce or Shake the Product to Feel its Weight Are Not Required

Kodiak argues that Plaintiffs' slack fill claims do not meet the plausibility requirement of Rule 8 because Plaintiffs do not allege that they were precluded from comparing prices by price per ounce statements.  (ECF #44-1, 15-16.)  ***Kodiak has not provided a single authority*** that requires allegations that Plaintiffs were unable to compare the price per ounce against other products to survive dismissal of slack fill allegations.  (*See id.*)  Kodiak also provides ***no support*** for its own conclusory interpretation that the reasonable consumer is "price conscious [and] looks at the price per ounce to compare to other products."  (*Id.* at 15.)  As explained above, courts

---

[11] The California legislature made clear that section 12606.2 "shall all be interpreted consistent with the comments by the [FDA] on the regulations contained in [the CFR]."  Cal. Bus. & Prof. Code § 12606.2(e).  The FDA makes no limitation as to the mode of commerce excluding online purchases.  *See id.*; *see also* 21 C.F.R. § 100.100.

-25-

will not entertain these arguments on a Rule 12 motion. *See Jou,* 2013 WL 6491158, at *7 (whether the reasonable consumer would agree with defendants' interpretation is not a question that can be resolved on a 12(b)(6) motion).

Furthermore, Kodiak's argument that Plaintiffs' slack fill claims must be dismissed for failure to allege that Plaintiffs "could not pick up the Kodiak products and competitor products to compare for themselves how heavy they were" is not an appropriate inquiry at this stage of the case. "Whether a reasonable consumer would think to shake, squeeze, or manipulate the . . . box, and whether that reasonable consumer would actually be able to feel the existence of slack-fill, are questions of fact that are inappropriate for resolution at the motion to dismiss stage." *Escobar,* 2017 WL 5125740, at *11 (citation omitted).

*Buso v. ACH Food Co.* relied on by Kodiak is distinguishable. As a preliminary issue, before the court in *Buso were* facts regarding the net weight and serving size of the product. None of this is before the Court, here. (*See* Pltf.'s Obj. to RJN.) But if it were, the facts demonstrate that the representations between the cornbread mix in *Buso* and the baking mixes in this case are materially different and warrants a different result. In *Buso,* the court noted that the box, in addition to stating net weight and serving size, represented that it "contains enough cornmeal mix to make 'one 8-in square loaf of cornbread or 12 standard cornbread muffins.'" *Buso v. ACH Food Companies, Inc.*, 445 F. Supp. 3d 1033, 1038 (S.D. Cal. 2020). As explained above in Section VI.A.ii, this simple representation is much different than disclosures Kodiak has made during the class period where it is unclear how many servings of waffles, flapjacks, cookies and muffins each box can make.[12]

---

[12] Kodiak's reliance on *Buso v. Vigo Importing Co.*, No. 18CV1328-WQH-BGS, 2018 WL 6191390 (S.D. Cal. Nov. 28, 2018) also does not move the mark. That case involved a *pliable, soft* package "where the consumer can see and feel the package and perceive the amount of product in the package before purchasing the Risotto mix." *Id.* at 5.

### v.    Slack fill claims are not limited to the initial purchase

Kodiak argues that "Any subsequent purchase after the first purchase, with knowledge of the fill level, cannot plausibly show harm during the first purchase or any subsequent purchase." (ECF #15-16.)  Kodiak provides **no authority** to support this conclusion and it is inappropriate for the court to resolve interpretations of what the reasonable consumer could be misled by based on the pleadings. *Fagan*, 2014 WL 92255, at *2; *Jou*, 2013 WL 6491158, at *7; *Burton*, 2014 WL 17211, at *10. Furthermore, Kodiak's reasoning is flawed – the fact that the Plaintiffs discovered Kodiak's deceptive packaging in one instance does not make the packaging less misleading or mean that the deception is not ongoing. *Chester v. TJX Companies, Inc.*, No. 515CV01437ODWDTB, 2016 WL 4414768, at *8 (C.D. Cal. Aug. 18, 2016) ("inconceivable" to think that "relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice shame on me.'").

Plaintiffs properly allege that *each time* they purchased the product, they were unable to view the amount of product inside the opaque box and believed that the package contained substantially more mix inside than it actually did. (ECF #37 at ¶ 23.)  Kodiak's practices caused Plaintiffs to purchase the products they otherwise would not have purchased or would have at a minimum paid less for the products. (*Id.*)  This satisfies Plaintiffs' pleading burden. *See* Fed. R. Civ. P. 8.

Lastly, Kodiak's argument concerning Plaintiffs' allegation that upon opening the products, they believed that any empty space they may have observed was for some functional purpose is consistent with Plaintiffs' slack fill allegations.  But even if they were to be construed contradictory, nothing prevents Plaintiffs from alleging alternative theories as a basis for relief. *See* Fed. R. Civ. P. 8(a)(3), 8(d)(2).

### B. Plaintiffs Have Adequately Alleged Injury Caused by Slack Fill

Kodiak repeats its arguments that Plaintiffs cannot show injury or show that they have been deceived by subsequent purchases of slack fill products. (ECF #44-1 at 17-18.)  Kodiak therefore concludes that Plaintiffs have no standing to assert

slack fill claims.  (ECF #44-1 at 17-18.)  Simply because this argument is repeated does not make it any more forceful.  Kodiak continues to cite **no support** for this conclusion as it regards multiple purchases and this argument fails for all the same reasons stated in Section VI.A.v.  Plaintiffs have alleged that they would not have bought the slack fill products or, at a minimum, would not have paid as much for them but-for Kodiak's deceptive packaging.  (ECF #37 ¶ 62.)  This is sufficient to establish injury and standing to assert slack fill claims.  *Escobar*, 2017 WL 5125740, at *4 (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013)).

### C. The Size of the Box *Is* a Representation

Kodiak argues that slack fill is not a "representation" under the CLRA and thus, and thus Plaintiffs' CLRA claim on the grounds of slack fill must be dismissed. (ECF #44-1 at 18.)  Kodiak maintains that the *only* misrepresentations relating to slack fill on the box show total ounces and product yields.  (*Id.*)  Again, Kodiak misconstrues Plaintiffs' slack fill theory.  Plaintiffs do not argue Kodiak misrepresented the net weight or product yields.  Plaintiffs allege that the design and exaggerated size of the box itself compared to the amount of contents inside is misleading.  (ECF #37 ¶¶ 7-9, 83.)  The size of the box itself *is a representation.* Kodiak cites **zero authority** that a representation must be written or oral.  (ECF #44-1 at 18.)  This argument should be disregarded.

### D. A Reasonable Consumer Could be Misled by "Protein-Packed"

Kodiak argues that Plaintiffs' allegations for the claim "Protein-Packed" is implausible because the number of grams of protein is stated in bold font on the front of the package.  (ECF #44-1 at 18.)  This argument incorrectly assumes that the packaging was the same *for all the products throughout the class period* and that all products did in fact represent the number of grams of protein on the front of the package.  But that is not the case.  (*See* Vasquez Decl. to Pltf. Opp. to RJN ¶ 4.)  At this juncture, the Court must accept Plaintiffs' allegations as true that they were misled by the term "protein-packed" on the product label and were misled. *Ang,* 2013

-28-

1   WL 5407039, at \*4; (ECF #37 ¶¶ 127-131.)

2        Kodiak also argues that the phrase "protein-packed" is non-actionable puffery

3   upon which no reasonable consumer could rely.  (ECF #44-1 at 19.)  "Puffing" has

4   been described as involving "outrageous generalized statements, not making specific

5   claims, that are so exaggerated as to preclude reliance by consumers."  *See In re*

6   *Ferrero Litig.,* 794 F. Supp. 2d at 1115; *Newcal Indus., Inc. v. Ikon Office Sol.*, 513

7   F.3d 1038, 1053 (9th Cir. 2008).  It is a far stretch to maintain that the term "Protein-

8   Packed" rises to the level of puffery as a matter of law, especially given that this

9   phrase asserts a health benefit of high protein.  Health benefit claims are among the

10  most reliance-inducing claims because "consumers rely on health-related claims on

11  food products in making purchasing decisions." *Bruton,* 2014 WL 172111, at \*11.

12       Finally, Kodiak misconstrues Plaintiffs' reliance on the FDA-regulated terms

13  "high in" and "essential source of."  (ECF # 44-1 at 19.)  Plaintiffs do not allege that

14  Kodiak violated federal regulations by its misrepresentations that its products are

15  "Protein-Packed" when they actually contain low levels of protein.  Plaintiffs merely

16  allege that the reasonable consumer believes that the term "Protein-Packed" means

17  that the products are high in protein (> 10 grams per serving).  (ECF #37 ¶¶ 128-29.)

18  Plaintiffs allege that this reasonable belief of > 10 grams/serving is supported by  the

19  FDA's benchmark of how much protein a food product must have to label it "high

20  in" protein.  (*See id.*)  That is what consumers are used to seeing in the marketplace.

21  The fact that Kodiak disagrees with Plaintiffs' interpretation is no grounds for

22  dismissal. *Fagan*, 2014 WL 92255, at \*2.

23      **E.  "Healthy" is NOT "Non-Actionable" Puffery**

24       Kodiak also tries its hand at the "puffing" argument as it relates to the claim

25  that Kodiak's products are "healthy."  For all the same reasons recited in the previous

26  section, it cannot be said as a matter of law that the term "healthy" is sufficiently

27  outrageous and extreme to constitute puffery.  (*See, supra,* Section VI.E.)  Indeed,

28  several courts have rejected this very argument as to this specific term. *See, e.g.,*

-29-

*Ferrero*, 794 F. Supp. 2d at 117-18 ("healthy," or "balanced" not puffery); *Bruton,* 961 F. Supp. 2d at 1095-96 (N.D. Cal. 2013) ("healthy" not puffery).

Kodiak also tries to dismiss this claim as implausible because the term "healthy" was never used on the box.  (ECF #44-1 at 20.)  But whether the statements that Plaintiffs allege they relied actually existed on the packaging and whether those statements would have deceived a reasonable customer are both questions of fact that are not appropriate for resolution at the motion to dismiss stage.  *See Williams*, 552 F.3d at 939; *Young v. Cree, Inc.,* 2018 WL 3659305 (N.D. Cal. Aug. 2, 2018).

Kodiak attempts to argue that Plaintiffs failed to allege that they read or relied on the "healthy" claim in any marketing or advertising.  (ECF # 44-1 at 20.)  This argument is belied by the express allegations in the FAC that Plaintiffs read and relied on the term "healthy."  (ECF #37 ¶¶ 63-64.)  It is also inappropriate to determine this issue as a matter of law.  *Williams*, 552 F.3d at 939.

Kodiak also reasserts its same misplaced reliance on federal law as it relates to Plaintiffs' claims that the term "healthy" is misleading to the reasonable consumer.  (ECF # 44-1 at 20-21.)  But Plaintiffs do not allege that Kodiak violated the CFR.  Plaintiffs allege that they understood Kodiak's use of the term "healthy" to mean that Kodiak's products have low levels of fat, cholesterol and sugar and contain at least 10% or more of the DV of vitamins and nutrients.  (ECF #37 ¶ 139.)  Plaintiffs merely reference the federal regulations governing health claims for the term "healthy" as a benchmark for what the reasonable consumer understands by that term.  (*Id.* at ¶ 140.)

### F. A Reasonable Consumer Could Believe "Free of Artificial Additives" and "No Preservatives" Meant That There Were *NO* Synthetic Ingredients or Preservatives

Contrary to Kodiak's argument, Plaintiffs *do* allege several facts regarding what Plaintiffs believed Kodiak meant when it represented that its products were "free of artificial additives" and contained "no preservatives."  (ECF # 37 ¶¶ 119-125.)  Plaintiffs alleged that the claim "free of artificial additives" meant that there was *nothing* non-natural, synthetic or artificial in the products.  (ECF #37 ¶¶ 98-101,

-30-

104.)  Similarly, Plaintiffs alleged that the claim "no preservatives" meant that there were *no* chemical preservatives, *none* at all. (*Id.* ¶¶ 104, 109, 123, 125.)

Kodiak argues that Plaintiffs claims are implausible because they did not allege that they "never use baking soda or powder" or that "they try to avoid products with those ingredients."  (ECF #44-1 at 23.)  These allegations are irrelevant and not required.  *See Astiana v. Kashi*, 291 F.R.D. 493, 502–03 (2013).  The fact that Plaintiffs may have purchased other foods with or without the representations at issue in this case is irrelevant.  *See id.* at 503. ("that Plaintiffs may also purchase unhealthy… foods says nothing about whether they purchased Kashi products specifically because they were supposedly healthy.").  Plaintiffs need not show that the misrepresentations were the only cause, or "even the predominant or decisive factor," influencing their decision.  *Id.*  That Plaintiffs may have considered other factors has no bearing on their ability to assert claims on behalf of a class.  *Id.*  It certainly is not required on the pleadings.

Finally, Kodiak challenges plausibility on the grounds that the presence of "minor" ingredients such as baking soda and baking powder cannot be misleading to the reasonable consumer as a matter of law.  But this is nothing more than Kodiak's own interpretation of what the reasonable consumer would find misleading.  (ECF #44-1 at 23.)   As stated many times throughout this brief, this is not a proper basis to dismiss these claims at this point in the proceedings.  *Fagan*, 2014 WL 92255, at *2; *Jou*, 2013 WL 6491158, at *7.  Plaintiffs alleged that use of the words "free of" and "no" reasonably meant that the *entire* amount of the product is with or without the claimed quality. (ECF #37 at ¶ 104.) This is sufficient.  *Balser*, 640 F. App'x at 696 ("statements that the products were 'natural' and '100% vegetarian' could be taken as a claim that no synthetic chemicals were in the products."). *Williams* is clear that an ingredient list does not correct, as a matter of law, misrepresentations on the product's label, even if the court could properly consider it (which is cannot). *Williams,* 552 F.3d at 939-40; *see also* Pltf.'s Obj. to RJN.  Thus, Kodiak's argument

-31-

that "baking soda and baking powder are disclosed in the ingredients list" (ECF #44-1 at 23) makes no difference.

### G. A Reasonable Consumer Could be Misled by the Claim "Non-GMO"

Kodiak again attempts to assert its own interpretation as to whether the reasonable consumer would be misled by Kodiak's representation that its products are "non-GMO" to dismiss Plaintiffs' non-GMO claims. (ECF #44-1 at 24.) As with all other attempts, this one fails too. Plaintiffs allege that non-GMO appears in several location on the packages of Kodiak's products. (*Id.* at ¶ 118.) Plaintiffs also allege that they were misled by this misrepresentation because several of Kodiak's products that claim to be non-GMO actually "contain ingredients that are genetically modified including but not limited to soy lecithin, soy protein, and corn starch." (*Id.* at ¶ 120.) Plaintiffs allege various facts that support a finding that it is a plausible that a reasonable consumer finds the claim non-GMO material and would be misled if the product did contain even trace amounts of GMO ingredients. (*Id.* at ¶¶ 104, 120, 134.) Kodiak ignores these well-pleaded allegations and instead maintains its *own* interpretation that the reasonable consumer would not be misled because there are trace amounts of GMO ingredients. (ECF #44-1 at 24-25.) The amount of GMO ingredients in the products is all outside of the pleadings as is whether the reasonable consumer would be misled. *Fagan*, 2014 WL 92255, at *2.

Kodiak's challenges that Plaintiffs cannot plead deception based on non-GMO because they did not provide test results of the products is unsupported. (*See* ECF #44-1 at 24-25.) Food test results are not required to plausibly plead a claim and Kodiak cites no authority holding otherwise. Furthermore, Kodiak's reliance on a single authority outside this circuit on different facts to support dismissal is unavailing. (ECF #44-1 at 25.) *Forsher* concerned false and misleading labels on the term *natural* when the product contained sugar derived from GMO beets. Here, it is the claim *non-GMO* that is alleged to be false and misleading (not natural).

## VII.   BREACH OF WARRANTY IS PROPERLY PLED

Kodiak appears to re-iterate its procedural argument to justify dismissal on the ground that Plaintiffs do not allege which law plaintiffs seek to apply for their breach of warranty claim.  (ECF #44-1 at 26.)  For all the same reasons Plaintiffs argue that above in Section V.C., this argument does not require dismissal. To prevail on a claim for breach of express warranty, a plaintiff must show that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010).

Plaintiffs allege five distinct statements Kodiak made about its products: (i) "no preservatives," (ii) "free of artificial additives," (iii) "non-GMO," (iv) "healthy," and (v) "protein-packed."  (*See* ECF # 37 ¶ 10.)  For purposes of an express warranty claim, "[A]ll statements of the seller" become part of the basis of the bargain "unless good reason is shown to the contrary."  *Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568, 573 (N.D. Cal. 2015) (quoting Cal. Com. Code § 2313, comment 8); *see also Weinstat*, 180 Cal. App. 4th at 1229 ("Any affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement." (citations omitted).  Kodiak has offered no "good reason" that these prominent marketing claims did not become part of the basis of the bargain – indeed, Kodiak provides no reason at all.  This is exactly why many courts have denied motions to dismiss express warranty claims in labeling cases.  *See, e.g.*, *id.* at *8 ("Plaintiff has plausibly alleged that the 'Natural Clean' label is false"); *Aguiar v. Merisant*, 2015 WL 6492220, at *9 (C.D. Cal. Mar. 24, 2014) ("natural" representation was express warranty); *Ferrero*, 794 F. Supp. 2d at 1118; *Boswell*, 2016 WL 3360701, at *10.  The same result is necessitated here.[13]

---

[13] The Court should not dismiss express warranty claims alleged by the Florida residents. (ECF #44-1 at 27.)   While Florida law indicates that privity of contract is required, Florida courts have held "that certain factual circumstances satisfy the privity requirement in the absence of a purchase directly from the manufacturer." *Cruz v. Mylan, Inc.*, No. 8:09CV1106T17EAJ, 2010 WL 598608,

Finally, Kodiak complains that it did not receive notice of Plaintiffs' warranty claims.  No notice is required when claims are against a defendant in its capacity as a manufacturer, not a seller.  *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012).  Thus, any Plaintiff that purchased their goods from third-party retailers had no pre-lawsuit notice requirement. To the extent notice is required, Plaintiffs' pre-lawsuit notices provided it.  (ECF # 37, ¶ 214; Ex. B.)

## VIII.  RESTITUTION IS PROPERLY PLED

Kodiak misconstrues Count VI as a "stand alone" claim for "unjust enrichment" which is a remedy, not a cause of action.  (ECF # 44-1 at 28.)  It is not. Restitution is a viable cause of action, as is one for unjust enrichment, under California law and other states.  *American Master Lease, LLC v. Idanta Ptnrs, Ltd.*, 225 Cal. App. 4th 1451, 1470 "[T]he elements of an unjust enrichment claim are (1) the receipt of a benefit from another; and (2) the unjust retention of the benefit at the expense of another."; *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) (elements of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another").  Plaintiffs alleged that Kodiak enticed Plaintiffs to purchase its products due to the false and misleading packaging and advertising, took monies from the Plaintiffs, and thus have been unjustly enriched.  (ECF # 37 ¶¶ 218-220.)  This sufficiently pleads a cause of action for restitution.[14]  *Am. Master*, 225 Cal. App. 4th at 1470.; *Astiana v. Hain*, 783 F.3d 753, 764 (9th Cir. 2015).

Finally, Kodiak argues that Plaintiffs "have not alleged a comparable product they would have bought if they would have known the 'truth.'  (*Id.*)  But Kodiak cites **no *authority*** that Plaintiffs are required to allege that they would have bought a different product if they would have known of Kodiak's deception.

---

at *2 (M.D. Fla. Feb. 17, 2010). Regardless, the existence of express warranties is a factual issue that is not to be decided on a motion to dismiss.  *See id.*

[14] Some courts have held that "unjust enrichment" is not a separate cause, but the remedy for a claim of restitution.  *Dinosaur Develop., Inc. v. White*, 216 Cal. App. 3d 1310, 1314 (1989).  Even these courts, however, hold that such distinction in the title of the cause of action is no reason to dismiss the claim if it otherwise pleads a basis for restitution.  *See id.*

1

## IX.   EQUITABLE RELEIF IS PROPERLY PLED

2

### A. Plaintiffs' Can Allege Equitable Relief in Tandem with Legal Remedies under Rule 8

3

4

Kodiak argues that Plaintiffs' claims for equitable relief fail because Plaintiffs

5

cannot plead that they lack an adequate remedy at law.  (ECF # 44-1 at 29.)  This

6

argument, however, is contrary to Rule 8(a)(3), which provides that "a demand for

7

relief . . .may include relief in the alternative or different types of relief."  Fed. R.

8

Civ. P. 8(a)(3).  Plaintiffs' ability to pursue unjust enrichment claims in tandem with

9

legal claims was affirmed by the Ninth Circuit.  *Astiana*, 783 F.3d at 764. District

10

courts have followed. *Robinson*, 2018 WL 6136139, at *5.[15]

### B. Plaintiffs Have Standing to Seek Injunctive Relief

11

Kodiak argues that Plaintiffs lack standing to pursue injunctive relief because

12

they "have not plausibly pled that they plan to repurchase the products." (ECF #44-

13

1 at 31.)  This is a common defense argument that is repeatedly rejected in deceptive

14

food label cases such as this.  Kodiak's reasoning is flawed.  The fact that Plaintiffs

15

have since discovered Defendant's deceptive packaging does not make the packaging

16

less misleading, nor does it mean that the deception is not ongoing.

17

To maintain standing, Plaintiffs must show a sufficient likelihood that they will

18

be injured again in a similar way and that the future injury can be redressed by

19

injunctive relief.  *Luman v. Theismann*, 647 Fed. Appx. 804, 807 (9th Cir. 2016);

20

*Escobar*, 2017 WL 5125740, at *5.  Plaintiffs plead that here.  (ECF # 37 ¶ 159.)

21

Several district courts, including this one, have refused to dismiss claims for

22

injunctive relief under similar circumstances.  *Safransky v. Fossil Grp., Inc.*, 2018

23

WL 1726620, at *7 (S.D. Cal. Apr. 9, 2018); *Escobar*, 2017 WL 5125740, at *5.

24

## X.   CONCLUSION

25

Kodiak's Motion to Dismiss should be denied.

26

27

[15] The facts of *Sonner* – where the plaintiff on the eve of trial sought to secure a bench trial under the UCL by foregoing CLRA damages claims that had to be tried to a jury – are inapposite considering the allegations and the posture of the FAC.  (ECF #44-1 at 29-30.)

28

-35-

1    Dated:  December 7, 2020                    **FOX LAW, APC**

2

3                                               */s/ Courtney Vasquez*
                                                COURTNEY VASQUEZ
4                                               courtney@foxlawapc.com
                                                *Attorneys for Plaintiffs*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-36-