# Exhibit "1"



**COURTNEY VASQUEZ**
ATTORNEY AT LAW
The Plaza Building
225 W. Plaza Street, Suite 102
Solana Beach, CA 92075
P: 858-256-7616  F: 858-256-7618
Courtney@FoxLawAPC.com

September 14, 2020

<u>Via E-Mail</u>

Eric Kizirian, Esq.
Mike Grimaldi, Esq.
Lewis Brisbois Bisgaard & Smith LLP
Eric.Kizirian@lewisbrisbois.com
Michael.Grimaldi@lewisbrisbois.com

Re:   *Stewart et al. v. Kodiak Cakes, LLC*, Case No. 3:19-cv-02454 (S.D. Cal.)

Counsel,

This letter seeks to meet and confer regarding Kodiak Cakes, LLC's ("Kodiak") Responses to Plaintiffs' Request for Production of Documents (Set One).

As an initial matter, we highlight that Plaintiffs' first set of discovery requests seek very simple and straightforward documents, and Kodiak's resistance to providing basic information that is relevant to this case only serves to obstruct the liberal discovery that the Federal Rules allow.  Rule 26(b) of the Federal Rules broadly permits wide-ranging discovery of all relevant information even if the information may not be admissible at the trial, so long as it is proportional to the needs of this case.  *See* Fed. R. Civ. P. 26(b)(1).  Courts recognize that class certification will require discovery to resolve factual issues necessary for the determination of whether the action may be maintained as a class action, and that pre-certification should be broadly permitted to obtain the such information, especially when the information is within the sole possession of the defendant.  *See, e.g., Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 622 (N.D. Cal. 2013).  All that a plaintiff needs to demonstrate to obtain pre-certification discovery is that the requested information is "likely to produce substantiation of the class allegations" or make a *prima facie* showing that the Rule 23 class action requirements are satisfied.  *See id.*

***Products That Are Sufficiently Similar.***   Before addressing Kodiak's specific objections, Plaintiffs address Kodiak's overarching objection concerning "substantially similar" products, e.g., those products that are similar to the products that Plaintiffs purchased, but that Plaintiffs did not purchase themselves.  To this end, Kodiak limits its production of documents to those for "the products plaintiffs ***actually purchased*** and the ***different sizes*** of these same products during the relevant time period." (Emphasis added.)

September 14, 2020
Page 2

  First, please identify those products Kodiak contends fit within Kodiak's unilateral definition of sufficient similarity. We anticipate that the products Kodiak contends are "sufficiently similar" differ greatly from the 64 products Plaintiff has identified and that are at issue in the operative pleadings. Please also identify any law supporting Kodiak's definition of sufficient similarity as limited to those that are "different sizes" of the products actually purchased. We suspect there is none.

  As you appear to recognize, class representatives can represent a class of purchasers of similar products that they did not actually purchase so long as those products are "sufficiently similar" to purchased products – that is: same misrepresentations, similar product/ingredients. *See, e.g. Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) (plaintiff had standing to bring consumer fraud claims on behalf of purchasers of smoothie kit flavors he did not buy because there was "sufficient similarity" between the products); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) (finding that Plaintiffs had standing because Plaintiffs challenged "the same kind of product (ice cream), based on largely the same ingredients, and asserting the same wrongful conduct applicable to a wide range within the product line"). What Kodiak appears to challenge via its overarching objection is whether Plaintiffs satisfy this standard. They plainly do.

  The standard of "sufficient similarity" fits all too well within Kodiak's product line. First, the most important factor – same misrepresentation – was made regarding all the products so identified in the Per-Product Misrepresentation Chart. (*See* Attachment 1.) Plaintiffs each purchased one or more products with all the misrepresentations at issue.

  Second, the actual type of product and ingredients are sufficiently similar as well. The 64 products fall into the following category types: (1) flapjack and waffle mixes, (2) baking mixes (i.e. cookies, brownies, cornbread), (3) frozen flapjack and waffles, (4) boxed cookies/graham crackers, (5) single-serving microwavable Kodiak Cups.

  All products contain the same primary ingredients: whole grain wheat flour, whole grain oat flour/oats, wheat protein isolate, whey protein concentrate, cane and/or brown sugar, monocalcium phosphate and/or sodium bicarbonate, sea salt. The products at issue regarding false claims of "no preservatives" or "non-GMO" also all contain one or more of the following ingredients: corn starch, soy lecithin, soy protein, SAPP, citric acid, and/or xantham gum.

  In fact, the products only differ in flavor and related, ancillary ingredients, such as chocolate chips for the chocolate chip flavor, or preparation type such as whether the product is a pre-made waffle, flapjack or cookie versus whether it is a "just add water" mix that requires baking or microwaving. Courts have found that differences like these do not destroy a finding of sufficient similarity. *See, e.g., Astiana*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (sufficient similarity found ice cream products that contained largely the same ingredients with the same misrepresentation across a wide product line).

  Kodiak's argument is even weaker as it pertains to the slack fill products. How Kodiak maintains that different flavors of a flapjack, waffle or baking mix with the same deceptive non-

September 14, 2020
Page 3

functional fill practice somehow makes these products not sufficiently similar to all other Slack Fill Products is truly curious. So that we may fully evaluate Kodiak's position, please explain.

Regardless, Plaintiffs have made a *prima facie* showing of sufficient similarity to seek the requested discovery, which is all that is required. *See Ogden v. Bumble Bee Foods, LLC*, 292 F.R.D. at 626 (permitting discovery of other products in product line that plaintiff did not purchase because plaintiff made a prima facie showing of that the products had similar or identical claims about Omega–3 content as well as those products with essentially the same ingredients).

Please state the reasons why Kodiak believes any of the 64 products are not sufficiently similar to the purchased products (and for which it is refusing to produce documents), so that we can meaningfully meet and confer and determine the scope of the issue that needs to be addressed before Judge Berg.

### General Objections and Objections to the Instructions

***ESI or Discovery Protocol.*** Kodiak objects on the grounds that there is no ESI or Discovery Protocol in place and refuses to produce any records until the parties negotiate an appropriate protocol and the Protective Order is amended to add Kodiak's new counsel.

First, I raised the issue of the Protective Order with Mr. Grimaldi months ago. It is Kodiak's counsel – not Plaintiffs' – that requires amendment in the Protective Order. Thus, Kodiak shall undertake the burden of updating the Protective Order and seeking entry from the Court. Mr. Grimaldi previously acknowledged and agreed this was the case. Even weeks after Kodiak recognized this unresolved issue in its response, it has taken no action to make the appropriate corrections, and is now withholding production (in part) on this basis. Please make the appropriate corrections to the Protective Order, send to me for review, and prepare the appropriate request for relief to the Court as soon as reasonably practical, but no later than Wednesday, September 16, 2020, which is before the parties' September 17, 2020 Case Management Conference. If this is not completed before the CMC, Plaintiffs intend to raise the issue with the Court.

Second, Kodiak is the holder of the responsive information, knows its systems, and is in the best position to propose the first draft of a discovery protocol to govern the preservation, collection, search and production of responsive documents. Indeed, Kodiak stonewalled Plaintiffs' efforts to discover the very information that would have facilitated this effort through Plaintiffs' taking a deposition of Kodiak's custodian of records when discovery opened in the case. Please prepare a draft protocol for my review as soon as reasonably practical for a starting point for our discussions, again before the CMC. If you would like to have an initial call on this issue, please let me know your availability and I will make myself available.

***Time Period Limitation.*** Kodiak's proposed limitation on the time period for responsive information is inappropriate and has no basis in the law. An applicable limitations period restricts the time period for consumers to recover damages for their purchases—it does not limit the time to discover information about Kodiak's unlawful marketing decisions. That Kodiak's

September 14, 2020
Page 4

marketing decisions may have occurred outside of the limitations period does not change its potential liability for selling falsely labeled and deceptively packaged products within the statute of limitations. For this reason, federal courts within the Ninth Circuit have similarly held that pre-class period discovery in consumer fraud cases is relevant, discoverable and have ordered it to be produced. *See Ang v. Bimbo Bakeries USA, Inc.,* No. 13-CV-01196 WHO (NC), 2014 WL 1940178, at *2 (N.D. Cal. May 14, 2014) (ordering that the "document production must not be limited in scope to information from the class period and must include any responsive information dating back to eight years prior to the filing of the original complaint" in a case involving misbranded and misleading baked products); *Ogden*, 292 F.R.D. at 628 (finding that marketing and labeling decisions pre-dating the relevant class period is relevant and must be produced).

Thus, information pertaining to Kodiak's intent, motive, and knowledge regarding its marketing and packaging practices will likely predate the asserted class period or statute of limitations. The relevant discovery period will begin shortly before the initial decisions by Kodiak to incorporate the alleged unlawful representations about its products. *See, e.g., Shark Tank,* Season 5, Episode 22 (Apr. 2014) (discussing in April 2014 Kodiak's marketing strategy to pay slotting fees and take up shelf space). Kodiak is in the superior position to know when this is. Plaintiffs are not. Thus, until discovery reveals when Kodiak's deceptive marketing practices began, limitations on the period of relevant discovery (and particularly the limitation tied to the statute of limitations proposed by Kodiak) is improper.

For the same reasons, the fact that Kodiak was doing business as Baker Mills, Inc. before Kodiak was formally incorporated has no bearing on discovery of the information relating to the marketing and advertising of the very Kodiak Cakes products that are at issue in this case. Surely, these records are within Kodiak's possession, custody, and control and are required to be produced. Fed. R. Civ. P. 34(a)(1).

***Applicable Statute of Limitations.*** For the reasons described above, the applicable statute of limitations has no bearing on Kodiak's discovery obligations to produce relevant documents, even before the limitation periods. Nevertheless, we address this argument as well because Kodiak's statement of the applicable statute of limitations is also without merit. Your accrual calculation appears to commence the limitations period with the date of a consumer's purchase. By doing so, Kodiak fails to account for delayed discovery that tolls the applicable statute of limitations until the consumer knew or should have known of Kodiak's deceptive marketing and packaging practices. *See Yumul v. Smart Balance, Inc.,* 733 F. Supp. 2d 1134, 1141 (C.D. Cal. 2010); *Keilholtz v. Lennox Hearth Products Inc.,* No. C 08–00836 CW, 2009 WL 2905960, *3 (N.D. Cal. Sept. 8, 2009); *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1320 (C.D. Cal. 2013); *Valencia v. Volkswagen Grp. of Am. Inc.*, 119 F. Supp. 3d 1130, 1140 (N.D. Cal. 2015); *see also Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191 (2013). This forecloses Kodiak's position that the limitations period necessarily began on December 19, 2015.

### Objections to the Definitions

***Definition of "YOU," "YOUR," and "Kodiak."*** Our definition of "You," "Your," and "Kodiak" is straightforward and commonly used in discovery practice. It ensures that Kodiak

September 14, 2020
Page 5

understands this request will require production of information that is within the possession, custody and control of the company and anyone acting on its behalf. For that reason, it does not, as you suggest, require Kodiak to produce documents from third parties that are not within Kodiak's possession, custody and/or control. Furthermore, whether or not persons or entities included in this definition "will be called at trial" or are "not named as defendants" has absolutely zero bearing on Kodiak's discovery obligations to produce responsive documents that are maintained by these persons but, because of their affiliation to Kodiak, are within Kodiak's possession, custody and control. Kodiak is required to produce such responsive information. *See* Fed. R. Civ. P. 34(a). Please identify the information Kodiak intends to withhold on the basis of this objection so that we can effectively meet and confer on this issue. Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection.").

***Definition of "Slack Fill" and "Marketing Claims."*** Plaintiffs defined "Slack Fill" as the "empty space inside the packaging of all SLACK FILL PRODUCTS." Plaintiffs defined "Marketing Claims" as claims Kodiak made about the products that they are "Free of Artificial Additives," "Non-GMO," contain "No Preservatives," are "Healthy," and/or are "Protein-Packed."

Kodiak objects to these definitions as "vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of the case. The definition contains false express or implied assumptions of fact or law with respect to matters at issue in this action."

First, please describe how these definitions contains false assumptions of fact or law. Surely, Kodiak can agree that there is empty space inside each of the packages of the Slack Fill Products, both within the inner plastic and within the carton itself. That is all Plaintiffs defined. Similarly, the very claims that Kodiak itself represents to consumers cannot be a "false assumption of fact or law."

Second, please provide the basis for the objections relating to vagueness and ambiguity so that we can seek to meet and confer and provide definitions that will address your objections. Similarly, please provide the basis for Kodiak's objection that this definition is overly broad, unduly burdensome, and not proportional to the needs of the case. Non-functional slack fill and the five marketing claims defined are the very deceptive marketing practices at issue in this case. We fail to see how Plaintiffs' definitions contravene the needs of this case.

Finally, please identify the information Kodiak intends to withhold on the basis of this objection so that we can effectively meet and confer on this issue. Fed. R. Civ. P. 34(b)(2)(C).

***"All Documents."*** Kodiak objects to several requests on the grounds that "all" documents is overly broad and unduly burdensome. The reason appears to be that the definition requires a wide "search criteria (emails, web-based inquiries, social media messaging, and text messages, recording phone calls, voicemails)."

Kodiak has a duty to make a reasonable search and diligent effort for all responsive documents. That this may require a search of several databases and for documents that exist in several mediums is in no way, by itself, a reason to deny discovery. First, in accordance with

September 14, 2020
Page 6

Rule 34(b)(2)(C), please state whether Kodiak is refusing to search for responsive information or withholding any information on the basis of this objection and clarify what type of "document" it is so refusing. Then, please provide additional information (such as the time, costs, or other issues of alleged impracticability) that Kodiak claims will protect it from complying with the discovery requests that it objects to on this ground so that we can meaningfully meet and confer and attempt to address Kodiak's objections. Kodiak is a multi-million dollar company and the self-proclaimed best-selling pancake company in the country. Kodiak certainly has the resources and wherewithal to comply with its most basic discovery obligations to produce responsive documents.

*"Overly broad and not proportional to the needs of the case."* Kodiak asserts this objection to every single request and makes general objections on the grounds that the requests are overbroad and not proportional to the needs of the case. This type of boilerplate objection is improper and not well-taken. Fed. R. Civ. P. 34(b)(2)(B) (objections must "state with *specificity* the grounds for objecting to the request, including the reason) (emphasis added).

For each request, please specifically identify whether you are withholding information on the basis of this objection and the specific reasons for why Kodiak believes the request is overbroad and not proportional to the needs of the case. Fed. R. Civ. P. 34(b)(2)(B)-(C). At that point, we would be happy to address the reasons why Plaintiffs believe the information is appropriately tailored and proportional to the needs of the case.

## Requests for Production

In addition to the issues identified above, Plaintiffs further address issues raised in objections to specific requests for production as follows:

**Request for Production No. 6:** Kodiak makes several objections to Plaintiffs' request for "sales data" regarding the products at issue in this case (several which are addressed above), but agrees to produce "a sampling of sales data" for certain products. First, please describe what Kodiak means by a "sampling." Kodiak's unilateral decision regarding which documents it decides to produce is not appropriate, especially when the information sought it imperative to Plaintiffs' damages model and necessary for class certification briefing.

Plaintiffs fail to see the basis for any limitation on Kodiak's sales data at all. This type of information is routinely exchanged between parties before class certification to support a Plaintiffs' damages model. *See, e.g., Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2018 WL 6300479, at *14 (S.D. Cal. Nov. 29, 2018) (defendant had produced in discovery the number of "wholesale unit sales" and the "wholesale $ sales" of their products sold to retailers from 2011-2017).

Furthermore, such a request for sales data is directly related to the needs of this case, namely, supporting Plaintiffs' damages model for class certification. Fed. R. Civ. P. 26(a)(1). There are several methods that can be employed to calculate damages in cases based on consumer fraud claims. However, Plaintiff's primary method will be based on the theory that Kodiak's deception caused consumers to pay a higher retail price for all products than they

September 14, 2020
Page 7

would have otherwise paid in the absence of Kodiak's deceptive practices. As you have even recognized in your responses, the parties to this litigation do not have direct access to retail sales. Thus, obtaining information about Defendants' wholesale unit sales becomes crucial to estimate the total retail sales based on a standard retail price. *See Hilsey*, No. 17CV2335-GPC(MDD), 2018 WL 6300479, at *14 (recognizing that Plaintiff's damages model was based on the standard retail price for along with Defendants' wholesale unit sales to determine the estimated retail sales from 2011-2017).

**Request for Production Nos. 8, 11-12, 14.** These requests seek documents regarding Kodiak's retail and wholesale prices. Kodiak objects on several grounds including that the information is not relevant, not proportional to the needs of the case, that Kodiak does not collect retail prices or "keep these documents," and that the information is confidential.

First, the justification for pricing data is similar to Plaintiffs' request for sales data – pricing data will form Plaintiffs' damages model. *See, e.g., Shark* Tank, Season 5, Episode 22 (Apr. 2014) (discussing the premium Kodiak has on its competitors, i.e. "Kodiak can sell half as much as Aunt Jemima in a store and still generate a higher margin, more revenue. . ."). In addition, changes in Kodiak's pricing over time are also relevant to Plaintiffs' claims and damages and thus proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). For example, if a price change coincided with a change to one or more of the marketing claims, it can provide further support Plaintiffs ' Price Premium model. *See id.* This reasoning forms the basis for Requests Nos. 11-12, 14 (seeking information regarding price changes of Kodiak products) as well.

Kodiak also objects to this request on the grounds that Kodiak's price to retailers is "confidential and sensitive business information." First, the Court has entered a Protective Order in this case to appropriately protect any confidential information that might be disclosed in this case. Furthermore, Kodiak does not have a history of maintaining this information confidential. In fact, Kodiak made a public announcement on the television show *Shark Tank* that disclosed this very information. Joe Clark announced that Kodiak's cost is about $1.65 and selling price is an average of $3.02 at that time. *See, e.g., Shark* Tank, Season 5, Episode 22 (Apr. 2014). Surely, Kodiak can produce similar information under the confidentiality provisions of a stipulated protective order entered by a federal judge if Kodiak was willing to publish this information on national television.

In addition, Kodiak previously provided Plaintiffs with pricing data showing its price to retailers ("Per Unit Delivered," "Per Case Delivered") and the Standard Retail Price (SRP) for eight products. Thus, contrary to Kodiak's objections, we know that Kodiak maintains both wholesale and retail pricing data, that confidentiality concerns can be addressed the Protective Order in this case, and that this information is not unduly burdensome to produce.

**Request for Production Nos. 10, 13, 15-17.** These requests seek competitor information including documents regarding the price (wholesale or retail) of Kodiak products compared to competitor products, market-based price point data, and specifically Syndicated ARP Data ("*SPINS*"). Kodiak objects to these requests on the grounds that they are irrelevant and that

September 14, 2020
Page 8

"Kodiak does not set retail prices for other companies." Finally, Kodiak objects on the grounds that "Kodiak does not keep these documents."

For all the reasons described in response to RFP Nos. 8, 11-12, 14, information about the wholesale price particularly as it is compared to competitors is relevant to Plaintiffs' damages model and proportional with the needs of the case. Furthermore, Kodiak's claim that it does not keep documents responsive to this request or that it is contractually unable to disseminate this data is false. Kodiak has already provided Plaintiffs with *SPINS* data within its possession that compares sales and pricing data of competitor products to Kodiak. Thus, contrary to Kodiak's objections, Plaintiffs know that Kodiak maintains this data, Kodiak is not prohibited from sharing this information as part of this case, and that it is not unduly burdensome to produce.

**Request for Production Nos. 18-19**. These requests seek the UPCs and SKUs for the 64 products at issue in this case. We understand that these codes are utilized by Kodiak and its retailers to track inventory and sales of products. Since product identification is key to obtaining pertinent sales and related information to support Plaintiffs' damages model, this information is relevant and proportional with the needs of this case. Fed. R. Civ. P. 26(b)(1).

Furthermore, Kodiak previously produced UPCs and SKUs for eight products to Plaintiffs. Thus, contrary to Kodiak's objections, we know that Kodiak maintains UPCs and SKUs for its products and that this information is readily available and not unduly burdensome to produce.

**Requests for Production Nos. 20-22**. These requests seek information relating to Kodiak's gross margins, profits, and COGS. Kodiak objects to these requests on the grounds that this information is not relevant or proportional to the needs of this case. Not so. Plaintiffs assert a cause of action for unjust enrichment. One of the primary models for damages based on this theory is the restoration to the plaintiffs of profits wrongfully obtained and retained by the defendant. Thus, information relating to Kodiak's profits is relevant and directly tied to one of the primary theories of damages that will be asserted in this case. Fed. R. Civ. P. 26(b)(1).

Kodiak also objects to these requests on the grounds that they seek "confidential and sensitive business information such as corporate tax paper." To be clear, we are not seeking Kodiak's tax documents. In the interest of meeting and conferring on this request, we are seeking documents sufficient to show Kodiak's margins and profit per product or group of products and are willing to work with you on what type of showing this may be without the need to disclose tax documents like you suggest.

Furthermore, confidentiality concerns can be appropriately protected by the Protective Order in this case. Also, any confidentiality concerns are low at best. On Kodiak's appearance on *Shark Tank*, Mr. Clark publicly announced Kodiak's 45% margin on the price of its products at Target, one of Kodiak's biggest retailers at that time. *See Shark Tank*, Season 5, Episode 22 (Apr. 2014).

**Requests for Production Nos. 23-24.** These requests seek documents relating to any conjoint analysis Kodiak has within its possession, custody and/or control. Kodiak objects on

September 14, 2020
Page 9

the grounds that "a non-sensical request that Kodiak does not understand since Kodiak does not know what a conjoint analysis is on marketing claims," and on the ground that this information is irrelevant, among others.

Conjoint analysis is a market research method that measures the value that consumers place on features of a product or service. Such information clearly goes to Plaintiffs' theory of damages and is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). With this definition in mind, please let us know if Kodiak still has no responsive documents to these requests. If Kodiak still is unclear what is meant by this request for any conjoint analyses, we are happy to meet and confer further to address Kodiak's purported confusion.

**Request for Production Nos. 25-27.** These requests seek information regarding "product differentiation" of Kodiak products in the pancake and waffle marketplace. The relevance of this information cannot be understated. Plaintiffs theory is that Kodiak deceptively differentiates its products by marketing them as being "Free of Artificial Additives," "No Preservatives," "Non-GMO," "Healthy," and "Protein-Packed" when they are not, and charges a premium to consumers for these false claims. Information Kodiak has about how its products are different and/or superior to other pancake, waffle and baking mixes goes to the heart of this action. *See, e.g., Shark* Tank, Season 5, Episode 22 (Apr. 2014) (discussing the premium Kodiak has on its competitors for its differentiating features). Please update your response to either state that documents will be produced as requested or clarify whether Kodiak intends to withhold documents on the basis of its objections. Fed. R. Civ. P. 34(b)(2)(B)-(C). If it is the latter, we will promptly move to compel.

**Request for Production No. 32.** This request seeks all documents regarding data, studies, analyses or related information regarding the marketing claims at issue in this case. Among other objections that are addressed generally above, Kodiak objections on the grounds that the request is vague as to "consumer marketing survey." As a preliminary issue, "consumer marketing survey" was not specifically asked for in this request.

Kodiak also complains that the terms actually used in this request are vague. We invite you to further explain what is vague about this request so that we can more fully address your concerns. However, this request is a straightforward demand for all analysis Kodiak has relating to the marketing claims. Plaintiffs seek all data and information Kodiak has regarding the importance of the marketing claims, why Kodiak chose to include them on the products, why Kodiak chose to include the claims as part of its advertising platform, how consumers respond to the claims, the value of these claims to Kodiak and to consumers, etc. Information that goes to Kodiak's analysis of utilizing the claims at issue in this case are at the center of this action, Kodiak is the only entity that has access to this information, and this information is key to resolving the issues in this case. *See* Fed. R. Civ. P. 26(b)(1). Accordingly, please update your response to either state that documents will be produced as requested or clarify whether Kodiak intends to withhold documents on the basis of its objections. Fed. R. Civ. P. 34(b)(2)(B)-(C). If Kodiak intends to withhold any documents on the basis of this objection, we will promptly move to compel.

September 14, 2020
Page 10

**Request for Production No. 33-36, 38.**  These requests seek all versions of the packaging for the products, including changes to the package.  Kodiak requested clarification as to what is meant by "all versions" and at this time has only agreed to provide a "sample of different versions of the final packaging."  A sampling is not acceptable.  Plaintiffs are entitled to all different versions.  Kodiak does not get to unilaterally decide what packaging versions it provides to Plaintiffs.  This would turn discovery on its head.

This is another request whose relevance and needs in this case cannot be overstated.  When, what and where Kodiak made representations to consumers is absolutely necessary to Plaintiffs' case throughout the entire time Kodiak has engaged in its deceptive marketing and packaging practices.  Fed. R. Civ. P. 26(b)(1).

Kodiak questions whether these requests also include changes where no writing was changed and only aesthetic changes were made.  We are willing to consider what instances these may be if you provide us with additional information.  However, discovery cannot be limited in that way at this point in the case.  For example, one of the claims at issue in this case surrounds the claim "healthy."  There are several ways that a manufacturer may depict "health" through artwork that Plaintiffs may believe causes the reasonable consumer to believe that the product is healthy.  If that is what you may mean by only "aesthetic" changes, that would not be an appropriate limitation.  Also, "Non-GMO" may be considered a graphic, but it is imperative that Plaintiff be provided all versions both with and without the Non-GMO graphic.  Consider also that changes in box size would clearly be relevant to Plaintiffs slack fill claims, even though those changes could be interpreted as only "aesthetic."

**Request for Production No. 37.**  This requests seeks the Confidential Finished Product Specifications for the products.  Kodiak asserts several objections that are addressed in other sections of this letter.  However, Kodiak also objects that these specifications include trade secret information, and specifically, product formulations.  We understand that Kodiak is willing to produce *redacted* versions of these specifications.  Plaintiffs are agreeable to this compromise for the redacted product formulation *percentages*.  However, the ingredients in the product themselves are not trade secret and, in fact, are publicly disclosed on the outside of the packages and on the internet.  For reasons discussed above relating to sufficient similarity across products, this information is relevant and discoverable for this reason, among others.  We also note that Kodiak's objection now is inconsistent with the information previously shared with Plaintiffs.  Kodiak previously produced its Product Specification for Buttermilk Power Cakes Flapjack and Waffle Mix without redaction to the percentages of the product formulation or otherwise.

**Request for Production Nos. 39-42, 45-46.**  These requests seek information regarding the amounts of slack fill, any changes thereto (including any decisions by Kodiak to reduce the fill level at any time), and documents Kodiak has that relate to what consumers expect as to the fill in Kodiak's products.

First, Kodiak seeks clarification as to whether this is meant to seek information as to the inner plastic packaging, the outer packaging, or both.  The answer is both: Plaintiffs are seeking responsive documents regarding the amount of empty space inside the package (and any changes

September 14, 2020
Page 11

or reduction thereto) whether it is within the inner packaging, within the whole of the outer box, or both.

Second, Kodiak also objects to this request on the grounds that it seeks proprietary, confidential, trade secret or other sensitive information. Please elaborate as to what information Kodiak maintains is so proprietary and why the protections of the Protective Order in this case cannot adequately protect Kodiak's concerns. The amount of space kept in the package for no functional purpose certainly does not meet any definition of "trade secret." Charging more for less product is simply to effectuate more profits—not for any other purpose.

Furthermore, contrary to your assertion, our definition of slack fill does not "presume, to the extent slack fill exists, that it's not 'functional' slack fill." Plaintiffs defined "Slack Fill" as simply the "empty space inside the packaging" of the Slack Fill Products listed on Exhibit B attached to the Requests for Production.

If Kodiak intends to withhold documents on the basis of these objections, please so state. Fed. R. Civ. P. 34(b)(2)(B)-(C). We will promptly move to compel concerning these requests.

**Request for Production No. 43.** This request seeks all documents regarding the design of the product boxes for the Slack Fill Products. In the interest of meeting and conferring, Plaintiffs clarify that this request was intended to relate to the size, shape, weight, material, opaque character of the box, fill capacity of the products at issue, and similar information. It was not intended to require that Kodiak "give [us] everything" as Kodiak suggested. If Kodiak is still unclear regarding the scope of this request, we are happy to continue to meet and confer.

**Requests for Production Nos. 46-48.** These requests seek Kodiak's communications and agreements with third-party retailers and distributors regarding the fill level and design of the product boxes. Kodiak objects that Plaintiffs have not made any showing regarding the relevance of this information. In the interests of meeting and conferring, Plaintiffs note that such information goes directly to Kodiak's intent, motive and knowledge to deceive consumers about the marketing and packaging practices at issue. In fact, this was a key piece of evidence in a recent case out of the D.C. Circuit involving McCormick pepper products. McCormick's agreements with retailers such as Wal-Mart became strong evidence to support McCormick's intention to deceive consumers and obtain a larger profit by underfilling the products while charging the same amount.

Please update your responses to these requests given this showing. If Kodiak intends to withhold documents on the basis of these objections, please so state. Fed. R. Civ. P. 34(b)(2)(B)-(C).

**Request for Production No. 49.** This request seeks information regarding slotting fees. Kodiak objects on the grounds Plaintiffs have made no showing that slotting fees are relevant to their case. In the interests of meeting and conferring, Plaintiffs note that slotting fees goes directly to the motivations behind Kodiak's deceptive slack fill practices. The larger the box, the more shell space it takes up, and the more likely a consumer's eye is going to go to the Kodiak product versus others. Indeed on the *Shark Tank* episode, Mr. Clark highlighted slotting fees as

September 14, 2020
Page 12

one of its primary marketing strategies. *Shark* Tank, Season 5, Episode 22 (Apr. 2014) (Mr. Clark announcing that Kodiak pays "a huge chunk on slotting fees"). This practice of buying shelf space, placing oversized boxes on the shelf that are underfilled to capacity, and charging a premium for it, is the very basis for Plaintiffs' slack fill claims. There are perhaps few stronger relevance ties. *See* Fed. R. Civ. P. 26(a)(1).

**Request for Production No. 54.** This request seeks documents relating to communications Kodiak has had with industry groups such as the Non-GMO Project and the Sugar Research Foundation. Kodiak objects to this request on the grounds that this seeks information that is not relevant or proportional to the needs of this case. This objection is unfounded. Central to this case is Kodiak's marketing of its products as "Non-GMO" when they actually contain genetically modified ingredients and claims that the products are "healthy" when they actually contain high and unhealthy levels of sugar and fat, or other unhealthy characteristics. Information received by or discussions Kodiak has had with industry groups that focus on these very claims goes directly to Kodiak's knowledge of its deception and is directly related to the needs of this case. *See* Fed. R. Civ. P. 26(a)(1).

Kodiak also objects on the grounds of confidentiality or privilege. We fail to see how communications with third parties could be confidential or privileged. Even if any such privilege or protection attached, it would be necessarily waived by disclosure to third-party industry groups. Please explain Kodiak's basis for this objection further and state whether Kodiak is withholding responsive information based upon this objection. Fed. R. Civ. P. 34(b)(2)(B)-(C).

**Request for Production No. 55.** This request seeks documents relating to scientific studies regarding the consumption of food products that are the subject of the marketing claims at issue in this case. By "scientific studies," Plaintiffs mean studies/experiments, articles or other literature that discusses studies or experiments that consider consuming foods that are healthy, non-GMO, protein-packed, have no preservatives and contain no artificial additives. For example, if Kodiak has documents in its possession, custody or control that relate to consuming products with 10 grams or more of sugar per serving as unhealthy, this would be directly relevant to Kodiak's knowledge of its deceptive practice of marketing products as "healthy" when they contain more than 10 grams of sugar. Similarly, if Kodiak has literature that discusses a study on consumption of SAPP and it being a chemical preservative, that would go directly to Kodiak's knowledge of its deceptive practice of marketing products as containing no "preservatives" when they contain SAPP. *See* Fed. R. Civ. P. 26(a)(1).

**Request for Production No. 57.** This request seeks documents relating to advertising and marketing Kodiak has disseminated about the marketing claims at issue in this case. Kodiak has agreed to provide a "sampling" of advertising and marketing. Kodiak's unilateral selection of what marketing and advertising it is willing to produce is not a reasonable response to this request. This case is about Kodiak's deceptive advertising and marketing practices. Kodiak cannot avoid producing all responsive information that is directly tied to the Kodiak's marketing of the very claims at issue in this case. When, what and where Kodiak made representations to consumers is absolutely necessary to Plaintiffs' case throughout the entire time Kodiak has

September 14, 2020
Page 13

engaged in its deceptive marketing and packaging practices. Furthermore, the amount in controversy is in the millions of dollars, Kodiak has sufficient resources to comply with this request (and has made no showing otherwise). All proportionality factors favor production. *See* Fed. R. Civ. P. 26(b)(1).

**Request for Production No. 58.** This request seeks communications with third-party marketing and advertising agencies relating to the marketing claims at issue in this case. Kodiak objects on the grounds that this request is "harassing" and irrelevant. Not so. This request goes directly to Kodiak's knowledge, intent and motivation in disseminating the very deceptive messages that are at issue in this case.

Kodiak also objects to this request on the grounds the information is confidential or privileged. Please explain how communications with third-party, non-lawyer, advertising agencies and marketing groups could in any way be privileged. In addition, please explain how the Protective Order could not serve to protect any confidentiality concerns Kodiak raises.

**Request for Production Nos. 59-61.** These requests seek information relating to Kodiak's appearance on the TV show *Shark Tank*. Kodiak objects on the grounds that this information is not relevant and that disclosure of the information is privileged or confidential.

It is disingenuous for Kodiak to maintain that it cannot see how the *Shark Tank* appearance "could be any way relevant to their case." It is the opposite that is true. The show disclosed Kodiak's marketing strategies and sales/profit/margins, all of which are directly relevant to Kodiak's motivations, intent, knowledge, and to Plaintiffs' damages.

The subpoenas sent to third-parties will not encompass all documents sought by this request. For example, internal communications about the pitch to get on the show will not be obtained through subpoenas.

Furthermore, there can be no claim of privilege or confidentiality to this information, at least as it respects information that was communicated to third parties involved in the application and production of the show. *See* Fed. R. Civ. P. 26(a)(1).

**Request for Production Nos. 62-66.** These requests seek documents relating to Kodiak's defenses to the class allegations in this case. Kodiak served objections only and is refusing to produce any documents in response to these requests.

Contention discovery relating to factual contentions and affirmative defenses is commonplace and a widely acceptable use of written discovery. Kodiak filed an answer in this case. By doing so, it represented to the Court that it had factual support to justify its denials and affirmative defenses. Requiring a defendant to answer a contention discovery that support its affirmative defenses is consistent with Rule 11 of the Federal Rules of Civil Procedure, which requires parties to have some factual basis for their claims and allegations. Fed. R. Civ. P. 11(b); *see also Baker v. Perez*, No. 2:09-CV-2757 MCE KJN, 2011 WL 2414504, at *2 (E.D. Cal. June 9, 2011) ("One proper discovery vehicle for seeking information regarding an affirmative defense is to serve a . . . request for production of documents supporting a defendant's affirmative defenses); *TV Interactive Data Corp. v. Sony Corp.*, No. C 10-475 PJH MEJ, 2012

September 14, 2020
Page 14

WL 1413368, at *3 (N.D. Cal. Apr. 23, 2012) (recognizing that contention discovery regarding a patent infringer's contentions and affirmative defenses is appropriate).

To be clear, Plaintiffs' are not demanding that Kodiak disclose privileged documents, as this can be appropriately withheld on a sufficient showing of privilege in a privilege log. However, Kodiak cannot withhold non-privileged documents that support the representations it is making to Plaintiffs and the Court regarding the bases for its defenses. Please update your responses to these requests accordingly. If Kodiak refuses to produce responsive documents, we will promptly move to compel.

**Requests for Production Nos. 67-71.** These requests seeks information relating to Kodiak's document retention and preservation policies. For all the reasons we have previously discussed in prior meet and confer letters, this discovery is appropriate, and we will not recite those reasons here. But in short, we see this as a basic discovery request that is not burdensome to comply with. We think it is silly and quite frankly a waste of all our resources, including that of the Court, to continue to fight over this simple issue and we are willing to continue to try to find a workable resolution to these requests. However, if Kodiak continues to stand on its baseless (and misplaced) "discovery on discovery" objection, Plaintiffs will move to compel.

**Request for Production Nos. 72-73.** These requests seek information that supports the truth and accuracy of the marketing claims. Kodiak objects on several grounds but agrees to search for and produce responsive documents (albeit for a limited set of products that is addressed above). However, Kodiak states that "to the extent plaintiffs are claiming a lack of substantiation, California law bars lack-of-substantiation claims."

To be clear, this objection is misplaced. Plaintiffs' claim is not that Kodiak has failed to substantiate that its products are what they say they are—rather, Plaintiffs are claiming Kodiak's products simply are not what Kodiak represents them to be, e.g., the products contain preservatives and artificial substances when they say they do not.

**Request for Production Nos. 74-75.** These requests seek information regarding Kodiak's food testing results. Kodiak makes several objections, including that "Food tests that do not affect the marketing or the slack fill are wholly unrelated to any issue possibly raised in this case." In the interest of meeting and conferring, Plaintiffs narrow this request to all GMO-testing for the products listed in the Non-GMO column of Attachment 1, Per-Product Misrepresentation Chart, as well as testing of all the following ingredients: soy lecithin, soy protein, and corn starch.

Plaintiffs do so with the express reservation to request additional information relating to food testing as discovery continues and such discovery is proportional to the needs of this case.

**Request for Production Nos. 76-80.** These requests seek information regarding the source and origin of the synthetic ingredients and preservatives used in the products at issue. Kodiak maintains that these ingredients "are not at issue in the complaint" because no plaintiff alleges that they were misled by the specific ingredient. This objection is not well taken. You cannot ignore that Kodiak's products contain these ingredients, and that Plaintiffs alleged that the

September 14, 2020
Page 15

inclusion of these ingredients caused the Marketing Claims to be false and they were deceived. Please indicate whether Kodiak is going to stand on its trivial objection, and continue to try to play on words to avoid its discovery obligations. If that is the case, we will promptly move to compel.

**Request for Production Nos. 81-83.** These requests seek documents relating to GMO-test results for certain ingredients that Plaintiffs believe are genetically modified. Kodiak asserts several objections that are addressed elsewhere in this letter, and agrees to provide a "sampling" of GMO-test results. As we have discussed previously, a unilateral sampling of the test results that Kodiak chooses is not appropriate. Plaintiffs have a right discover all test results relating to Kodiak's claims that its products and ingredients are non-GMO through all relevant time periods at issue in this case. All responsive test results must be produced.

We remain willing to continue to work through these issues with Kodiak. Realistically, however, it is likely that we will need to put several issues before Judge Berg. Our current deadline to move to compel is Friday, September 25. We would like to continue to work with Kodiak to narrow the issues for the Court and agree to a 45-day extension of the time to compel. If you are agreeable, we will prepare a Joint Motion for your review.

Finally, please let me know when you have time for our first meet and confer call to begin discussing at least some of these issues. We would like to put a call on calendar within the next week.

Regards,

**FOX LAW, APC**

Courtney Vasquez, Esq.

Enclosures:
Attachment 1: Per-Production Misrepresentation Chart

## ATTACHEMENT 1:  PER-PRODUCT MISREPRESENTATION CHART

| Product | Slack Fill | Free of Artificial Additives | No Preservatives | Non-GMO | Healthy | Protein-Packed |
|---|---|---|---|---|---|---|
| Power Cakes Buttermilk | x | x | | | x | |
| Power Cakes Cinnamon Oat | x | x | | | | |
| Power Cakes Almond Poppy Seed | x | x | | | x | |
| Power Cakes Chocolate Chip | x | x | | | x | |
| Power Cakes Dark Chocolate | x | x | | | x | |
| Power Cakes Strawberry Chocolate Chip | x | x | | | | |
| Power Cakes Peanut Butter | x | x | | x | x | |
| Energy Cakes Buttermilk & Chia | x | x | x | | | |
| Energy Cakes Pumpkin Flax | x | x | x | | | |
| Frontier Cakes Whole Wheat Oat & Honey | x | x | | | | x |
| Frontier Gluten Free Oat | x | x | | | x | |
| Frontier Cakes Buttermilk & Honey | x | x | | | | x |
| Carb-Conscious Buttermilk | x | x | | | x | |
| Plant-Based Classic | x | x | x | x | | |
| Muffin Mix Chocolate Chip | x | x | | | x | |
| Muffin Mix Blueberry | x | x | | | x | |
| Muffin Mix Blueberry Lemon | x | x | x | | x | |
| Muffin Mix Double Dark Chocolate | x | x | | x | x | |
| Brownie Mix Chocolate Fudge | x | x | x | x | x | x |
| Brownie Mix Triple Chocolate | x | x | x | x | x | x |
| Brownie Mix Double Dark Chocolate | x | x | x | x | x | x |
| Cookie Mix Chocolate Chip Oatmeal | x | x | | x | x | x |
| Blondie Mix Chocolate Chip | x | x | x | x | x | x |
| Cornbread Mix | x | x | x | x | x | |

| Product | Slack Fill | Free of Artificial Additives | No Preservatives | Non-GMO | Healthy | Protein-Packed |
|---|---|---|---|---|---|---|
| All-Purpose Mix | x | x | x | x | | |
| Protein Balls Oatmeal Chocolate Chip | x | x | | | x | |
| Protein Balls Oatmeal Dark Chocolate | x | x | | | x | |
| Power Waffles Blueberry | | x | | | x | |
| Power Waffles Buttermilk & Vanilla | | x | | | x | |
| Power Waffles Cinnamon | | x | | | x | |
| Power Waffles Chocolate Chip | | x | | x | x | |
| Power Waffles Homestead Style | | x | x | x | x | |
| Power Waffles Dark Chocolate | | x | | x | x | |
| Power Flapjacks Buttermilk | | x | | | | |
| Power Flapjacks Chocolate Chip | | x | | x | x | |
| Power Flapjacks Maple & Brown Sugar | | x | | | x | |
| Bear Bites Chocolate | | x | | | x | x |
| Bear Bites Graham Crackers | | x | | | x | x |
| Bear Bites Cinnamon | | x | | | x | x |
| Kodiak Cup - Chocolate Chip Muffin | | x | | | x | |
| Kodiak Cup – Cinnamon Roll Muffin | | x | | | x | |
| Kodiak Cup - Peanut Butter Chocolate Chip Oatmeal | | | | x | x | |
| Kodiak Cup – Buttermilk & Maple Flapjack | | x | | | x | |
| Kodiak Cup – Strawberry Chocolate Chip Flapjack | | x | | | x | |
| Kodiak Cup – Chocolate Fudge Brownie | | x | | | x | |
| Kodiak Cup – Rocky Road Brownie | | x | | x | x | |
| Kodiak Cup – Cornbread | | x | | x | x | |
| Kodiak Cup – Mint Chocolate Brownie | | x | | x | x | |
| Kodiak Cup - S'mores Flapjack | | x | | | x | |

| Product | Slack Fill | Free of Artificial Additives | No Preservatives | Non-GMO | Healthy | Protein-Packed |
|---|---|---|---|---|---|---|
| Kodiak Cup – Almond Poppy Seed Muffin | | x | | | x | |
| Kodiak Cup – Chocolate Chip & Maple Flapjack | | x | | | x | |
| Kodiak Cup – Double Dark Chocolate Muffin | | x | | | x | |
| Kodiak Cup – Blueberry Muffin | | x | | | x | |
| Kodiak Cup - Blueberry & Maple Flapjack | | x | | | x | |
| Kodiak Cup – Maple & Brown Sugar Oatmeal | | | | | x | |
| Kodiak Cup - Cinnamon & Maple Flapjack | | x | | | x | x |
| Kodiak Cup – Chocolate Peanut Butter Brownie | | x | | x | x | |
| Kodiak Cup – Apple Cinnamon Muffin | | x | | | x | |
| Kodiak Cup – Pumpkin Dark Chocolate Muffin | | x | | | x | |
| Kodiak Cup – Cinnamon Oatmeal | | | | | x | |
| Kodiak Cup – Strawberry Dark Chocolate Oatmeal | | | | | x | |
| Kodiak Cup – Blueberries & Cream Oatmeal | | x | | | x | |
| Kodiak Cup – Caramel Oatmeal | | | | | x | |
| Kodiak Cup – Chocolate Chip Oatmeal | | | | | x | |