1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

9
10

11  TY STEWART, et al.,

12                                    Plaintiffs,

13  v.

14  KODIAK CAKES, LLC,

15                                    Defendant.

16
17
18

Case No. 19-cv-2454-MMA (MSB)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING DEFENDANT'S MOTION TO STRIKE**

[Doc. No. 44]

19      Ty Stewart and twenty-two other Plaintiffs (collectively, "Plaintiffs") bring this

20  putative class action against Kodiak Cakes, LLC ("Defendant"). *See* Doc. No. 37

21  ("FAC"). Plaintiffs assert six causes of action premised on two main issues with

22  Defendant's products: "(1) non-functional slack fill and (2) deceptive marketing

23  practices." *Id.* ¶ 3. Defendant moves to dismiss each cause of action for lack of standing

24  and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and

25  12(b)(6) and moves to strike several allegations from the First Amended Complaint

26  ("FAC") pursuant to Federal Rule of Civil Procedure 12(f). *See* Doc. No. 44. Plaintiffs

27  filed an opposition to Defendant's motion, and Defendant replied. *See* Doc. Nos. 62, 65.

28  The Court found the matter suitable for determination on the papers and without oral

argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 66.  For the reasons set forth below, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion to dismiss and **DENIES** Defendant's motion to strike.

## I. BACKGROUND[1]

Defendant "manufactures, markets, advertises, and sells a line of packaged breakfast and snack products," including pancake and waffle mixes.  FAC ¶ 1.  Plaintiffs' action arises from two overarching issues with Defendant's products: (1) "nonfunctional slack fill," which is the empty space in a package that serves no purpose, and (2) deceptive marketing statements.  *See id.* 3, 5–6, 10.

As to nonfunctional slack fill, Plaintiffs allege Defendant packages its products in a manner that "conceals the amount of the product actually contained in the package and misleads consumers into believing there is more product inside the packaging than there actually is."  *Id.* ¶ 6.  In particular, Plaintiffs claim less than half of the packaging is full and thus misrepresents the amount of product within each package.  *Id.* ¶¶ 7, 83, 85.

As to deceptive marketing statements, Plaintiffs allege Defendant makes five types of misleading statements in advertising its products.  *Id.* ¶ 10.  Plaintiffs allege that Defendant misleadingly labels and advertises its products as having "no preservatives" as well as being "free of artificial additives," "non-GMO," "healthy," and "protein-packed." *See* FAC ¶¶ 10, 63, 97–126, 127–31, 132–48.  Plaintiffs aver that Defendant's marketing strategy is designed to lure consumers to purchase their products because of these deceptive statements.  *Id.* ¶ 13.

Plaintiffs allege that they relied on Defendant's misleading packaging and advertising when purchasing Defendant's products.  *Id.* ¶ 14.  Plaintiffs seek to rectify

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

these problems.  In doing so, Plaintiffs bring six causes of action against Defendant: (1) "violation of the consumer protection acts of all 50 states (and the District of Columbia)" on behalf of the nationwide class; (2) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal Civ. Code §§ 1750–1784, on behalf of the California class; (3) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, on behalf of the California class; (4) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500–17606; (5) breach of express warranty on behalf of the nationwide class; and (6) "restation based on quasi-contract and unjust enrichment" on behalf of the nationwide class.  *Id.* ¶¶ 161–222.

Defendant moves to dismiss the causes of action on the grounds that Plaintiffs lack standing under Rule 12(b)(1) and fail to state a claim under Rule 12(b)(6) as well as moves to strike allegations from the FAC under Rule 12(f).  *See* Doc. No. 44 at 2.[2]

## II. REQUEST FOR JUDICIAL NOTICE AND INCORPORATION-BY-REFERENCE

As an initial matter, Defendant requests the Court to consider fifty-eight exhibits—comprising various product packaging labels and high-resolution "proofs" of the labels—pursuant to the judicial notice and incorporation-by-reference doctrines.  *See* Doc. Nos. 44-2, 65-1.  Plaintiffs object to Defendant's request.  *See* Doc. No. 62-1.  Before delving into the substance of the motion to dismiss, the Court addresses the request and objection.

Defendant argues that the Court should take judicial notice of the product labels because Plaintiffs' claims are based on them.  *See* Doc. No. 44-2 at 5.  Defendant reasons that all six causes of action "rely on product labeling and marketing [Plaintiffs] allege is misleading."  *Id.*  Noting that Plaintiffs allege five misleading terms and pursue claims against most of Defendant's products, Defendant asserts that all of the proffered product labels "are at issue and effectively incorporated by reference."  *Id.*  Plaintiffs respond that judicial notice is improper for two main reasons: the labels are not generally known in

---

[2] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

1    this district and are subject to dispute. *See* Doc. No. 62-1 at 4. As to the latter point,

2    Plaintiffs argue that the labels are subject to dispute because the labels are

3    unauthenticated; the high-resolution images are from unknown sources, appear to be

4    internal documents, and distort what consumers actually see; Defendant failed to explain

5    the labels' relevancy; and the labels inappropriately dispute Plaintiffs' allegations. *See*

6    *id.* at 4–7. Additionally, Plaintiffs respond that incorporation-by-reference is improper

7    because they challenge the labels' authenticity. *Id.* at 9.

8        The Court proceeds by determining whether it can consider the exhibits under the

9    separate doctrines of judicial notice and incorporation-by-reference. *See Khoja v.*

10    *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Both of these

11    procedures permit district courts to consider materials outside a complaint, but each does

12    so for different reasons and in different ways.").

13    **A. Request for Judicial Notice**

14        **1. Legal Standard**

15        "Generally, district courts may not consider material outside the pleadings when

16    assessing the sufficiency of a complaint under Rule 12(b)(6) . . . ." *Khoja*, 899 F.3d at

17    998 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on*

18    *other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir.

19    2002)). However, "a court may take judicial notice of matters of public record," *id.* at

20    999 (quoting *Lee*, 250 F.3d at 689), and of "documents whose contents are alleged in a

21    complaint and whose authenticity no party questions, but which are not physically

22    attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled*

23    *on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201. A

24    judicially noticed fact must be one not subject to reasonable dispute in that it is either (1)

25    generally known within the territorial jurisdiction of the trial court or (2) capable of

26    accurate and ready determination by resort to sources whose accuracy cannot reasonably

27    be questioned. Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999 (quoting Fed. R.

28    Evid. 201(b)).

## 2. Discussion

Plaintiffs raise the specter of an authenticity dispute as to the labeling and high-resolution "proof" specifications. *See* Doc. No. 62-1 at 4–6. However, Plaintiffs do not detail how they are inauthentic, inaccurate, or disputed; instead, they merely question the manner in which they are presented before the Court. *See Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 893 (N.D. Cal. 2012) (noting that authenticity objections to judicial notice usually can be surmounted). Therefore, Plaintiffs do not genuinely question the authenticity of the exhibits.

As to the proofs specifically, Plaintiffs submit a declaration in support of their objection that attaches an exhibit containing a spreadsheet. Vasquez Decl., Doc. No. 62-2 ¶¶ 2–4. The attached spreadsheet "contains links to images of the revisions to product labels for products at issue from 2015 through 2020." *Id.* ¶ 3. The signed declaration states that the documents were produced by Defendant in response to Plaintiffs' request for "all versions of the packaging and product labels for the products at issue in this case." *Id.* ¶ 2. The links reveal high-resolution proof images, which appear to have overlap with Defendant's attached exhibits. *See* Vasquez Decl., Exh. 1, Doc. No. 62-3 at 2. Thus, to the extent there is any genuine authenticity dispute over the high-resolution "proof" specifications, Plaintiffs resolve it.

However, Plaintiffs' objections to the high-resolution proof specifications have some merit. These two-dimensional, flattened proofs distort what consumers see when viewing the three-dimensional products and do not represent how the products are advertised in their final product. *See Tsan v. Seventh Generation, Inc.*, No. 15-cv-00205-JST, 2015 WL 6694104, at *3 (N.D. Cal. Nov. 3, 2015); *Brown*, 913 F. Supp. 2d at 893. Moreover, these proofs do not appear to fall under Plaintiffs' false or misleading advertising allegations, and the Court did not need to rely on these exhibits to rule on the instant motion. Additionally, there are instances where the proofs do not match the final advertised packaging supplied by Defendant. *Compare, e.g.*, Doc. No. 44-3 at 1–2 (Buttermilk Flapjack and Waffle Milk packaging as advertised), *with, e.g.*, Doc. No. 44-3

5

at 3 (Buttermilk Flapjack and Waffle Milk packaging in proof-form). Therefore, the Court ultimately declines to take judicial notice over the high-resolution proof specifications.

Aside from the high-resolution proof specifications, the labels have a link to their respective product pages on Defendant's website, and Defendant supplies their webpage where the publicly available images can be found. *E.g.*, Doc. No. 44-3 at 1 (providing the Buttermilk Flapjack and Waffle Mix product label); *see* Doc. No. 44-2 at 4 ("These exhibits consist of publicly-available images from Kodiak's website, https://kodiakcakes.com/."). As already noted, Plaintiffs do not genuinely dispute the accuracy or authenticity of the labels found on Defendant's website. Judicial notice is proper over websites and images of packaging in consumer protection advertising actions. *See Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1063 (S.D. Cal. 2019) (taking judicial notice sua sponte over printouts from the defendant's website and Amazon.com listing); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1087 (N.D. Cal. 2017) (quoting *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1098–99 (S.D. Cal. 2015)) (taking judicial notice of Raisin Bran during the alleged class period); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) (taking judicial notice of packaging labels that the complaint quoted and referenced and screenshots taken from a website and referenced in the complaint); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 963 n.4 (N.D. Cal. 2013) (taking judicial notice of packaging labels of the defendant's products). Therefore, the Court takes judicial notice over the labeling taken from Defendant's website but is mindful that the product labels may have changed over the course of the alleged class periods. Accordingly, the Court's grant of judicial notice is limited: it does not extend to prejudice Plaintiffs' allegations that pertain to time periods where Defendant's proffered labels were not used or nonwebsite advertising. Additionally, in examining the exhibits, the Court remains mindful of the risk of over-extending the judicial notice doctrine to avoid a "premature dismissal[] of a plausible claim[]." *Khoja*, 899 F.3d at 998.

1    Accordingly, the Court **GRANTS in part and DENIES in part** Defendant's

2    request for judicial notice.  The Court **GRANTS** Defendant's request as it pertains to the

3    labeling taken from Defendant's website.  The Court **DENIES** Defendant's request as it

4    pertains to the high-resolution proof specifications.

5    **B. Incorporation by Reference**

6        **1. Legal Standard**

7

8        Unlike rule-established judicial notice, incorporation-by-reference is a
         judicially created doctrine that treats certain documents as though they are
9        part of the complaint itself.  The doctrine prevents plaintiffs from selecting
         only portions of documents that support their claims, while omitting portions
10       of those very documents that weaken—or doom—their claims.

11

12   *Khoja*, 899 F.3d at 1002 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998),

13   *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem.*

14   *Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006)).  The Ninth Circuit has noted that there is a

15   "policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6)

16   motion by deliberately omitting references to documents upon which their claims are

17   based." *Parrino*, 146 F.3d at 706; *see also Khoja*, 899 F.3d at 1003 ("[T]he

18   incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs.").

19   "Even if a document is not attached to a complaint, it may be incorporated by reference

20   into a complaint if the plaintiff refers extensively to the document or the document forms

21   the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

22   2003); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of

23   the 'incorporation by reference' doctrine applies with equal force to internet pages as it

24   does to printed material.").  Incorporation-by-reference allows a court to "treat such a

25   document as part of the complaint, and thus may assume that its contents are true for

26   purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.  While a

27   court "unlike judicial notice . . . 'may assume an incorporated document's contents are

28   true for purposes of a motion to dismiss under Rule 12(b)(6)' . . . it is improper to assume

19-cv-2454-MMA (MSB)

1  the truth of an incorporated document if such assumptions only serve to dispute facts
2  stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003 (quoting *Marder v. Lopez*,
3  450 F.3d 445, 448 (9th Cir. 2006)).

4  **2. Discussion**

5  As with their objection to the Court taking judicial notice over the labels and
6  proofs, Plaintiffs raise the specter of an authenticity dispute.  *See* Doc. No. 62-1 at 8.
7  However, as already noted, Plaintiffs merely question the manner in which the exhibits
8  are presented before the Court and do not genuinely question the authenticity of the
9  exhibits.  Although they focus on the physical printouts, Plaintiffs' objections do not
10  appear to question the genuineness of Defendant's publicly available website.

11  However, the Court finds the high-resolution proof specifications are not proper
12  for incorporation-by-reference because Plaintiffs do not refer to the proofs in their FAC,
13  and the proofs do not form the basis of Plaintiffs' claims.  Although the proofs may be
14  similar in appearance and have some relation to the ultimate packaging that was
15  presented to consumers, Plaintiffs' claims pertain to the final product packaging as
16  presented in stores or online.  *See, e.g.*, FAC ¶¶ 17, 19, 21, 23, 27, 29, 31, 33, 35, 37, 39,
17  61, 64.  Furthermore, as mentioned above, there are instances where the proofs do not
18  match the final advertised packaging supplied by Defendant.  *Compare, e.g.*, Doc. No.
19  44-3 at 1–2 (Buttermilk Flapjack and Waffle Milk packaging as advertised), *with, e.g.*,
20  Doc. No. 44-3 at 3 (Buttermilk Flapjack and Waffle Milk packaging in proof-form).
21  Thus, the Court declines to consider the proofs under the incorporation-by-reference
22  doctrine.

23  Aside from the high-resolution proof specifications and the authentication
24  objection, the labels found on Defendant's website are subject to incorporation-by-
25  reference.  Courts can use incorporation-by-reference to consider exhibits containing
26  printouts taken from websites that plaintiffs refer to and use to support their allegations.
27  *See Loomis*, 420 F. Supp. 3d at 1063–64.  The labels are taken from Defendant's website.
28  *E.g.*, Doc. No. 44-3 at 1 (providing the Buttermilk Flapjack and Waffle Mix product

label); *see* Doc. No. 44-2 at 4 ("These exhibits consist of publicly-available images from Kodiak's website, https://kodiakcakes.com/."). Plaintiffs refer extensively to Defendant's online advertising, and online advertising forms a basis of their claims. *See, e.g.*, FAC ¶¶ 17, 23, 37, 39, 64 ("This advertising and marketing included statements made on Kodiak Cakes' online store, on Kodiak Cakes' social media profiles on Instagram and Facebook, on the Kodiak Cakes website and blog, on Amazon and/or on the *Shark Tank* episode that aired on ABC."); *see also Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Plaintiffs' FAC includes at least two inserted pictures taken from Defendant's online store. *See* FAC ¶ 64. Plaintiffs may not "select[] only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002 (citing *Parrino*, 146 F.3d at 706). Therefore, the Court considers the advertising on Defendant's website as a proper subject of incorporation-by-reference to the extent that the labels are not a means to "short-circuit the resolution of a well-pleaded claim" by "serv[ing] to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

Accordingly, the Court considers the advertising on Defendant's website and other online marketing under the incorporation-by-reference doctrine. The Court declines to consider the high-resolution proof specifications under incorporation-by-reference.

### III. MOTION TO DISMISS FOR LACK OF STANDING

**A. Legal Standard**

A Rule 12(b)(1) motion to dismiss allows for dismissal of an action for lack of subject matter jurisdiction. Subject matter jurisdiction must exist when the action is commenced. *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988). Further, subject matter jurisdiction may be challenged "at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action.").  The party seeking federal jurisdiction bears the burden to establish jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)).  A party may challenge standing in a Rule 12(b)(1) motion given standing "pertain[s] to a federal court's subject-matter jurisdiction under Article III."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A *facial* attack on jurisdiction asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction, whereas a *factual* attack disputes the truth of the allegations that would otherwise confer federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In resolving a facial challenge to jurisdiction, a court accepts the allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).  In resolving a factual attack, a court may examine extrinsic evidence "without converting the motion to dismiss into a motion for summary judgment," and a court need not accept the allegations as true.  *Safe Air for Everyone*, 373 F.3d at 1039 (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

However, a Rule 12(b)(1) motion is "not appropriate for determining jurisdiction . . . where issues of jurisdiction and substance are intertwined.  A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'"  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).  When there is an entanglement, determination of the jurisdictional issue should be determined "on either a motion going to the merits or at trial."  *Augustine*, 704 F.2d at

1077.  Unless the summary judgment standard is met, the disputed jurisdictional fact "must be determined at trial by the trier of fact." *Id.*

## B. Discussion

Defendant argues that Plaintiffs lack standing for several reasons: (1) they lack standing to bring claims based on laws of states where they do not reside and (2) they lack standing to seek injunctive relief.  *See* Doc. No. 44-1 at 18, 38.  In raising its standing challenges, Defendant brings a facial attack to subject matter jurisdiction.

Article III standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (first citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); and then citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  The party invoking federal jurisdiction bears the burden to establish standing.  *Id.*  The Court addresses Defendant's standing challenges in turn.

### 1. Standing to Assert Nationwide Class Claims

Defendant argues that the twenty-three Plaintiffs, who reside in eleven states, lack standing to assert a nationwide class claim.  *See* Doc. No. 44-1 at 19; Doc. No. 65 at 8–9.  Plaintiffs respond that this argument attempts to prematurely address class certification issues at the pleadings stage.  *See* Doc. No. 62 at 22.  Plaintiffs clarify that they "seek to apply the laws of each state in which the unnamed plaintiffs reside."  *Id.* at 23.

District Courts in California are split on the issue of whether standing inquiries can be deferred until after class certification, but they note a trend that courts can address standing at the pleadings stage and dismiss claims brought under state laws that have no connection to the named plaintiffs.  *Soo v. Lorex Corp.*, No. 20-cv-01437-JSC, 2020 WL 5408117, at *10 (N.D. Cal. Sept. 9, 2020) ("While the Ninth Circuit has not definitively answered whether named plaintiffs have standing to pursue class claims under the common laws of states to which the named plaintiffs have no connection, district courts in this Circuit routinely hold that they do not."); *Senne v. Kansas City Royals Baseball*

*Corp.*, 114 F. Supp. 3d 906, 921 (N.D. Cal. 2015) (noting the split); *see also Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072, 1072 n.3 (S.D. Cal. 2020) (providing examples and finding that there is a "growing trend" among California district courts to address standing at the pleadings stage and dismiss claims "under the laws of states in which no plaintiff resides or has purchased products"); *Mercado v. Audi of Am., LLC*, No. ED CV18-02388 JAK (SPx), 2019 WL 9051000, at *14 (C.D. Cal. Nov. 26, 2019) ("The Ninth Circuit has not directly addressed this question in the context of multistate claims."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1068 (N.D. Cal. 2015) ("Given the prevalence of nationwide class actions, it is perhaps surprising that there is no Ninth Circuit precedent specifically deciding this question.").

Plaintiffs bring three causes of action on behalf of a nationwide class: "violation of the consumer protection acts of all 50 states (and the District of Columbia)," breach of express warranty, and "restation based on quasi-contract and unjust enrichment." FAC ¶¶ 161–78, 211–16, 217–22; *see also id.* ¶ 149. However, the named Plaintiffs are from only eleven states. *See id.* at ¶¶ 16–68.

The Court agrees with the growing trend that courts can "address the issue of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products." *Schertzer*, 445 F. Supp. 3d at 1072. Even in circumstances where courts have found they have discretion to defer standing questions until after class certification, the standing inquiry can be addressed when Plaintiffs bring claims from states where they do not have a connection. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1074, 1075; *see also Senne*, 114 F. Supp. 3d at 924 (agreeing with the reasoning of *In re Carrier IQ, Inc.*). Indeed, "[i]f a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim." *Mercado*, 2019 WL 9051000, at *15 (quoting *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF, 2014 WL 4774611, at *4 (N.D. Cal. Sept. 22, 2014)); *see also Soo*, 2020 WL 5408117, at *11 (quoting *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019)) (stating that standing must

be shown for each claim and distinguishing the facts from *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)); *In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2020 WL 1066934, at *10 (N.D. Cal. Mar. 5, 2020) (same).[3]   The Supreme Court has insisted that "a plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 185).   The fact that this action is a putative class action does not excuse Plaintiffs' obligation to show standing for each claim asserted.   *See Spokeo, Inc.*, 136 S. Ct. at 1547 n.6 (quoting *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976)) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'").   No named Plaintiff alleges a connection to forty of the jurisdictions where they do not reside or have not purchased Defendant's products.   Therefore, the Court finds Plaintiffs lack standing to bring claims under the laws of the states where they do not reside or did not purchase the at-issue products.

Even if the Court found that it had discretion to defer the standing issue until after class certification, the Court would decline to exercise its discretion.   *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1074–75.   Plaintiffs reside in eleven jurisdictions but raise claims from fifty-one jurisdictions.   The forty claims from jurisdictions without a named

---

[3] The Court finds Plaintiffs' reliance on *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), distinguishable—and thus unavailing—for the reasoning outlined by several recent district court cases. *See Soo*, 2020 WL 5408117, at *10–11; *In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2020 WL 1066934, at *10 ("The short distinction is that *Melendres* did not address the circumstance here, where plaintiffs raise claims under several jurisdictions where they were not harmed.  The legal distinction, though, is that the named plaintiffs in *Melendres* asserted the same constitutional injury as the class; they just alleged different circumstances."); *Jones*, 400 F. Supp. 3d at 909 ("Unlike the instant case, *Melendres* did not confront a situation where named plaintiffs brought claims under the laws of multiple states where they did not reside and where they were not injured: in *Melendres*, all plaintiffs alleged that they suffered the same constitutional injury, only in different factual circumstances.  Here, because Plaintiffs bring claims under the laws of multiple states (some antitrust and some not), Plaintiffs technically invoke different legally protected interests.").

Plaintiff is vast when compared to the mere eleven claims from jurisdictions with a named Plaintiff.  The Court has reservations about subjecting Defendant "to the expense and burden of nationwide discovery without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws." *Id.* at 1074; *see also Soo*, 2020 WL 5408117, at *10; *Jones*, 400 F. Supp. 3d at 909; *cf.* Fed. R. Civ. P. 1.

Accordingly, the Court **GRANTS** Defendant's Rule 12(b)(1) motion to dismiss and **DISMISSES** with leave to amend the causes of action under the laws of states where named Plaintiffs do not reside or did not purchase the at-issue products.

### 2. Standing to Seek Injunctive Relief

Defendant argues Plaintiffs lack standing to seek injunctive relief because they do not allege that they intend to repurchase Defendant's products.  *See* Doc. No. 44-1 at 39; *see also* Doc. No. 44-1 at 25–26; Doc. No. 65 at 26.  Plaintiffs respond that they sufficiently show a likelihood of reinjury, which can be remedied by injunctive relief. *See* Doc. No. 62 at 43; *see also* Doc. No. 62 at 35–36.  Plaintiffs contend that their request is not defeated merely because they have discovered the deceptive packaging because the packaging remains misleading.  *See* Doc. No. 62 at 43.

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc.*, 528 U.S. at 185).  In applying the standing framework to a plaintiff seeking injunctive relief, the plaintiff must demonstrate that she or he "has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with 'a sufficient likelihood that he will again be wronged in a similar way.'"  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation omitted) (first quoting *Lujan*, 504 U.S. at 560; and then quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  The likelihood of further harm requires "a 'real and immediate threat of repeated injury.'"  *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).  Past wrongs constitute evidence of "a real and immediate threat of repeated injury"; however,

"[p]ast wrongs do not in themselves amount to a real and immediate threat of injury necessary to make out a case or controversy." *Id.* (first quoting *O'Shea*, 414 U.S. at 496; and then quoting *Lyons*, 461 U.S. at 103); *see also Lujan*, 504 U.S. at 564 (quoting *Lyons*, 461 U.S. at 102) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

In the false advertising context, the Ninth Circuit has held that

> a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

*Davidson*, 889 F.3d at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).  The Ninth Circuit emphasized that knowledge of a label's falsity "does not equate to knowledge that it will remain false in the future."  *Id.  Davidson* noted that "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved."  *Id.* at 969–70.  Ultimately, the *Davidson* court held the plaintiff bringing UCL, FAL, and CLRA causes of action had standing to pursue injunctive relief where she adequately alleged an imminent or actual threat of future harm because the plaintiff

> alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes manufactured by [Defendant] if it were possible"; "regularly visits stores . . . where [Defendant's] 'flushable' wipes are sold"; and is continually

1    presented with [Defendant's] flushable wipes packaging but has "no way of
2    determining whether the representation 'flushable' is in fact true."

3  *Id.* at 970–71 (recognizing this conclusion was a "close question").

4        Here, Plaintiffs allege that "[they] have an intention to purchase the products in the
5  future if the products are truthfully labeled and not misleadingly filled."  FAC ¶ 159.  At
6  this stage of the proceedings, the Court must presume the truth of Plaintiffs' allegations
7  and construe the allegations in their favor.  *See Davidson*, 889 F.3d at 971 (citing
8  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).  Plaintiffs allege
9  that they intend to purchase Defendant's products if labeling and filling issues are
10  resolved.  *See* FAC ¶ 159.  Plaintiffs' allegations are more concrete than claiming that
11  they would merely "consider" buying Defendant's products.  *See Lanovaz v. Twinings N.*
12  *Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (holding that the plaintiff's "would
13  'consider buying'" allegations and a mere intent to purchase the defendant's products in
14  the future were insufficient to sustain Article III standing); *Loomis*, 420 F. Supp. 3d at
15  1077 (finding that vague "would consider purchasing" allegations coupled with the
16  speculative nature of the at-issue product ever achieving its claimed representations was
17  insufficient to sustain Article III standing).

18        However, as to Plaintiffs' theory of misleading slack fill packaging, Plaintiffs'
19  allegations do not show a likelihood of further harm.  The Ninth Circuit noted that the
20  facts in *Davidson* presented a "close question," *Davidson*, 889 F.3d at 971, "implying
21  that standing was unlikely in cases where the threat of future harm was weaker," *Jackson*
22  *v. Gen. Mills, Inc.*, No. 18-cv-2634-LAB (BGS), 2019 WL 4599845, at *5 (S.D. Cal.
23  Sept. 23, 2019).  "Whatever other customers might know or not know, however,
24  [plaintiffs are] on notice of facts in [their] own complaint.  If [they] choose[] to ignore
25  them and rely on box size alone, [their] reliance would not be reasonable."  *Jackson v.*
26  *Gen. Mills, Inc.*, No. 18-cv-2634-LAB (BGS), 2020 WL 5106652, at *6 (S.D. Cal. Aug.
27  28, 2020).  Unlike in *Davidson* where the plaintiff had no way to determine whether the
28  representation of the wipes being "flushable" was in fact true in the future, *Davidson*, 889

F.3d at 971–72, the exaggerated size of Defendant's packaging can be checked easily by Plaintiffs.  In the future, Plaintiffs can cross-check their previous disappointing purchases by examining the undisputed net weight on the face of Defendant's product and the serving size in cylindrical cups and servings per container on the nutrition facts label.  *See, e.g.*, Doc. No 44-8 at 2 (Strawberry Chocolate Chip Flapjack and Waffle Mix); *Power Cakes: Strawberry Chocolate Chips*, Kodiak Cakes, https://kodiakcakes.com/products/strawberry-dark-chocolate-power-cakes (same).  If there is a change in the weight or quantity within the same sized box, Plaintiffs will be able to determine whether the box-to-mix ratio continues to be exaggerated.[4]  Therefore, Plaintiffs do not establish Article III standing to assert their claim for injunctive relief based on their theory of misleading slack fill packaging.  *See Jackson*, 2020 WL 5106652, at *6; *Jackson*, 2019 WL 4599845, at *5–6; *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCx), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018).

Plaintiffs' theory of misleading marketing statements faces similar hurdles.  Plaintiffs allege that Defendant markets its products as having "no preservatives" as well as being "free of artificial additives," "non-GMO," "healthy," and "protein-packed."  *See* FAC ¶¶ 10, 93–148.  Similar to their slack-fill allegations, Plaintiffs do not dispute the veracity of the nutrition facts or ingredient labeling on the products.  Rather, they complain about this marketing language found on the product's packaging and online.  In the future, as with their slack fill theory, Plaintiffs can check the nutrition facts or ingredient labeling to assess if the products still contain preservatives; artificial additives; unhealthy levels of fat, cholesterol, sugar, and vitamins; or insufficient protein.  Therefore, Plaintiffs do not establish Article III standing to assert their claim for

---

[4] The concern that other customers might benefit from an injunction and have standing does not mean Plaintiffs have standing.  *See Jackson*, 2020 WL 5106652, at *6; *see also Spokeo, Inc.*, 136 S. Ct. at 1547 n.6 (quoting *Simon*, 426 U.S. at 40 n.20).

injunctive relief based on their theory of misleading "no preservatives," "free of artificial additives," "healthy," and "protein-packed" marketing statements.

On the other hand, Plaintiffs face an injury of being unable to rely upon Defendant's "non-GMO" marketing statements in deciding whether to purchase the product in the future. *See Davidson*, 889 F.3d at 971–72. Unlike the other alleged forms of deception, Plaintiffs cannot check the undisputed serving size, net weight, nutrition facts, or ingredient list on the products to determine if the at-issue ingredients are genetically modified. Plaintiffs face an injury of being unable to rely upon Defendant's "non-GMO" marketing statements in deciding whether to purchase the product in the future. *See id.* Pursuant and similar to *Davidson*, Plaintiffs show a concrete injury that subjects Plaintiffs to an imminent or actual threat of future harm. *See id.* at 971–72. Therefore, Plaintiffs establish Article III standing to assert their claim for injunctive relief based on their theory of misleading "non-GMO" marketing statements. *See id.* at 972.

Accordingly, the Court **GRANTS in part and DENIES in part** Defendant's Rule 12(b)(1) motion to dismiss Plaintiffs' claims for injunctive relief. The Court **GRANTS** the motion and **DISMISSES** without leave to amend Plaintiffs' claim for injunctive relief as to their theory of misleading slack fill packaging and the "no preservatives," "free of artificial additives," "healthy," and "protein-packed" marketing statements. The Court **DENIES** the motion as to Plaintiffs' theory of "non-GMO" marketing statements.

**C. Conclusion**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss brought under Rule 12(b)(1).

## IV. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**A. Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts*, 812 F.2d at 1177 (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See Ritchie*, 342 F.3d at 907–08. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* At 908; *see also Lee*, 250 F.3d at 688. "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Additionally, allegations of fraud or mistake require the pleading party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The context surrounding the fraud must "be 'specific enough to give defendants notice of

the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "'"Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.' A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Kearns*, 567 F.3d at 1124 (citation omitted) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

**B. Discussion**

Defendant challenges each of Plaintiffs' causes of action. *See* Doc. No. 44 at 2. The Court proceeds by addressing whether Plaintiffs state a viable claim for each cause of action.

### 1. Consumer Protection Causes of Action

Given that the Court has dismissed the causes of action under the laws of states where named Plaintiffs do not reside or did not purchase the at-issue products, *see supra* Section III.B.1, Plaintiffs' California consumer protection causes of action under the CLRA, UCL, and FAL remain as well as their non-dismissed claims in the first cause of action. These causes of action arise from Plaintiffs' nonfunctional slack fill and deceptive marketing allegations.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a); *see also id.* § 1760. Specifically, the CLRA prohibits, among other things, "[r]epresenting

that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; "[a]dvertising goods or services with intent not to sell them as advertised"; and "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." *Id.* § 1770(a)(5), (7), (9), (16).

"The FAL prohibits unfair, deceptive, untrue, or misleading advertising, and this Court has previously concluded that a product's packaging may form the basis of an FAL claim." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 n.2 (9th Cir. 2016) (emphasis omitted). In particular, the FAL forbids the dissemination of any statement concerning property or services that "is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under each of the three prongs: "unlawful," "unfair," and "fraudulent." *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999) (quoting *Podolsky v. First Healthcare Corp.*, 58 Cal. Rptr. 2d 89, 98 (1996)) ("Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition— acts or practices which are unlawful, or unfair, or fraudulent."); *see also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (same). "The UCL expressly incorporates the FAL's prohibition on unfair advertising as one form of unfair competition." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013). Accordingly, any violation of the FAL also violates the UCL. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002)). Additionally, a violation of the CLRA also violates the UCL. *See Hadley*, 243 F. Supp. 3d at 1089 (first citing *In re Tobacco II Cases*, 207 P.3d 20, 29 n.8 (Cal.

2009); and then citing *Consumer Advocs. v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 22, 29 (Ct. App. 2003)).  Plaintiffs bring their UCL cause of action under all three prongs. *See* FAC ¶¶ 196–98.

The Court begins by addressing Defendant's objection to the framing of Plaintiffs' first cause of action.  The Court then examines the CLRA, FAL, and the fraudulent UCL prong together under Rule 9(b) and the "reasonable consumer test."  The Court then finally addresses the remaining unlawful and unfair UCL prongs.

### i. Nationwide Class Claims

Defendant argues that Plaintiffs' first cause of action—for violation of the consumer protection acts of all fifty states and the District of Columbia—is not a cognizable claim under Federal Rules of Civil Procedure 8 and 10.  *See* Doc. No. 44-1 at 19; *see also* Doc. No. 65 at 9.  Defendant asserts that Plaintiffs cannot mix these separate consumer protection causes of action and fold them into a single cause of action.  *Id.* Plaintiffs respond that Defendant elevates form over substance over an issue "that can be readily repleaded."  Doc. No. 24 at 44.

Based on lack of Article III standing, the Court has dismissed the causes of action under the laws of states where named Plaintiffs do not reside or did not purchase the at-issue products.  *See supra* Section III.B.1.  Regardless of the standing problems, separate claims should not be lumped together into one cause of action.  *See Swafford v. Int'l Bus. Machines Corp.*, 383 F. Supp. 916, 932 n.4 (N.D. Cal. 2019) (finding it improper for the plaintiff to assert a cause of action for violations of the California Labor Code and California Civil Code); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("[C]auses of action should not group together multiple sources of law; rather, Plaintiffs should plead separate causes of actions for each source of law, whether federal or state."); *Saling v. Royal*, No. 2:13-cvv-1039-TLN-EFB PS, 2015 WL 5255367, at \*4 (E.D. Cal. Sept. 9, 2015) (finding a cause of action titled "Intrusion into Seclusion (Privacy) Under Equal Protection"—which referenced the Equal Protection Clause and cited the Fourth and Fourteenth Amendment of the US Constitution as well as the

California Constitution—was improper to the extent the plaintiff attempted to assert multiple causes of action under one count); *see also* Fed. R. Civ. P. 10(b).

Regardless of potential overlap between the state statutes, *see* FAC ¶ 166, Plaintiffs do not cite to any authority that permits this Court to mix together the statutes of fifty-one separate jurisdictions into a single consumer protection cause of action. Undercutting their own position, Plaintiffs provide separate causes of action for their California CLRA, UCL, and FAL causes of action. *See* FAC ¶¶ 179–210. Even if there are similarities between the vast list of statutes, Plaintiffs have not shown the degree of overlap in terms of the statutes' substantive or procedural requirements. In sum, the Court declines to conflate the statutes of fifty-one jurisdictions into a single cause of action.

Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' first cause of action with leave to amend. If Plaintiffs wish to file a second amended complaint, the Court directs Plaintiffs to separate their allegations of various state statute violations into separate causes of action.

### ii. The Rule 9(b) Heightened Pleading Standard and Parallels between the CLRA, UCL, and FAL

Defendant argues that Plaintiffs do not satisfy Rule 9(b). *See* Doc. No. 44-1 at 16; *see also* Doc. No. 65 at 13. In particular, Defendant argues that Plaintiffs do not allege facts about their purchases, the terms they relied on for specific products, when they saw the terms, or how the terms were false or misleading to them. *See* Doc. No. 44-1 at 16–17; *see also* Doc. No. 65 at 13. Plaintiffs respond that Rule 9(b)'s requirements "may not even be necessary." *See* Doc. No. 62 at 18 (quoting *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020)). Regardless, Plaintiffs contend that they allege the required specificity, arguing that (1) the "who" is Defendant; (2) the "what" is nonfunctional slack fill and the five misleading marketing claims; (3) the "when" is January 1, 2015 through the class period; (4) the "where" is Defendant's product labels and advertising; and (5) the "how" is packaging that violates slack fill laws, the

misleading advertising, and Plaintiffs' reliance on the advertising to buy products they would not have purchased or would have paid a lower price for the products. *Id.* at 18–19 (citing FAC ¶¶ 6, 10, 16, 69, 149, 63–64, 82–148).

As a threshold issue, the Court addresses whether Rule 9(b) applies to Plaintiffs' allegations.[5] Where fraud is not a necessary element of a cause of action, a plaintiff may opt to allege that the defendant engaged in fraud. *See Vess*, 317 F.3d at 1103. In cases where a plaintiff alleges "a unified course of fraudulent conduct" and relies on the conduct, the claim sounds or is grounded in fraud, and "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Id.* 1103–04; *see also Kearns*, 567 F.3d at 1125 (citing *Vess*, 317 F.3d at 1103–04). However, in cases where the plaintiff opts to not allege a unified course of fraudulent conduct and alleges a mix of some fraudulent and nonfraudulent conduct, "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." *Id.* at 1104.

Here, Plaintiffs' own allegations defeat their argument. Plaintiffs aver that Defendant engaged in a unified course of fraudulent conduct. As an initial matter, the words "fraud or fraudulent" occur throughout the FAC. *See, e.g.*, FAC ¶¶ 9, 92, 155, 165, 166, 175, 198, 199, 202; *see also Vess*, 317 F.3d at 1105 ("Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)."). Plaintiffs refer to the nonfunctional slack fill as a fraudulent practice. *See id.* ¶ 92; *see also id.* ¶ 8 (referring the practice as "deceptive and misleading"). Plaintiffs allege that Defendant uses this "false and misleading" practice to "deceive" consumers, and they imply Defendant used slack fill to intentionally mislead consumers. *Id.* ¶ 83; *see id.* ¶ 87. Plaintiffs further refer to Defendant's marketing

---

[5] Plaintiffs rely on a Ninth Circuit footnote to support their argument. *See* Doc. No. 62 at 18 (quoting *Moore*, 966 F.3d at 1019 n.11). In *Moore*, the Ninth Circuit applied Rule 9(b) and found the plaintiffs satisfied Rule 9(b). *See Moore*, 966 F.3d at 1019–20. The court questioned the applicability of Rule 9(b) "given that a defendant can violate the UCL, FAL, and CLRA by acting with mere negligence." *Id.* at 1019 n.11. Although the Court noted that Rule 9(b) "may" not apply, the plaintiffs did not raise this issue and the court did not decide the issue. *Id.*

1    representations as "unfair competition or unfair, unconscionable, deceptive, or fraudulent

2    acts." *Id.* ¶ 165; *see also id.* ¶¶ 166, 198.  Plaintiffs emphasize that Defendant's

3    marketing "is designed to cause consumers to purchase [Defendant's] products *because*

4    *of* these deceptive messages." *Id.* ¶ 13; *see also id.* ¶ 111 (alleging that Defendant

5    "intentionally" uses certain misrepresentative claims to take advantage of health trends);

6    *id.* ¶ 168 (alleging that Defendant intended for Plaintiffs to rely on its representations).

7         Plaintiffs weave allegations of fraud throughout the FAC.[6]  Regardless of whether

8    Plaintiffs' causes of action require pleading fraud, Plaintiffs allege Defendant engaged in

9    a fraudulent course of conduct, which triggers Rule 9(b).  *See Kearns*, 567 F.3d at 1125

10   (citing *Vess*, 317 F.3d at 1103) ("While fraud is not a necessary element of a claim under

11   the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in

12   fraudulent conduct."); *see also Brice Yingling v. eBay, Inc.*, No. C 09-01733 JW, 2010

13   WL 11575080, at *2 (N.D. Cal. Mar. 10, 2010) (citing *Hovsepian v. Apple, Inc.*, No. 08-

14   5788 JF (PVT), 2009 WL 2591445, at *2 (N.D. Cal. Aug. 21, 2009)) ("Rule 9(b)'s

15   heightened pleading standards apply to claims for violations of the CLRA, FAL, and

16   UCL where such claims are based on a fraudulent course of conduct.").  Accordingly, the

17   Court finds that Plaintiffs' pleading must satisfy the particularity requirement of Rule

18   9(b).  *See Kearns*, 567 F.3d at 1125–26; *see also Davidson*, 889 F.3d at 964 (citing

19   *Kearns*, 567 F.3d at 1125) ("Because [the plaintiff's] common law fraud, CLRA, FAL,

20   and UCL causes of action are all grounded in fraud, the FAC must satisfy the traditional

21   plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading

22   requirements of Rule 9(b).").

23

24

25

26   [6] Additionally, in opposing Defendant's argument that they did not sufficiently plead a claim under Cal.
     Civ. Code § 1770(a)(9), Plaintiffs argue that they did sufficiently plead an intent to defraud.  *See* Doc.
27   No. 62 at 23 n.6 (citing FAC ¶¶ 11, 168, 186–87).  In rebutting Defendant's motion, Plaintiffs also refer
     to the violation of the consumer protection acts as "Plaintiffs' consumer *fraud* claims." *Id.* at 26
28   (emphasis added).

The Court now turns to whether Plaintiffs meet the particularity requirement of Rule 9(b).  To do so, the Court examines the FAC to determine whether Plaintiffs plead the "'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess*, 317 F.3d at 1106).

Plaintiffs allege that the "who" is Defendant.  *See, e.g.*, FAC ¶¶ 3, 6, 10, 163, 185, 196–98, 205, 215, 218.  The "what" concerns two overarching issues with Defendant's products: (1) nonfunctional slack fill and (2) deceptive marketing statements.  *See id.* ¶ 3. Regarding the nonfunctional slack fill, the "what" is that Defendant fills several of its products with substantially less than the container's capacity and the packaging leads consumers to believe the box contains more of the product.  *See id.* ¶ 7; *see also id.*, Exh. A (providing a "misrepresentation chart" that details Defendant's products and the alleged misrepresentations for each product).  As to the marketing claims, the "what" is that Defendant makes five false or misleading statements on its products: "no preservatives," "free of artificial additives," "non-GMO," "healthy," and "protein-packed." *Id.* ¶¶ 10, 13, 14; *see also id.*, Exh. A.  The "when" is Plaintiffs' alleged class period: January 1, 2015 through the date class notice is issued.  *Id.* ¶ 149.  Further, whereas some of the named Plaintiffs allege to have bought Defendant's products "over the past few years," *e.g.*, *id.* ¶ 17; *see also* ¶¶ 25, 27, 29, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, other named Plaintiffs allege a more specific date, *e.g.*, *id.* ¶ 19 ("in or around August 2019"); *see also id.* ¶¶ 21, 23; *id.*, Ex. B at 75, 80 (providing specific purchase dates for Plaintiffs Anna Altomare and Ty Stewart in Plaintiffs' CLRA violation notice).  The "where" is Defendant's product packaging and advertising, which included "statements made on Kodiak Cakes' online store, on Kodiak Cakes' social media profiles on Instagram and Facebook, on the Kodiak Cakes website and blog, on Amazon and/or on the Shark Tank episode that aired on ABC." *Id.* ¶¶ 63–64. Additionally, although some Plaintiffs allege to have bought products in a specific county, chain store, or unspecified location, *e.g.*, *id.* ¶ 19; *see also* ¶¶ 25, 27, 29, 31, 35, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, other Plaintiffs allege to have bought products at

a specific store or online, *e.g.*, *id.* ¶ 17 ("Mr. Stewart purchased [Defendant's] products . . . at various stores in San Diego County, most frequently the Target store located at 3245 Sports Arena Blvd, San Diego, CA 92110, and online through Kodiak Cakes' online store."); *see also* ¶¶ 21, 23, 33, 37, 39.

Plaintiffs allege the "how" differently based on the underlying theories. Regarding the nonfunctional slack fill theory, the "how" is that Defendant misrepresents the products' quantities through filling their opaque product boxes with less than half of product for no functional purpose. *Id.* ¶¶ 6–9, 82–85. Regarding the marketing statements theory, the "how" is that Defendant misrepresents the naturalness, healthiness, and nutritiousness of its products. Plaintiffs allege that Defendant misrepresents the natural[7] claims because its products contain "non-natural, synthetic and/or artificial substances," such as monocalcium phosphate, sodium bicarbonate, sodium acid pyrophosphate ("SAPP"), citric acid, and xanthan gum. *Id.* ¶ 119; *see also id.* ¶¶ 122–24. Plaintiffs further add that the several products contain genetically modified ingredients, such as "soy lecithin, soy protein, and corn starch." *Id.* ¶ 120. Plaintiffs allege that the health claims are misleading because consumers interpret "healthy" foods as having "low levels of fat, cholesterol and sugar and contain a certain level of vitamins and nutrients," but Defendant's products do not meet those standards. *Id.* ¶¶ 139–41 (citing 21 C.F.R. § 101.65(d)(2)). Plaintiffs allege that the nutrient claims are misleading because consumers interpret "protein-packed" foods as having "high" amounts or constituting an "excellent source" of protein, which means at least ten grams of protein per serving; however, many of Defendant's products contain only two to eight grams per serving. *Id.* ¶¶ 128–31 (first citing 21 C.F.R. § 101.54; and then citing 21 C.F.R. § 101.9(c)(7)(iii)). Plaintiffs claim that they relied upon these misrepresentations by purchasing Defendant's

---

[7] The Court notes that Plaintiffs' FAC takes issue with statements of "no preservatives," "free of artificial additives," and "non-GMO," which Plaintiffs collectively refer to as "natural claims." *See* FAC ¶¶ 10, 97, 115; *id.*, Exh. A. Despite referring to "all-natural" statements, Plaintiffs do not allege that "all-natural" is a misrepresentation or otherwise at-issue in this action.

products and that they would not have purchased or paid as much if they knew the products did not have the claimed characteristics.  *See id.* ¶¶ 63–67; *see also id.* ¶¶ 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60.

Rule 9(b) has three purposes:

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1405).  Here, Plaintiffs plead with the requisite specificity that upholds the purpose behind Rule 9(b). Although the alleged timeframe spans several years for some Plaintiffs, they generally outline how the products misled them, and Plaintiffs list the products at issue along with the nonfunctional slack fill or misrepresentation associated with each one.  *See* FAC, Exh. A.  The Court finds that Plaintiffs have provided adequate notice to Defendant in a manner that shows the suit is not merely a fishing expedition for unknown wrongs; does not harm Defendant in the same manner as a speculative, conclusory, or barebones complaint; and does not impose upon the Court, the parties, or society the cost of baseless litigation at this stage of the action.

Defendant's arguments to the contrary are unavailing.  As noted above, Plaintiffs have pleaded sufficiently the "who, what, when, where, and how" of the alleged misconduct.  *See Escobar v. Just Born Inc.*, No. CV 17-01826 BRO (PJWx), 2017 WL 5125740, at *13 (C.D. Cal. June 12, 2017); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2013 WL 5407039, at *2–4 (N.D. Cal. Sept. 25, 2013); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011).  Although the individual Plaintiffs do not directly state which of their purchased

products contained which misleading information, the Court can easily connect the allegations when coupling the products that each Plaintiff purchased with Plaintiffs' "Per-Product Misrepresentation Chart" that pairs each product with each alleged misrepresentation and is referred to throughout the FAC. *See Ang* 2013 WL 5407039, at *3 ("Plaintiffs have also identified with specificity the precise representations alleged to be illegal, fraudulent and misleading, as well as the specific products on which that language is found."). *Compare* FAC ¶¶ 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61 (listing the products purchased by named Plaintiffs), *and id.* ¶¶ 6, 12, 131, 141, 149 n.40, 164 (referring directly to the attached "Per-Product Misrepresentation Chart"), *with id.*, Exh. A (providing the "Per-Product Misrepresentation Chart"). Regardless of using judicial notice or incorporation-by-reference to examine Defendant's proffered exhibits to disprove that every product contained the misrepresentations, this issue is not appropriate at the Rule 9(b) juncture where Plaintiffs allege that Defendant did make such representations and the product labels may have changed over time. *See Bruton v. Gerber Prod. Co.*, No. 12-cv-02412-LHK, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014); *Ang* 2013 WL 5407039, at *4.

Accordingly, the Court finds that Plaintiffs meet the particularity requirement of Rule 9(b) unless otherwise noted below. *See Moore*, 966 F.3d at 1020 ("The fact that Plaintiffs placed Defendants on sufficient notice to respond to the alleged fraud reflects how their allegations meet Rule 9(b)."). The Court now turns to whether Plaintiffs satisfy Rule 8's general plausibility requirement and whether Plaintiffs state a viable claim for relief under the reasonable consumer test.

### iii. The Rule 8 General Plausibility Requirement and Reliance

Before discussing the reasonable consumer test and the claim-specific requirements of Plaintiffs' causes of action, Defendant generally argues that Plaintiffs do not satisfy Rule 8's plausibility requirement. *See* Doc. No. 44-1 at 14; *see also* Doc. No. 65 at 10. In particular, Defendant asserts that the twenty-three Plaintiffs use "almost identical copy-and-paste conclusory statements." Doc. No. 44-1 at 14. Defendant

contends that each Plaintiff fails to allege she or he read the product packaging and provides no information about buying experiences or price comparisons. *Id.* Defendant adds that Plaintiffs fail to allege reliance, which they claim is crucial because "not all of [Defendant's] products have all the purported representations that plaintiffs rely on in their FAC." *Id.* at 15. Finally, Defendant argues Plaintiffs do not explain why they continued to purchase products if they were dissatisfied with the labels or fill levels. Plaintiffs respond that facts do not become conclusions merely because allegations are shared between Plaintiffs, and they challenge Defendant's assertion that they fail to allege facts. *See* Doc. No. 62 at 12. Plaintiffs push back against the information Defendant argues is needed and contend they sufficiently allege reliance. *Id.* at 13–14, 15.

To the extent Defendant's arguments are duplicative or subsumed into the Rule 9(b) particularity requirement, its arguments are unavailing. As noted above, Plaintiffs have pleaded sufficiently the "who, what, when, where, and how" of the alleged misconduct. *See supra* Section IV.B.1.ii.[8] The Court declines to repeat its above analysis.

The Court now turns to whether Plaintiffs plead actual reliance and begins with the issue of Plaintiffs' shared reliance allegations. A plaintiff alleging claims under the CLRA, FAL, or UCL, must allege actual reliance. *See Moore*, 966 F.3d at 1020; *Guzman v. Polaris Indus., Inc.*, No. 8:19-cv-01543-JLS-KES, 2020 WL 2477684, at *3 (C.D. Cal. Feb. 13, 2020) (quoting *Stewart v. Electrolux Home Prod., Inc.*, No. 1:17-cv-01213-LJO-SKO, 2018 WL 1784273, at *4 (E.D. Cal. Apr. 13, 2018)). A plaintiff alleging false advertising or misrepresentation to consumers "'must show that the misrepresentation

---

[8] Defendant's reliance on *Ballard v. Bhang Corp.*, No. EDCV 19-2329 JGB (KKx), 2020 WL 6018939 (C.D. Cal. Sept. 25, 2020), is unsuccessful. In *Ballard*, the court granted a motion dismiss, requiring greater clarity as to "which chocolates [the plaintiff] bought, when he bought them, how they were advertised, and how they fell short—at the very least as to the chocolates that Plaintiff had lab-tested." *Id.* at *7. Here, Plaintiffs have provided the requisite clarity. *See supra* Section IV.B.1.ii.

was an *immediate cause* of the injury-producing conduct.'  However, a 'plaintiff is *not* required to allege that the challenged misrepresentations were the *sole* or even the *decisive* cause of the injury-producing conduct.'"  *Moore*, 966 F.3d at 1020 (quoting *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 888 (Cal. 2011)).  In *Moore*, the Ninth Circuit determined that although the plaintiffs did not provide many facts in their "individual allegations," they "collectively allege[d]" that "as a result of the false and fraudulent prescription requirement, each Plaintiff paid more for Prescription Pet Food than each Plaintiff would have paid in the absence of the requirement, or would never have purchased Prescription Pet Food."  *Id.*  The court held this was sufficient to survive a motion to dismiss.  *See id.*

Similarly, Plaintiffs here collectively allege that if they had known about the real nature behind the slack fill and misrepresentations, "they would not have purchased the [Defendant's] products or, alternatively, would have paid less for the Products."  FAC ¶ 14; *see also id.* ¶¶ 62, 67, 92, 145–46.  As in *Moore*, collective allegations can survive a motion to dismiss.  *See Moore*, 966 F.3d at 1020; *see also id.* at 1021 (quoting *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017)) ("[A]t the motion to dismiss stage, 'actual reliance . . . is inferred from the misrepresentation of a material fact.'").  Thus, Plaintiffs' collective or identical allegations do not doom a showing of actual reliance.

In assessing whether Plaintiffs allege actual reliance across Defendant's advertising, the Court splits its analysis between the "product packaging" and "other advertising." [9]  As to the packaging and as noted above, the Court can easily connect each product to its respective alleged misrepresentation.  *See supra* Section IV.B.1.ii.  *Compare* FAC ¶¶ 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61 (listing the products purchased by named Plaintiffs), *and id.* ¶¶ 6, 12, 131,

---

[9] The Court refers to "packaging" as both the physical packaging for Plaintiffs who purchased products in stores and the packaging images viewable online for Plaintiffs who purchased products online.  The Court refers to "other advertising" as all nonpackaging advertisements found on Defendant's website, online store, blog, social media, Amazon.com pages, and *Shark Tank* episode that aired on ABC.

141, 149 n.40, 164 (referring directly to the attached "Per-Product Misrepresentation Chart"), *with id.*, Exh. A (providing the "Per-Product Misrepresentation Chart"). Each Plaintiff alleges that she or he was "exposed to each of the Claims that were prominently displayed *on the package of the products [she or he] purchased* and in [Defendant's] marketing and advertising." *Id.* ¶¶ 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60 (emphasis added). Thus, the Court finds that Plaintiffs have alleged actual reliance on the statements found on the packaging for the products purchased by each individual Plaintiff.

As to the other advertising, each Plaintiff alleges that she or he was "exposed to each of the Claims that were prominently displayed . . . in [Defendant's] *marketing and advertising*." *Id.* ¶¶ 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60 (emphasis added); *see also id.* ¶ 64. After their individual allegations, Plaintiffs repeat this allegation and define "advertising and marketing":

> Each of the Plaintiffs were also exposed to, read, and relied upon the Claims made about these Products through Kodiak Cakes' advertising and marketing. This advertising and marketing included statements made on Kodiak Cakes' online store, on Kodiak Cakes' social media profiles on Instagram and Facebook, on the Kodiak Cakes website and blog, on Amazon and/or on the *Shark Tank* episode that aired on ABC.

*Id.* ¶ 64. Plaintiffs clearly aver that each Plaintiff was exposed to Defendant's advertising. *See id.*; *see also id.* ¶¶ 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50, 52, 54, 56, 58, 60. However, in defining "advertising and marketing," Plaintiffs provide a wide net of what the advertising "included" and tethers the advertisement media together with a vague "and/or." *Id.* It is unclear what advertisement medium each Plaintiff relied upon. Even if Defendant did in fact make misrepresentations across these media, Plaintiffs must each still show that the misrepresentation was an immediate cause of the injurious conduct. *See Moore*, 966 F.3d at 1020 (quoting *Kwikset Corp.*, 246 P.3d at 888). Here, the causal connection between

1    each Plaintiff and each misrepresentation across Defendant's advertising media is too
2    tenuous and insufficiently pleaded.  *See McCrary v. Elations Co.*, LLC, No. EDCV 13-
3    0242 JGB (OPx), 2013 WL 6403073, at *8. ("Plaintiff alleges that the [Defendant's]
4    website contains various misrepresentations, but the SAC does not allege that he looked
5    at or relied on anything on Defendant's website before purchasing [the product].  Thus,
6    Plaintiff did not actually rely on any website statements and does not have standing to
7    bring claims based on [] those statements." (citation omitted)).

8         However, one Plaintiff does appear to plead actual reliance plausibly to one alleged
9    deceptive statement found on the other advertising.  Plaintiff Ty Stewart ("Stewart")
10   plausibly pleads reliance on the "healthy" statement regarding Defendant's Double Dark
11   Chocolate Muffin Mix from the online store.  *See* FAC ¶¶ 64, 137; *see also infra* Section
12   IV.B.1.iv.b.2.  Stewart alleges that he purchased products on Defendant's online store.
13   *See* FAC ¶ 17.  Stewart alleges he purchased Double Dark Chocolate Muffin Mix.  *Id.*;
14   *see also id.* Exh. B. at 80.  Plaintiffs allege the deceptive "healthy" claim was made on
15   Defendant's online store regarding the Double Dark Chocolate Muffin Mix.  *See id.*
16   ¶¶ 64, 137.  Construing Plaintiffs' allegations in the light most favorable to them, *see*
17   *Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340), the Court finds
18   Plaintiff Stewart plausibly pleads actual reliance on the alleged "healthy" statement for
19   the Double Dark Chocolate Muffin Mix as advertised on Defendant's online store.

20        Therefore, with the exception of Plaintiff Stewart and his plausible reliance on the
21   "healthy" statement, the Court finds that Plaintiffs fail to plausibly allege actual reliance
22   on the statements found on Defendant's other advertising.

23                **iv. Reasonable Consumer Test and the CLRA, UCL, and FAL**
24        To state a claim under the CLRA, FAL, or the fraudulent prong of the UCL, a
25   plaintiff must allege that the defendant's purported misrepresentations are likely to
26   deceive a reasonable consumer.  *See Ebner*, 838 F.3d at 967 (citing *Williams*, 552 F.3d at
27   938); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019)
28   (citing *Williams*, 552 F.3d at 938); *Safransky v. Fossil Grp., Inc.*, No. 17-cv-1865-MMA

(NLS), 2018 WL 1726620, at *9 (S.D. Cal. Apr. 9, 2018); *Hadley*, 243 F. Supp. 3d at 1089.  "Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together." *Loomis*, 420 F. Supp. 3d at 1080 n.7 (quoting *Hadley*, 243 F. Supp. 3d at 1089).  "These laws prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Hadley*, 243 F. Supp. 3d at 1092 (quoting *Kasky*, 45 P.3d at 250).

"A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" *Davis*, 691 F.3d at 1162 (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 48 (Ct. App. 2006)).  "Likely to deceive implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012) (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Ct. App. 2003)); *see also Becerra*, 945 F.3d at 1228 (same).  Rather, "the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 129 Cal. Rptr. 2d at 495.  "In determining whether a statement is misleading under the statute, 'the primary evidence in a false advertising case is the advertising itself.'" *Colgan*, 38 Cal. Rptr. 3d at 46 (quoting *Brockey v. Moore*, 131 Cal. Rptr. 2d 746, 756 (Ct. App. 2003)).  However, "'[g]eneralized, vague, and unspecified assertions constitute "mere puffery" upon which a reasonable consumer could not rely, and hence are not actionable' under the UCL, FAL, or CLRA." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) (quoting *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005)).  Under the reasonable consumer test, the Ninth Circuit has emphasized that it is a "rare situation in which granting a motion to dismiss is appropriate" because "it raises questions of fact." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015); *Williams*, 552 F.3d at 939.

1    The Court now turns to whether Plaintiffs allege that Defendant's products are

2    likely to deceive a reasonable consumer under their two overarching theories of liability:

3    (1) deceptive fill level and (2) deceptive marketing statements.

### a. Deceptive Fill Level

5    Despite Plaintiffs referring to this issue as "nonfunctional slack fill," *see* FAC ¶¶ 3,

6    4–9, 82–92, the substance of these allegations appears to be brought under two sub-

7    theories: (1) consumer deception under the CLRA, FAL, and the fraud UCL prong, *see*

8    FAC ¶¶ 6,7, 8, 62, 83, 90, 186, 198, 205, and (2) nonfunctional slack fill under the unfair

9    or unlawful prongs of the UCL, *see id.* ¶¶ 7, 9, 62, 84–86, 90, 163, 196; *see also* Doc. No.

10   62 at 29.  Given the different analysis required for these theories, the Court addresses the

11   first sub-theory under the reasonable consumer analysis here and the second sub-theory

12   under the unfair and unlawful UCL prongs further below.  *See Buso v. ACH Food*

13   *Companies, Inc.*, 445 F. Supp. 3d 1033, 1037 (S.D. Cal. 2020) (discussing the two

14   theories in turn where the plaintiff alleged the packaging was filled in a misleading

15   manner and contained nonfunctional slack fill); *Escobar*, 2017 WL 5125740, at *7, *12

16   (first discussing whether the plaintiff alleged facts to state a claim under the reasonable

17   consumer analysis and then under the nonfunctional slack fill analysis); *see also infra*

18   Section IV.B.1.v.

19   Defendant asserts that Plaintiffs' slack-fill theory is insufficient to state a claim for

20   five reasons.  *See* Doc. No. 44-1 at 21–26; *see also* Doc. No. 65 at 15–19.  First,

21   Defendant argues the theory fails because the boxes state how much product they contain

22   "in weight, serving sizes, and often by final product output"; the recipes on the boxes

23   note the yield; and the box size does not correlate with the ultimate baked product

24   amount given that the baking mixes must be combined with other ingredients.  Doc. No.

25   44-1 at 22 (emphasis omitted).  Second, Defendant asserts that Plaintiffs cannot claim

26   they were deceived because they allege slack fill violations based on online purchases,

27   which  prevent the consumer from examining the box.  *See id.* at 23.  Third, Defendant

28   asserts that Plaintiffs failed to allege they were barred from comparison shopping based

on "price per ounce" or from picking up similar products to compare weight. *Id.* at 23, 24. Defendant claims that "[w]hen the price per ounce is indicated on the price tag of all the same products in a product category, the consumer cannot be misled." *Id.* at 23. Fourth, Defendant argues that Plaintiffs' allegation of repeated deception for every purchase is implausible because Plaintiffs would have known the fill level after the first purchase. *See id.* at 24–26. Fifth, Defendant argues the CLRA claim premised on slack fill should be dismissed because it requires a representation and Plaintiffs "do not allege an objective false representation (written or oral) that the box contains more product than it has." *Id.* at 26.

Plaintiffs respond with several arguments. *See* Doc. No. 62 at 28–36. First, Plaintiffs highlight that Defendant does not argue that the empty space is functional, which prevents dismissal of their unfair and unlawful UCL claim premised under Cal. Bus. & Prof. Code § 12606.2. *See id.* at 28–29. Second, Plaintiffs contend that they sufficiently allege that a reasonable consumer can be misled by a baking mix that requires cooking. *See id.* at 29–32. Third, Plaintiffs argue that slack fill allegations are sufficient when they include online purchases. *See id.* at 32. Fourth, Plaintiffs assert that they are not required to allege that they compared price per ounce or handled the product to determine weight. *See id.* at 33–34. Fifth, Plaintiffs claim that their causes of action are not limited to the initial purchase because deceptive packaging in one instance does not mitigate the deception in a subsequent instance. *See id.* at 35. Sixth, Plaintiffs contend that they allege an injury caused by the slack fill. *See id.* at 36. Seventh, Plaintiffs argue that the CLRA claim premised on slack fill is viable because product size is a misrepresentation. *See id.*

Plaintiffs allege that Defendant has a "uniform packaging scheme" across twenty-seven products where products are packaged in nontransparent, cardboard-resembling boxes and contain less than half of the boxes' capacity. FAC ¶¶ 6–7. Plaintiffs claim that within the boxes is an interior plastic bag that contains the product mix, which often amounts to only one-third the size of the box. *Id.* ¶ 83. Plaintiffs aver that the "deceptive

packaging leads the reasonable consumer to believe that the package contains substantially more product than it actually does." *Id.* ¶ 7; *see also id.* ¶ 83.

Within their FAC, Plaintiffs include a picture comparing the opaque exterior box next to a clear interior sealed bag containing the product mix—and using a ruler to show the difference. *See id.* ¶ 7. The picture shows that the exterior box is roughly nine inches tall, the interior bag containing the product mix is about eight-and-a-half inches tall, and the content of the bag is under four inches tall. *See id.* Comparing Defendant's exterior packaging with its competitors, Plaintiffs allege that competitors sell products with "significantly more product" than Defendant, which "lead[s] consumers to the reasonable assumption that [Defendant's products] contain the same amount of mix." *Id.* ¶ 86 (emphasis omitted). For example, Plaintiffs include a picture of one of Defendant's products next to a similar sized competitor product. *See id.* ¶ 86. Plaintiffs allege that Defendant's package contains 12.7 ounces of product and the competitor's product contains 32 ounces of products. *See id.* In addition, Defendant's product packaging details the product weight on the front of the box as well as the serving size—sometimes by final product output—and servings per container on the back or side of the box. *See, e.g.*, Doc. No. 44-3 at 1–2 (Buttermilk Flapjack and Waffle Mix packaging); Doc. No. 44-5 at 1–2 (Cinnamon Oat Flapjack and Waffle Mix packaging); Doc. No. 47-11 at 1–2 (Chocolate Fudge Brownie Mix packaging); Doc. No. 48-1 at 1–2 (Power Flapjacks packaging). To assess the plausibility of Plaintiffs' theory, the Court first reviews how other courts have addressed consumer deception based on unfulfilled quantity expectations.

In *Ebner v. Fresh, Inc.*, the Ninth Circuit affirmed the district court's dismissal of deceptive advertising claims. *See* 838 F.3d at 961–62. The plaintiff alleged the defendant's lip balm packaging was deceptive because it misled consumers into thinking it contained a larger quantity than it actually contained. *See id.* at 962. The plaintiff claimed the deception stemmed from a weighted metallic bottom, oversized packaging, and a screw mechanism that allowed only 75% of the product to rise to the top of the

tube.  *Id.*  In holding that the plaintiff did not allege a plausible consumer deception claim, the court reasoned that the tube and accompanying box had an accurate net weight label, a reasonable consumer understands the screw prevents full advancement of the product, and some additional weight may be necessary to keep the tube upright.  *See id.* at 967.  Noting the "context of the high-end cosmetics market," the court added "elaborate packaging and the weighty feel of the tube is commonplace and even expected."  *Id.*

In *Buso v. ACH Food Companies, Inc.*, the district court dismissed the plaintiff's consumer deception claim.  *See* 445 F. Supp. 3d at 1039.  The plaintiff alleged that the defendant's cornbread mix packaging was deceptive because it contained about 50% empty space and misled consumers into thinking it contained a larger quantity than it actually contained.  *Id.* at 1035.  The court found that it was "unreasonable for a customer to be deceived as to the amount of product contained in the cornbread mix box" because the front of the package stated the product's net weight and the approximate number of servings per container and the back of the package indicated that "the box contains enough cornmeal mix to make 'one 8-in square "loaf" of cornbread or 12 standard cornbread muffins.'"  *Id.* at 1038.  The court noted that the packaging clearly put consumers on notice of the quantity of cornbread that could be made per box.  *See id.*

In *Kennard v. Lamb Weston Holdings, Inc.*, the district court dismissed the plaintiff's consumer deception claim.  *See* No. 18-cv-04665-YGR, 2019 WL 1586022, at *7, *11 (N.D. Cal. Apr. 12, 2019).  The plaintiff alleged that defendant's sweet potato fries packaging was deceptive because "the container had more than 50% empty space" and misled consumers into thinking it contained a larger quantity than it actually contained.  *Id.* at *1.  The court reasoned that the packaging disclosed the product's net weight, number of fries per serving, and the number of servings per container; additionally, the weight and serving size labels "[did] not contradict other representations or inferences from defendant's packaging."  *Id.* at *5.  Court noted that "many district

courts have found that where the package itself discloses the actual unit counts, a 'reasonable consumer' could not be misled." *Id.*

In *Buso v. Vigo Importing Co.*, the district court dismissed the plaintiff's consumer deception claim. *See* No. 18-cv-1328-WQH-BGS, 2018 WL 6191390, at *5 (S.D. Cal. Nov. 28, 2018). The plaintiff alleged that defendant's risotto packaging was deceptive because it contained about 70% empty space and misled consumers into thinking it contained a larger quantity than it actually contained. *See id.* at *1. The court found "there [was] no deceptive act to be dispelled." *Id.* at *4 (quoting *Ebner*, 838 F.3d at 966). The court reasoned that the label's net weight was accurate and the package was pliable, which allowed consumers to see and feel the package to assess its quantity before purchase. *Id.* at *4, *5.

On the other hand, in *Escobar v. Just Born Inc.*, the court denied the defendant's motion to dismiss the plaintiff's consumer deception claim. *See* 2017 WL 5125740, at *1. The plaintiff alleged that the defendant's candy products were deceptive because they contained about 46% empty space and misled consumers into thinking they contained a larger quantity than they actually contained. *See id.* The court explained that

> a reasonable consumer is not necessarily aware of a product's weight or volume and how that weight or volume correlates to the product's size. In other words, the fact that the Products' packaging accurately indicated that a consumer would receive 141 grams or 5 ounces of candy does not, on its own, indicate to a reasonable consumer that the Products' box may not be full of candy and that, instead, 35.7% of the box is empty. Rather, a reasonable consumer may believe that 141 grams or five ounces of candy is equivalent to an amount approximately the size of the Products' box.

*Id.* at *9. The court found the facts distinguishable from those in *Bush*: whereas in *Bush* "the product's packaging indicated the *number* of cookies the package contained, giving the consumer a reasonable expectation of the product's contents beyond just the weight," the packaging in *Escobar* "include[d] the [p]roduct['s] net weight, and a serving size approximation in ounces and cups." *Id.* (citing *Bush v. Mondelez Int'l, Inc.*, No. 16-cv-

02460-RS, 2016 WL 7324990, at *2 (N.D. Cal. Dec. 16, 2016)).  The court added that the fact that a consumer can hear the rustling of a package's contents does not prevent a package from being deceptive to consumers and that "consumers may reasonably rely on the size of the packaging and believe that it accurately reflects the amount she is purchasing."  *Id.* at 10.  The court further noted that the plaintiff was unable to inspect the package prior to purchase because the candy was kept behind a glass enclosure and was handed to the consumer only after purchase.  *Id.*

In assessing a product, whether a reasonable consumer would be deceived often depends on the circumstances.  Substantial, nonfunctional empty space may be a factor that could plausibly mislead a reasonable consumer.  The reasonable consumer "is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'"  *Chapman v. Skype Inc.*, 162 Cal. Rptr. 3d 864, 872 (2013) (quoting *Lavie*, 129 Cal. Rptr. 2d at 497).  The reasonable consumer does not don Sherlock Holmes garb to scrutinize an entire aisle filled with shelves of a various pancakes by comparing the exact weight of each box's content with the price across a dozen brands or shaking and manipulating each box to detect the nature of the hidden culinary treasure.  Although consumers take into consideration certain labels and information provided on the packaging, consumers plausibly do not perform intense word-by-word detective work for each product they toss in their shopping cart.  To some degree, "consumers may reasonably rely on the size of the packaging and believe that it accurately reflects the amount she is purchasing."  *Escobar*, 2017 WL 5125740, at *10.  "[E]ven if a product's packaging accurately displays its weight, it does not mean that the way in which the product was packaged may not be misleading."  *Id.*; *Spacone v. Sanford, LP*, No. CV 17-02419-BRO (MRWx), 2017 WL 6888497, at *10 (C.D. Cal. May 11, 2017).

However, the inquiry does not end with merely relying on a package's size.  Reasonable consumers also rely on serving size and product yield information as well as the feel of the package to inform their purchasing decisions.  *See ACH Food Companies,*

*Inc.*, 445 F. Supp. 3d at 1038 (finding that it would be unreasonable for a consumer to be deceived as to the amount of cornbread mix in the box where the net weight and number of servings per box were displayed on the front of the box and the rear label indicated that the box could yield "one 8-in square 'loaf' of cornbread or 12 standard cornbread muffins"); *Kennard*, 2019 WL 1586022, at *5 (finding that it was not plausible for a consumer to be deceived where the fry packaging disclosed the product's net weight, number of fries per serving, and the number of servings per package); *Vigo Importing Co.*, 2018 WL 6191390, at *5 (finding that a reasonable consumer would not be deceived where the risotto packaging was pliable and the consumer can "see and feel the package and perceive the amount of product").

Here, the product is baking mix. Unlike the high-end cosmetics market with the widespread nature of elaborate and weighty packaging in *Ebner*, *see* 838 F.3d at 967, the Court is unaware that—and the parties do not argue—the pancake and other baking mixes at issue are part of a high-end market where large and weighty packages are expected. Indeed, Plaintiffs' slack-fill comparison between Defendant's Chocolate Chip Flapjack and Waffle Mix and a competitor's product suggests that empty space in pancake packaging is not the norm. *See* FAC ¶ 86; *see also id.* ¶ 85.

Further, whereas some labels state the final product yield after cooking or baking the mix and its ingredients, *see, e.g.*, Doc. No 44-4 at 2 (Chocolate Chip Flapjack and Waffle Mix); *see also Power Cakes: Chocolate Chips*, Kodiak Cakes, https://kodiakcakes.com/products/chocolate-chip-power-cakes (same), other labels only provide serving size in cylindrical cups and list an approximate number of those servings per container,[10] *see, e.g.*, Doc. No 44-8 at 2 (Strawberry Chocolate Chip Flapjack and

---

[10] Defendant asserts in their motion that "[t]he boxes state exactly how much product is inside in weight, serving sizes, and *often by* final product output (muffins, cookies, brownies, protein balls, flapjacks/waffles etc.)." Doc. No. 44-1 at 22 (emphasis omitted and added). Defendant appears to concede that not all of its product boxes state the final product yield.

Waffle Mix); *see also Power Cakes: Strawberry Chocolate Chips*, Kodiak Cakes, https://kodiakcakes.com/products/strawberry-dark-chocolate-power-cakes (same).  At this stage, the Court finds it plausible that the reasonable consumer is unlikely to convert cylindrical cups plus other ingredients[11] into the approximate product yield of the finished pancakes, waffles, or other baked goods.  *Cf. Escobar*, 2017 WL 5125740, at *9 n.4 ("In the Court's view, the reasonable consumer is unlikely to (1) make volume conversions from cylindrical cups to rectangular prisms; and (2) know the density of candy products, such that the printed weight of candy may be converted to approximate the volume of candy product packaged in a rectangular prism.").

At least some of the products here are distinguishable from the special consumer context and unique mechanics of a lip balm dispenser in *Ebner*, the listing of final product output information in *ACH Food Companies, Inc.* and *Kennard*, and the pliability of the packaging in *Vigo Importing Co*.  Additionally, Plaintiffs' claims raise questions of fact that do not trigger the rare situation where granting a motion to dismiss is appropriate.  *See Reid*, 780 F.3d 952, 958 (quoting *Williams*, 552 F.3d at 939); *see also Spacone*, 2017 WL 6888497, at *10 ("The Court recognizes the admonition that whether product labeling or packaging may mislead a reasonable consumer is a factual inquiry rarely appropriate for decision on a motion to dismiss.").  Therefore, the Court finds that Plaintiffs could plausibly prove that a reasonable consumer would be deceived by the size of Defendant's packaging where the opaque, nonpliable packaging does not provide information about the final product output.

Defendant argues Plaintiffs cannot claim they were deceived because they allege they made online purchases and there is no nonfunctional slack fill where "[t]he mode of commerce does not allow the consumer to view or handle the physical container or product."  Doc. No. 44-1 at 23 (quoting Cal. Bus. & Prof. Code § 12606.2(c)(8)).  This

---

[11] For example, Defendant's pancake mixes only require water to be added.  *See, e.g.*, Doc. No. 44-3 at 1–2 (Buttermilk Flapjack and Pancake Mix).

argument is unavailing because this provision is from the California Fair Packaging and Labeling Act, which Plaintiffs allege as part of their unlawful UCL prong claim and is distinct from their fraudulent UCL prong allegations. *See* FAC ¶ 196. The Court addresses Defendant's argument as it pertains to the unlawful and unfair UCL prongs in a later section of this order. *See infra* Section IV.B.1.v. To the extent Defendant makes a similar argument to rebut Plaintiffs' consumer deception theory, it is unavailing at this stage of the litigation. The Court still finds that Plaintiffs could plausibly prove a reasonable consumer would be deceived. Although Defendant notes that online consumers do not know the box's size from looking at a picture without a physical measure of reference, *see* Doc. No. 65 at 18, the issue still remains that online consumers may reasonably rely on the packaging, along with final product yield information, to accurately reflect the amount of product it contains. Thus, consumers could plausibly rely on the online product's picture—without a measure of reference—to assume that the container's size bears some relation to amount of its contents. Considering Plaintiffs' allegations in the light most favorable to them, *see Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340), consumers purchasing online products may have a stronger deception claim if they have less information about the product because they cannot visualize or handle the physical product and, thus, may be more susceptible to deceptive advertising. *Cf. Escobar*, 2017 WL 5125740, at *10 (noting that "common sense" reveals that a consumer may not have the opportunity to shake or manipulate a product on the shelf or behind glass to determine whether the box is full and further noting that the plaintiff alleged that the candy was kept in a "glass enclosure" and only handed to the consumer after purchase). Overall, Defendant has not persuaded the Court to differentiate the online purchase experience from the in-person retail experience at the motion to dismiss stage.

Defendant also argues that Plaintiffs do not allege that they were precluded from comparison shopping and that "price per ounce" price tags allow consumers to easily compare products. *See* Doc. No. 44-1 at 23. In addition to not providing authority for its

proposition, Defendant concedes that listing unit prices is merely "encouraged" and not mandatory in California.  *See id.* at 23–24, 24 n.7 (quoting Cal. Bus. & Prof. Code § 12655 ("It is the intent of the Legislature to *encourage* the unit pricing of all . . . packaged foods . . . offered by merchants in their places of business for sale at retail to the public.  The Legislature finds that unit pricing, the price per ounce, per pound, per gallon, or the metric equivalent thereof, or per 100 square feet, or per 100 count, for which those items are offered for sale at retail, effectively informs the consumer of the comparative prices and values of commodities, and is thus useful for the formulation of intelligent consumer choices." (emphasis added))).  Construing Plaintiffs' allegations in the light most favorable to them, *see Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340), the Court assumes California Plaintiffs were not provided with price per ounce information when they selected the product.  Thus, Defendant's challenge is unavailing.

Additionally, Defendant argues Plaintiffs' allegations hinder their claim that a reasonable consumer would be deceived because they knew about the slack fill after their first purchase yet continued to purchase Defendant's products for several years.  *See* Doc. No. 44-1 at 25–26; *see also* FAC ¶¶ 16–17.  However, "what is relevant at this stage is not what a reasonable consumer *actually* believes, but whether Plaintiff has plausibly pleaded facts indicating what a reasonable consumer *could* believe." *Escobar*, 2017 WL 5125740, at *10 n.5; *Spacone*, 2017 WL 6888497, at *9 n.10; *see also Williams*, 552 F.3d at 940 (concluding that the plaintiffs "could plausibly prove that a reasonable consumer would be deceived" by the snack packaging).  Also at this stage, the Court must construe Plaintiffs' allegations in the light most favorable to them.  *See Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340).  Plaintiffs' allegations about continued purchases cut against their individual claims.  However, reading the allegations in a favorable light, the Court finds that Plaintiffs' allegations plausibly state that they were deceived at least when they made their first purchase.  *See* FAC ¶¶ 16, 89–90.  This is enough at this stage of the litigation.

1    Finally, Defendant argues that Plaintiffs' CLRA claim must be dismissed as to

2    their slack fill theory because the CLRA requires a representation and slack fill is not a

3    representation.  *See* Doc. No. 44-1 at 26; *see also* Doc. No. 65 at 19–20.  Plaintiffs

4    respond that the exaggerated box size is a representation.  *See* Doc. No. 62 at 36.

5    Plaintiffs' CLRA cause of action alleges violations of Cal. Civ. Code § 1770(a)(5), (7),

6    (9), (16).  *See* FAC ¶ 186.  The UCL, FAL, and CLRA "are designed to prohibit 'not only

7    advertising which is false, but also advertising which, although true, is either actually

8    misleading or which has a capacity, likelihood or tendency to deceive or confuse the

9    public.'"  *Williams*, 552 F.3d at 938 (quoting *Kasky*, 45 P.3d at 250); *see also* Cal. Civ.

10   Code § 1760 ("This title shall be liberally construed and applied to promote its

11   underlying purposes, which are to protect consumers against unfair and deceptive

12   business practices and to provide efficient and economical procedures to secure such

13   protection.").  Further, unlike the other subsections Plaintiffs rely, § 1770(a)(9) does not

14   include the word "representation"; rather, it merely makes unlawful "[a]dvertising goods

15   or services with intent not to sell them as advertised."  Cal. Civ. Code § 1770(a)(9).

16   Construing the CLRA liberally as required by statute, *see* Cal. Civ. Code § 1760, the

17   Court finds that exaggerated box size and slack fill allegations can form the basis for a

18   CLRA claim.  *Cf. Escobar*, 2017 WL 5125740, at *11 (finding that the plaintiff stated a

19   viable claim under the CLRA, FAL, and UCL based on her allegations that the defendant

20   sold candy in misleading packaging that contained 46% empty space); *Spacone*, 2017

21   WL 6888497, at *10 (finding that plaintiff stated a viable claim under the CLRA, FAL,

22   and UCL based on her allegations that the defendant sold glue in misleading packaging

23   that contained 80% empty space).

24        Overall, without information stating how much final product a package contains or

25   how many final products constitute a serving size with the number of servings per

26   package, a reasonable consumer could plausibly assume that the size of an opaque,

27   nonpliable package bears some relationship to the amount of product inside.  In sum, the

28   Court finds that Plaintiffs *could* plausibly prove that a reasonable consumer would be

deceived by the size of Defendant's packaging where the packaging *does not* provide information about the final product output.  However, the Court also finds that Plaintiffs *could not* plausibly prove that a reasonable consumer would be deceived by the size of Defendant's packaging where the packaging *does* provide information about the final product output.  Accordingly, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss Plaintiffs' CLRA, FAL, and the fraudulent UCL prong causes of action premised on deceptive fill level.

### b. Deceptive Marketing Statements

The Court now turns to the viability of Plaintiffs' allegations that Defendant made several misleading statements in marketing its products that would deceive a reasonable consumer under the CLRA, FAL, and the fraudulent UCL prong.  Plaintiffs allege that Defendant employed five misleading statements, and they organize the statements into three categories: "Natural Claims, Health Claims, and Nutrient Claims."  *Id.* ¶¶ 10, 96. The Court proceeds by assessing each of the five statements within the three categories.

### 1. Natural Claims

Plaintiffs allege that Defendant misleadingly labels and advertises its products as having "no preservatives" as well as being "free of artificial additives" and "non-GMO." *See* FAC ¶¶ 10, 63, 97–126; *see also id.* Exh. A (providing the "Per-Product Misrepresentation Chart").  Defendant argues that Plaintiffs do not allege that "free of artificial additives" and "no preservatives" are misleading.  *See* Doc. No. 44-1 at 30; *see also* Doc. No. 65 at 22.  Defendant takes issue with Plaintiffs conflating the alleged statements with "all natural."  *See* Doc. No. 44-1 at 30; *see also* Doc. No. 65 at 22–23. Defendant criticizes the FAC for taking issue with trace ingredients and not identifying the artificial additives or preservatives.  *See* Doc. No. 44-1 at 30–31; *see also* Doc. No. 65 at 22.  Defendant asserts that Plaintiffs could not have been misled by the presence of the minor ingredients because they are ingredients in baking soda and baking powder. *See* Doc. No. 44-1 at 31; *see also* Doc. No. 65 at 23.  Further, Defendant argues that Plaintiffs fail to allege that the substances were used as a preservative or additive.  *See*

Doc. No. 44-1 at 31; *see also* Doc. No. 65 at 23. As to the "non-GMO" allegations, Defendant contends that reasonable consumers would not be misled by "a trace or secondary ingredient." Doc. No. 44-1 at 32; *see also* Doc. No. 65 at 23. Defendant criticizes Plaintiffs for not citing studies or tests on the products and for relying on assumption that the ingredients are genetically modified. *See* Doc. No. 44-1 at 32; *see also* Doc. No. 65 at 24. Defendant argues that the alleged genetically modified ingredients are all sub-ingredients: "corn starch is a sub-ingredient of baking powder, soy [lecithin] is a sub-ingredient of chocolate chips, and soy protein is a sub-ingredient of marshmallows." *See* Doc. No. 44-1 at 33–34.

Plaintiffs respond that they allege "free of artificial additives" means "there was nothing non-natural, synthetic or artificial in the products" and "'no preservatives' meant that there were no chemical preservatives, none at all." Doc. No. 62 at 38–39 (emphasis omitted). Plaintiffs contend it is irrelevant that they do not allege that they never used baking powder or avoid products with similar ingredients. *See id.* at 39. Further, Plaintiffs state that it is inappropriate at this stage to challenge whether a reasonable consumer would be misled by such minor ingredients. *See id.* As to their "non-GMO" allegations, Plaintiffs argue that the statement appears on Defendant's packaging and they sufficiently allege that the products contain genetically modified ingredients. *See id.* at 40. Finally, Plaintiffs assert that they do not need to provide test results of the products. *See id.*

Plaintiffs lump together their "no preservatives" and "free of artificial additives" claims.[12] *See* FAC ¶ 99; *see also id.* ¶¶ 104–05. Plaintiffs allege that they and reasonable consumers "understand that the representation that a product is 'free of artificial additives' and contains 'no preservatives' means that none of its ingredients are non-

---

[12] Plaintiffs appear to conflate other statements. These include statements that Plaintiffs do not allege were part of the at-issue marketing, such as "all natural" or "synthetic." *See* FAC ¶¶ 98, 99, 102–07, 114, 199. Because Plaintiffs limit the alleged misrepresentations to specific phrases, the Court does not address whether Plaintiffs allege that other phrases support a viable claim. *See supra* note 7.

natural, synthetic, artificial, or chemical preservatives." *Id.* ¶ 99. Plaintiffs aver that Defendant's baking mixes represent the following in bold: "In our [baking] mix, we use only 100% whole grains that are non-GMO and free of preservatives and artificial additives because to us, simple food is better." *Id.* ¶ 115 (emphasis omitted). Plaintiffs also allege that Defendant advertises its frozen Power Waffles "are made with only non-GMO ingredients and zero preservatives." *Id.* ¶ 116 (emphasis added). Plaintiffs further aver that many products' side or back panels state they are "[m]ade with freshly-ground whole grains and no preservatives" or "are non-GMO and free of preservatives and artificial additives because, to us, simple food is better." *Id.* ¶ 117; *see also id.* Exh. A. In particular, Plaintiffs allege that Defendant's products all contain one or more of the following substances, which are are preservatives or artificial additives: monocalcium phosphate, sodium bicarbonate, sodium acid pyrophosphate ("SAPP"), citric acid, xanthan gum, and "potentially others." *Id.* ¶ 119.

As to the "potentially others" part of the list, any unalleged preservative or artificial additive fails under Rule 9(b) for lack of specificity. The unclear, blanket allegation leaves Defendant to guess which statements across its products it will be required to defend. *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2014 WL 1048640, at *6 (N.D. Cal. Mar. 14, 2014) (finding that the plaintiff's allegations regarding undisclosed additives failed under Rule 9(b)). Thus, any allegations premised on unalleged preservatives or artificial additives fail under Rule 9(b).

As to the remainder of the list that comprises definite substances, Plaintiffs aver that Defendant advertises at least several of its products as "free of artificial additives" or containing "no preservatives." *See* FAC ¶¶ 115–17. Plaintiffs provide a definition of "free of artificial additives" and "no preservatives." *See id.* ¶ 99. Plaintiffs allege that all of Defendant's products contain at least one of the five substances, which they claim are artificial additives or preservatives. *See id.* ¶ 119.

Defendant does not point to authority showing how these five ingredients are not artificial additives or preservatives. Instead, Defendant argues that these substances are

minor and common ingredients in baking soda and baking powder. *See* Doc. No. 44-1 at 31. Defendant asserts that sodium bicarbonate is baking soda, SAAP is an ingredient in baking powder, and monocalcium phosphate is a leavening agent common in baked goods. *See id.* Defendant does not discuss citric acid or xanthan gum. Focusing on the ingredients' role as leavening agents, Defendant criticizes Plaintiffs for not alleging that the ingredients are used as a preservatives or additives and, relatedly, argues that they all serve a functional purpose. *See id.*

Whether these substances function as artificial additives or preservatives is an inappropriate inquiry at this stage. *Cf. Gitson*, 2014 WL 1048640, at *4 ("[W]hether sodium citrate, citric acid, and tocopherol function as artificial flavors, chemical preservatives, or both, is inappropriate to determine at this stage of the litigation."); *Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether maltodextrin is used as a sweetener and/or sodium citrate is used as a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss."). Defendant does not provide support to show how the substances are not preservatives or additives—even if the ingredients are also leavening agents or have a functional purpose. *See Thomas v. Costco Wholsale Corp.*, No. 5:12-cv-02908-EJD, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014) (finding that the plaintiffs alleged that the defendant's "preservative free" product was misbranded and may deceive a reasonable consumer because the product contained tocopherols, despite the defendant arguing it contained "natural tocopherols"); *Leonhart v. Nature's Path Foods, Inc*, No. 13-cv-00492-BLF, 2014 WL 6657809, at *6 (N.D. Cal. Nov. 21, 2014) ("Defendant's argument that tocopherol is not actually a chemical preservative presents a factual issue not appropriate for determination at the pleading stage."). Moreover, Defendant fails to address Plaintiffs' allegations concerning the presence of citric acid or xanthan gum.

19-cv-2454-MMA (MSB)

The Court finds it curious how consumers of baking products would be misled by the presence of leavening agents.  Nevertheless, at this stage, the Court must accept Plaintiffs' allegations as true and construe them in Plaintiffs' favor.  *See Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340); *see also Gitson*, 2014 WL 1048640, at *4 ("At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors or chemical preservatives.").  The Court finds that Plaintiffs plausibly plead that a reasonable consumer could be misled by advertising products as not containing artificial additives or preservatives where the products contain ingredients that Plaintiffs allege are additives or preservatives.  *See Williams*, 552 F.3d at 939 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").  Thus, the Court finds Plaintiffs' claims regarding the alleged artificial additives or preservatives survive the instant motion.

The Court now examines the viability of Plaintiffs' "non-GMO"[13] allegations.  Plaintiffs allege that Defendant advertises their baking mixes as "non-GMO."  *See* FAC ¶¶ 115–18.  Including a picture of a product, Plaintiffs claim that Defendant displays "non-GMO" in multiple places on the packaging, and it appears in "nearly every advertisement."  *Id.* ¶ 118.  Plaintiffs allege that products claiming to be "non-GMO" contain genetically modified ingredients, "including but not limited to soy lecithin, soy protein, and corn starch."  *Id.* ¶ 120.  Upon information and belief, Plaintiffs claim "these ingredients are synthesized, and Kodiak Cakes utilizes the synthesized form of these substances."  *Id.* ¶ 121.

Plaintiffs fail to define a plausible definition, or any definition at all, of the term "non-GMO" or "GMO."  *See Pappas v. Chipotle Mexican Grill, Inc.*, No. 16-cv-612-

---

[13] "GMO" is an acronym for "genetically modified organism."  *See* FAC ¶ 109.

19-cv-2454-MMA (MSB)

MMA (JLB), 2016 WL 11703770, at *7 (S.D. Cal. Aug. 31, 2016) (assessing whether the plaintiff plausibly defined "non-GMO" as a threshold issue before determining whether she pleaded a reasonable consumer would be misled by the defendant's description of its ingredients as non-GMO). The Court is left with only a blanket statement that the three ingredients are genetically modified. *See* FAC ¶ 120. Without a plausible definition or further allegations, the Court cannot assess *how* the at-issue ingredients are plausibly genetically modified or how a reasonable consumer would be misled. Thus, the Court finds Plaintiffs' claims regarding "non-GMO" allegations do not survive the instant motion because they lack specificity and plausibility.

In addition, Plaintiffs compound this lack of specificity by alleging on information and belief that the ingredients are "synthesized" and that Defendant uses "synthesized form of these substances." *Id.* ¶ 121. Plaintiffs fail to allege how this "synthesized" allegation connects to their "non-GMO" claim. Further, "allegations of fraud upon information and belief typically do not satisfy Rule 9(b)'s heightened pleading requirements." *Tortilla Factory, LLC v. Health-Ade LLC*, No. CV 17-9090-MWF (AFMx), 2018 WL 6174708, at *8 (C.D. Cal. July 13, 2018); *see also Shane v. Fla. Bottling, Inc.*, No. CV 17-02197 SJO (AGRx), 2017 WL 8240786, at *3 (C.D. Cal. Aug. 9, 2017) (noting exceptions where (1) the facts are within the possession and control of the defendant or (2) the belief is based on factual information making the inference "culpably plausible"). Here, Plaintiffs do not allege or argue that this information is within the control of Defendant, the information is based on sufficient underlying information, or that they do not have the access or means to test their belief. *See Tortilla Factory, LLC*, 2018 WL 6174708, at *8.

Finally, Plaintiffs appear to allege an open-ended list of potential substances that could be "non-GMO." *See* FAC ¶ 120 (alleging that the list of genetically modified ingredients "*includ[es] but [is] not limited to* soy lecithin, soy protein, and corn starch" (emphasis added)). As with their "no preservatives" and "free of artificial additives"

1   claims regarding "potentially other[]" ingredients, Plaintiffs do not state a claim for

2   unalleged substances that serve as the basis for their "non-GMO" claim.

3          Accordingly, the Court **GRANTS in part and DENIES in part** Defendant's

4   motion to dismiss Plaintiffs' CLRA, FAL, and the fraudulent prong of the UCL causes of

5   action premised on consumer deception through advertising that contained the statements

6   "no preservatives," "free of artificial additives," and "non-GMO."  The Court **GRANTS**

7   Defendant's motion and **DISMISSES** with leave to amend Plaintiffs' theory as it pertains

8   to their "non-GMO" claim and any unspecified ingredients that form the basis of the

9   three statements.  The Court **DENIES** the motion as to Plaintiffs' "no preservatives" and

10  "free of artificial additives" claim.

### 2. Health Claims

12         Plaintiffs allege that Defendant misleadingly labels and advertises its products as

13  "healthy."  *See* FAC ¶¶ 10, 63, 132–48; *see also id.* Exh. A (providing the "Per-Product

14  Misrepresentation Chart").  Defendant argues that Plaintiffs take issue with a word on

15  their website and blog that was never used on their boxes, and Defendant critiques

16  Plaintiffs for not alleging that they saw or relied upon the online advertising.  *See* Doc.

17  No. 44-1 at 28; *see also* Doc. No. 65 at 21.  Defendant further asserts that Plaintiffs

18  confuse the issue by citing inapplicable FDA regulations because Plaintiffs fail to allege

19  Defendant used the word "healthy" on food labels.  *See* Doc. No. 44-1 at 28; *see also*

20  Doc. No. 65 at 22.  Defendant finally contends that "healthy" is merely nonactionable

21  puffery because the word is used to show superiority to other muffins, and the word

22  needs to be taken in context.  *See* Doc. No. 44-1 at 29; *see also* Doc. No. 65 at 21–22.

23  Plaintiffs respond that "healthy" is not puffery given that it suggests a health benefit.  *See*

24  Doc. No. 62 at 37.  Rebutting Defendant's argument that "healthy" never appeared on the

25  packaging, Plaintiffs argue that "whether the statements that Plaintiffs allege they relied

26  actually existed on the packaging" and whether the word would deceive a reasonable

27  consumer are issues inappropriate on a motion to dismiss.  *See id.* at 38.  Despite

28  Defendant's argument, Plaintiffs argue that they alleged reliance on the term "healthy."

*See id.* (citing FAC ¶¶ 63–64).  Finally, Plaintiffs argue that they refer to the FDA regulations to show the benchmark for what "healthy" means to a reasonable consumer, not to show that Defendant violated the regulations.  *See id.*

Plaintiffs plausibly allege that the "healthy" statement exists on Defendant's website.  *See, e.g.*, FAC ¶¶ 64, 137, 138.  Plaintiffs' FAC leaves the Court uncertain whether "healthy" is mentioned on Defendant's physical products.  The products subject to judicial notice and incorporation-by-reference do not appear to bear the word "healthy."  Plaintiffs noticeably do not argue that the word appeared on the product's packaging.  *See* Doc. No. 62 at 38.  A court does not accept as true allegations contradicted by documents attached to or referred to in the complaint, matters subject to judicial notice, "unwarranted deductions of fact, or unreasonable inferences."  *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Daniels-Hall*, 629 F.3d at 998); *Steckman*, 143 F.3d at 1295–96 (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1403).  The Court declines Plaintiffs' invitation to make the unreasonable inference or deduction that "healthy" appeared on the product packaging given their own allegations in addition to the materials subject to judicial notice and incorporation-by-reference.  However, the Court finds that this issue is not dispositive.

Examining the FAC in the light most favorable to Plaintiffs, only Plaintiff Stewart plausibly pleads actual reliance on the alleged "healthy" statement for the Double Dark Chocolate Muffin Mix as advertised on Defendant's online store.  *See supra* Section IV.B.1.iii; *see also* FAC ¶¶ 16–17, 64, 137.  In addition to in-store purchases, he alleges that he purchased products online, and he alleges that one of his purchases included "Double Dark Chocolate Muffin Mix."  FAC ¶ 17.  Plaintiffs supply a screenshot describing Defendant's Double Dark Chocolate Muffin Mix from the online store, which reads as follows:

1

2

3

4

5

> Kodiak Cakes Double Dark Chocolate Muffin Mix balances nutrition with the rich flavor of cocoa and semisweet chocolate chips.  The easy-to-prepare muffin mix creates a moist, delicious, and *healthy* muffin you'll be glad you baked after you finish a tough workout or busy morning at the office.  Crafted from all-natural ingredients and 100% whole grains, each protein-packed muffin is a nourishing treat you can feel good about indulging in.

6

7

*See id.* (emphasis added); *see also id.* ¶ 137.  Thus, Stewart plausibly alleges that he

8

relied upon Defendant's online advertising.[14]  *See supra* Section IV.B.1.iii.  Whether

9

Stewart did indeed rely upon Defendant's online advertising is not an appropriate inquiry

10

at this stage.  The Court now turns to whether a reasonable consumer would be deceived

11

by Defendant's use of "healthy" based on (1) the online description of Defendant's

Double Dark Chocolate Muffin Mix and (2) a blog post.

12

Plaintiffs provide an alleged method to measure healthiness and compare it to

13

Defendant's products.  Plaintiffs claim that they interpret "healthy" as foods containing

14

low levels of fat, cholesterol, and sugar and containing a certain level of vitamins and

15

nutrients.  *See* FAC ¶ 139.  Plaintiffs rely upon a FDA regulation to set a benchmark for

16

what consumers consider "healthy": "(1) At least 10% of the DV of Vitamin A, Vitamin

17

C, calcium, iron, protein or fiber (2) Less than 60mg of cholesterol, (3) Less than 3 grams

18

of fat[,] and (4) Less than 1 gram of saturated fat." *Id.* ¶ 140 (citing 21 C.F.R.

19

§ 101.65(d)(2)).  Plaintiffs further allege that Defendant's products do not meet these

20

standards and are unhealthy because the products

21

22

23

24

25

26

> actually contain unhealthy levels of (1) fat and saturated fat, the consumption of which has been shown to cause heart disease and other serious health problems, (2) cholesterol, which has been shown to increase the risk of heart attack, stroke, and narrowed arteries (atherosclerosis), among other serious health problems; (3) contains high levels of sugar that can lead to heart disease, type 2 diabetes, and cancer, among other serious

27

28

---

[14] Except for Plaintiff Stewart and for the reasons noted above regarding the lack of actual reliance, Plaintiffs do not plausibly allege their "healthy" theory of liability.  *See supra* Section IV.B.1.iii.

1   health conditions and (4) fails to meet at least 10% of the DV of Vitamin A,
2   Vitamin C, calcium, iron, protein or fiber.

3   *Id.* ¶ 141.  Defendant does not challenge the sufficiency of these allegations, arguing

4   instead that the FDA regulation does not apply and "healthy" is puffery.  *See* Doc. No.

5   44-1 at 28.

6   "[T]he questions of reliance and how the term healthy will be understood is a

7   question of fact 'ill-suited for resolution on a motion to dismiss.'"  *Hadley v. Kellogg*

8   *Sales Co.*, 273 F. Supp. 3d 1052, 1084 (N.D. Cal. 2017) (quoting *Bruton*, 2014 WL

9   172111, at *11).  "The fact that the FDA regulates the use of the term 'healthy' implies

10  that 'consumers rely on health-related claims on food products in making purchasing

11  decisions.'"  *Id.* (quoting *Bruton*, 2014 WL 172111, at *11).  Defendant's desire for the

12  Court to examine the context of its main selling point of "100% whole grains" and the

13  added protein to its products is unavailing at this stage of the litigation.  Many of the

14  descriptors of the muffin mix could be considered general, vague, unspecified assertions.

15  *Compare* FAC ¶ 64 (referring to the muffin mix as "rich flavor," "moist," and

16  "delicious"), *with Hadley*, 273 F. Supp. 3d at 1081 (quoting *Glen Holly Ent., Inc. v.*

17  *Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003)) ("'Generalized, vague, and

18  unspecified assertions constitute "mere puffery" upon which a reasonable consumer

19  could not rely,' and thus are not actionable under the UCL, FAL, or CLRA.").  However,

20  at this stage, Defendant cannot shield an actionable health-related claim by mixing it with

21  nonactionable puffing language.  The Double Dark Chocolate Muffin Mix states that it

22  "creates . . . a healthy muffin."  *See* FAC ¶¶ 64, 137.  Although the context may suggest

23  that a reasonable consumer may not be deceived, the Court finds that Plaintiffs' "healthy"

24  allegations cannot completely be dismissed as a matter of law in the instant motion to

25  dismiss as to the Double Dark Chocolate Muffin Mix.  *See Hadley*, 273 F. Supp. 3d at

26  1085 ("[T]he Court finds that the statements 'Start with a healthy spoonful,' 'Invest in

27  your Health invest in yourself,' 'good for you,' and 'balanced breakfast' cannot be

28  dismissed as puffery in the instant motion to dismiss."); *Bruton*, 2014 WL 172111, at *11

1   (finding that "As Healthy As Fresh," "Support Healthy Growth & Development," and
2   "Nutrition for Healthy Growth & Natural Immune Support" were not puffery and
3   plausibly pleaded to survive a motion to dismiss).

4          However, Plaintiffs have not sufficiently pleaded a plausible claim that a
5   reasonable consumer would be misled by the "Healthy Living on a Budget" blog post.
6   *See* FAC ¶ 138.  As an initial matter and as already mentioned, all Plaintiffs fail to
7   plausibly allege actual reliance on the statements found on Defendant's other advertising.
8   *See supra* Section IV.B.1.iii.  This includes Plaintiff Stewart who does not allege
9   plausible facts showing that he relied on Defendant's "other advertising"—with the
10  exception of the Double Dark Chocolate Muffin Mix from the online store.  *See supra*
11  Section IV.B.1.iii.  Furthermore, the blog post is nonactionable puffery.  Plaintiffs supply
12  a tightly cropped series of two screenshots: the title of the post and a small paragraph.
13  *See id.*  The paragraph states the general difficulty of deciding "back to school breakfast
14  ideas" and ends with stating "[b]ut now that the kids are back in school, it's even more
15  important to have a *healthy* breakfast every morning."  *Id.* (emphasis added).  It appears
16  that Plaintiffs attempt to use this blog post to allege that all of Defendant's products are
17  deceptively marketed.  This theory of liability is unavailing because there is no deceptive
18  act to be dispelled.  *See Ebner*, 838 F.3d at 966.  The paragraph merely provides
19  generalizations of breakfast and does not mention Defendant's products.  The paragraph
20  "do[es] not describe 'specific or absolute characteristics' *of the product*, but rather
21  involve[s] 'generalized, vague, and unspecified assertions.'"  *Hadley*, 273 F. Supp. 3d at
22  1088 (emphasis added) (quoting *Anunziato*, 402 F. Supp. 2d at 1139).  The blog post
23  excerpt does not plausibly imply that Defendant's products are healthy.  Thus, the Court
24  finds that the blog post is merely nonactionable puffery and Plaintiffs fail to allege how a
25  reasonable consumer would be deceived.

26         Accordingly, the Court **GRANTS in part and DENIES in part** Defendant's
27  motion to dismiss Plaintiffs' CLRA, FAL, and the fraudulent UCL prong causes of action
28  premised on consumer deception through advertising that contained the statement

1  "healthy."  The Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' theory

2  as it pertains to Defendant's general comments on the importance of breakfast on its blog

3  post.  Dismissal is with leave to amend to the extent Plaintiffs can show that the blog post

4  shows a direct connection that implies Defendant's products are healthy and goes beyond

5  mere generalizations on health and breakfast.  The Court **DENIES** the motion as to the

6  description of Defendant's Double Dark Chocolate Muffin Mix.

### 3. Nutrient Claims

8  Plaintiffs allege that Defendant misleadingly labels and advertises its products as

9  "protein-packed."  *See* FAC ¶¶ 10, 63, 127–31; *see also id.* Exh. A (providing the "Per-

10  Product Misrepresentation Chart").  Defendant argues that Plaintiffs' protein allegations

11  are implausible because the front of the box states the grams of protein in large bold font

12  and the nutrition facts panel on the back also states the grams of protein.  *See* Doc. No.

13  44-1 at 26–27; *see also* Doc. No. 65 at 20.  Defendant further asserts that "protein-

14  packed" is nonactionable puffery and is not equivalent to the FDA-regulated terms of

15  "high" or "excellent."  *See* Doc. No. 44-1 at 27; *see also* Doc. No. 65 at 20–21.  Plaintiffs

16  respond that Defendant incorrectly assumes that the products did represent the number of

17  grams of protein on the front of the box.  *See* Doc. No. 62 at 36.  Plaintiffs also argue that

18  "protein-packed" does not fall under nonactionable puffery "given that this phrase asserts

19  a health benefit of high protein."  *Id.* at 37.  Finally, Plaintiffs ague that Defendant

20  misconstrues their reliance on FDA-regulated terms of "high" or "excellent."  *See id.*

21  Plaintiffs explain that a reasonable consumer believes protein-packed "means that the

22  products are high in protein (> 10 grams per serving)," which is confirmed by the FDA

23  benchmark.  *Id.*

24  The Ninth Circuit has stated that "*Williams* stands for the proposition that *if* the

25  defendant commits an act of deception, the presence of fine print revealing the truth is

26  insufficient to dispel that deception."  *Ebner*, 838 F.3d at 966 (citing *Williams*, 552 F.3d

27  at 939).  Here, the Court finds no deceptive act to be dispelled.  *See id.*

28

In their FAC, Plaintiffs attach numerous pictures of Defendant's products. *See* FAC ¶¶ 7, 13, 86, 118, 127. Each of these pictures show in large, bold typeface the words "protein-packed" on the front of the box. *See id.* However, each of these pictures also clearly show the number of grams of protein in roughly the same large, bold typeface on the front of the box. *See id.* Although Plaintiffs argue that this does not mean the packaging was the same for all products throughout the class period, Plaintiffs do not cite to one example where the statement "protein-packed" was not also accompanied by the number of grams of protein in bold lettering on the front of the box. As noted above, the Court does not accept as true allegations contradicted by documents attached to or referred to in the complaint, matters subject to judicial notice, "unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent. Ltd.*, 733 F.3d at 1254 (quoting *Daniels-Hall*, 629 F.3d at 998); *Steckman v. Hart Brewing, Inc.*, 143 F.3d at 1295–96 (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1403). The Court declines Plaintiffs' invitation to accept unreasonable inferences or deductions of fact in the face of the contradictory packaging pictured in their own FAC in addition to the materials subject to judicial notice and incorporation-by-reference.

Thus, the Court finds that a reasonable person would not find Defendant's use of "protein-packed" to be misleading. *Cf. Hadley*, 243 F. Supp. 3d at 1101 (dismissing the plaintiff's unlawful prong UCL cause of action with prejudice where "the information concerning the amount of protein originating from milk and cereal is located directly below the allegedly misleading statement"). Even if a consumer were still uncertain on the meaning of "protein-packed" after seeing the grams of protein listed clearly on the front of the box, a reasonable consumer would be aware of the nutrition facts label on the back or side of the box as a means to clarify any uncertainty.

Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' CLRA, FAL, and the fraudulent prong of the UCL causes of action premised on consumer deception through packaging and advertising that contained the statement "protein-packed." Dismissal is with leave to amend to the extent Plaintiffs can overcome

1  the contradictory packaging pictured in their own FAC in addition to the materials

2  subject to judicial notice and incorporation-by-reference.

3  ### 4. Conclusion

4      Accordingly, for the reasons provided above, Court **GRANTS in part and**

5  **DENIES in part** Defendant's motion to dismiss Plaintiffs' CLRA, FAL, and the

6  fraudulent prong of the UCL causes of action premised on deceptive marketing

7  statements.

8  ### v. Remaining UCL Prongs

9      In its motion, Defendant does not directly challenge the remaining unlawful and

10  unfair UCL prongs and instead focuses on the fraudulent UCL prong regarding consumer

11  deception.  Defendant appears to conflate Plaintiffs' two sub-theories regarding their

12  deceptive fill level allegations.  As noted above, the analysis for these theories is distinct.

13  *See supra* Section IV.B.1.iv.a.  The Court now turns to whether Plaintiffs plead a viable

14  claim under the unfair and unlawful prongs of the UCL.

15  ### a. Unlawful Prong

16      The unlawful prong "is essentially an incorporation-by-reference provision."

17  *Obesity Research Inst., LLC v. Fiber Research Int'l*, LLC, 165 F. Supp. 3d 937, 952

18  (S.D. Cal. 2016); *see also Cel-Tech Commc'ns, Inc.*, 973 P.2d at 539–40 ("By

19  proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of

20  other laws and treats them as unlawful practices' that the unfair competition law makes

21  independently actionable.").  Accordingly, "[w]hen a statutory claim fails, a derivative

22  UCL claim also fails."  *Obesity Research Inst.*, LLC, 165 F. Supp. 3d at 953 (quoting

23  *Aleksick v. 7–Eleven, Inc.*, 140 Cal. Rptr. 3d 796, 801 (Ct. App. 2012)).

24      Here, Plaintiffs can succeed on this prong only if they plead sufficient facts to

25  support another cause of action.  *See Aleksick*, 140 Cal. Rptr. 3d at 801.  Because

26  Plaintiffs have pleaded sufficient facts to bolster their FAL, CLRA, and fraudulent UCL

27  prong causes of action at least to parts of Plaintiffs' theories, *see supra* Section

28

1  IV.B.1.iv.a–b, their unlawful UCL prong claim survives Defendant's motion to dismiss.
2  *See Loomis*, 420 F. Supp. 3d at 1085; *Safransky*, 2018 WL 1726620, at *13.

3       In addition, Plaintiffs allege a violation of the unlawful prong because of deceptive
4  fill level, which is predicated on the California Fair Packaging and Labeling Act
5  ("CFPLA"), Cal. Bus. & Prof. Code § 12606.2, and federal regulation, 21 C.F.R.
6  § 100.100.  *See* FAC ¶ 196.  As noted above, this theory is distinct from Plaintiffs'
7  deceptive fill level allegations predicated on consumer deception under the CLRA, FAL,
8  and the fraudulent UCL prong.  *See supra* Section IV.B.1.iv.a.

9       The CFPLA states that food containers cannot be "made, formed, or filled as to be
10 misleading."  Cal. Bus. & Prof. Code § 12606.2(b).  The statute further provides the
11 following:

13       A container that does not allow the consumer to fully view its contents shall
14       be considered to be filled as to be misleading if it contains nonfunctional
         slack fill.  Slack fill is the difference between the actual capacity of a
15       container and the volume of product contained therein.  Nonfunctional slack
         fill is the empty space in a package that is filled to substantially less than its
16       capacity for reasons other than any one or more of the following [safe harbor
17       provisions] . . . .

19 Cal. Bus. & Prof. Code § 12606.2(c).  District courts in California are split as to whether
20 the safe harbor provisions are affirmative defenses or "or whether their inapplicability is
21 an element that must be pled." *Jackson*, 2019 WL 4599845, at *6; *see also Matic v.*
22 *United States Nutrition, Inc.*, No. CV 18-9592 PSG (AFMx), 2019 WL 3084335, at *6
23 (C.D. Cal. Mar. 27, 2019) (detailing examples of the split).

24      Here, the Court does not need to resolve this split because Plaintiffs sufficiently
25 plead that the safe harbor provisions do not apply.  *See* FAC ¶¶ 83–86.  Plaintiffs claim
26 less than half of the opaque cardboard packaging is full and thus misrepresents the
27 amount contained within each product.  *See id.* ¶¶ 7, 83, 85; *id.*, Exh. A (providing the
28 "Per-Product Misrepresentation Chart").  Plaintiffs aver that none of the functional

purposes in the state or federal safe harbor provisions apply because the products "are in a powdered form that do not need slack fill to protect the contents"; "slack fill is not required by the machines to enclose the contents of the product"; "slack fill is not the unavoidable product settling during shipping and handling as it is much too large"; "[t]he oversized package container is not required to provide adequate space for mandatory and necessary labeling by law"; "[t]he box is not needed to prevent theft or accommodate tampering resistant devices"; and "[c]onsumers do not mix, add, shake or dispense liquids into the Slack Fill Products at issue such that slack fill is necessary." *Id.* ¶ 84.  Plaintiffs highlight that Defendant's other products reveal the lack of a functional purpose because "[i]n the same size box, Kodiak sells as much as 24 ounces and as little as 12.7 ounces, with no plausible explanation for the difference in the amounts while maintaining the same size box." *Id.* ¶ 85.  Plaintiffs further aver that Defendant's competitors that use similar size boxes contain significantly more product.  *See id.* ¶ 86.  Defendant does not argue that the empty space serves a particular function.

The Court finds that Plaintiffs allege a plausible claim under the CFPLA, which can serve as a predicate violation under the unlawful UCL prong.  *See Matic*, 2019 WL 3084335, at *6 ("The Court believes that the reasonable inferences that can be drawn from these are enough to render it at least plausible that each of the other safe harbor provisions do not apply."); *see also Kennard*, 2019 WL 1586022, at *9 (denying the defendant's motion to dismiss plaintiff's unlawful and unfair UCL prongs predicated on the nonfunctional slack fill liability theory).

However, Defendant argues Plaintiffs cannot claim they were deceived because they allege they made online purchases and there is no nonfunctional slack fill where "[t]he mode of commerce does not allow the consumer to view or handle the physical container or product."  Doc. No. 44-1 at 23 (quoting Cal. Bus. & Prof. Code § 12606.2(c)(8)).  Plaintiffs respond that federal law does not have a similar provision regarding "mode of commerce" and their UCL claim premised on violation of 21 C.F.R.

§ 100.10 remains viable even if their § 12606.2 predicate violation is not viable. *See* Doc. No. 62 at 33.

As a preliminary matter, Defendant's argument does not completely foreclose Plaintiffs' nonfunctional slack fill theory because some Plaintiffs allege that they purchased products in stores and online and other Plaintiffs allege that they only purchased products in stores. *See* FAC ¶¶ 17, 19, 21, 23, 27, 29, 31, 35, 37, 39, 49, 61. Thus, to the extent Plaintiffs allege they purchased products in stores, Plaintiffs overcome Defendant's motion to dismiss.

As to Plaintiffs' online purchases, the CFPLA provides that there is no nonfunctional slack fill where "[t]he mode of commerce does not allow the consumer to view or handle the physical container or product." Cal. Bus. & Prof. Code § 12606.2(c)(8). "The CFPLA itself provides that it is to be interpreted consistently with federal law." *Jackson*, 2019 WL 4599845, at *6; *see also* Cal. Bus. & Prof. Code § 12606.2(e). The CFPLA also states the following:

> If the requirements of this section do not impose the same requirements as are imposed by Section 403(d) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. Sec. 343(d)), or any regulation promulgated pursuant thereto, then this section is not operative to the extent that it is not identical to the federal requirements, and for this purpose those federal requirements are incorporated into this section and shall apply as if they were set forth in this section.

Cal. Bus. & Prof. Code § 12606.2(f).

The plain language of § 12606.2(c)(8) prevents online purchases from falling under nonfunctional slack fill because online shopping does not allow a consumer to be in contact with the "*physical* container or product." Cal. Bus. & Prof. Code § 12606.2(c)(8) (emphasis added). However, 21 U.S.C. § 343(d) and federal regulation 21 C.F.R. § 100.100 do not contain the "mode of commerce" requirement found in Cal. Bus. & Prof. Code § 12606.2(c)(8). Thus, by the terms of § 12606.2(f), the mode of

commerce requirement is "not operative." *See* Cal. Bus. & Prof. Code § 12606.2(f).
Therefore, despite Defendant's argument, Plaintiffs also survive Defendant's motion to
the extent they allege they purchased products online.

In sum, the Court finds that Plaintiffs plead a plausible predicate violation based on
their viable FAL, CLRA, and fraudulent UCL prong causes of action.  Plaintiffs also
plead a plausible predicate violation based upon violation of the CFPLA.  Accordingly,
the Court **DENIES** Defendant's motion to dismiss Plaintiffs' unlawful UCL prong claim.

### b. Unfair Prong

As to the unfair prong, the California Supreme Court has defined "unfair" conduct
in competitor cases to mean "conduct that threatens an incipient violation of an antitrust
law, or violates the policy or spirit of one of those laws because its effects are comparable
to or the same as a violation of the law, or otherwise significantly threatens or harms
competition." *Cel-Tech Commc'ns, Inc.*, 973 P.2d at 544; *see also Drum v. San
Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 51 (Ct. App. 2010).  However, the
California Supreme Court has not established a test to determine whether a business
practice is unfair in consumer cases.  *Drum*, 106 Cal. Rptr. 3d at 53; *see also Lozano v.
AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007); *Cel-Tech Commc'ns,
Inc.*, 973 P.2d at 544 n.12 (noting that the test does not relate to consumer actions).

After the California Supreme Court's decision in *Cel-Tech Commc'ns, Inc.*, the
California Courts of Appeal have created a split of authority through applying "three
different tests for unfairness in consumer cases." *Drum*, 106 Cal. Rptr. 3d at 53.  The
first test requires "that the public policy which is a predicate to a consumer unfair
competition action under the 'unfair' prong of the UCL must be tethered to specific
constitutional, statutory, or regulatory provisions." *Id.* (first quoting *Bardin v.
DaimlerChrysler Corp.*, 39 Cal. Rptr. 3d 634, 636 (Ct. App. 2006); then quoting *Davis v.
Ford Motor Credit Co. LLC*, 101 Cal. Rptr. 3d 697, 708 (Ct. App. 2009); and then
quoting *Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d 389, 395 (Ct. App. 2002)); *see
also Cel-Tech Commc'ns, Inc.*, 973 P.2d at 544 (requiring a finding of unfairness under

the UCL be tethered to legislatively declared policy).  The second test asks "whether the alleged business practice 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'"  *Id.* (first quoting *Bardin*, 39 Cal. Rptr. 3d at 636; and then quoting *Davis*, 101 Cal. Rptr. 3d at 708).  The third test draws on the "unfair" definition in the Federal Trade Commission Act and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."  *Id.* at 54 (first quoting *Davis*, 101 Cal. Rptr. 3d at 710; and then quoting *Camacho v. Auto. Club of S. California*, 48 Cal. Rptr. 3d 770, 777 (Ct. App. 2006)).

Regardless of the test used to assess unfairness, the Court finds that Plaintiffs' allegations survive the motion to dismiss.  Here, Plaintiffs sufficiently plead that Defendant violated the FAL, CLRA, fraudulent UCL prong, and unlawful UCL prong. *See supra* Section IV.B.1.iv; Section IV.B.1.v.a.  Plaintiffs plausibly allege that a reasonable consumer would be deceived and that Defendant uses misleading packaging because of nonfunctional slack fill.  *See* Section IV.B.1.iv.a; Section IV.B.1.v.a. Construing Plaintiffs' allegations in the light most favorable to them, these plausible allegations outweigh the utility of Defendant's current packaging or the burden that would be placed on Defendant to change its marketing.  Additionally, Defendant does not directly address this prong.  Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' unfair UCL prong claim.

### c. Conclusion

Plaintiffs have pleaded sufficient facts to survive Defendant's motion to dismiss the unfair and unlawful UCL prongs.  Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' unfair and unlawful UCL prong claims.

## 2. Breach of Express Warranty Cause of Action

Defendant criticizes Plaintiffs for failing to identify the applicable state law. *See* Doc. No. 44-1 at 20, 34; *see also* Doc. No. 65 at 9. Defendant further argues that Plaintiffs' warranty claim fails for the same reasons as their other claims. *See* Doc. No. 44-1 at 34. Defendant adds that it is unclear whether Defendant created a warranty and Plaintiffs do not identify an explicit guarantee. *See id.* at 34–35; *see also* Doc. No. 65 at 24. Finally, Defendant asserts that Plaintiffs did not provide notice of the warranty issue. *See* Doc. No. 44-1 at 35. Plaintiffs respond they seek to recover under the laws of each state. *See* Doc. No. 62 at 25. Plaintiffs further argue that Defendant offers no reason that the marketing claims did not become part of the bargain. *See id.* at 41. Plaintiffs also argue that they issued pre-lawsuit notices and that "[n]o notice is required when claims are against a defendant in its capacity as a manufacturer, not a seller." *See id.* at 42 (citing *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012)).

Plaintiffs allege their breach of express warranty claim on behalf of the nationwide class. *See* FAC ¶¶ 211–16. In their opposition brief, Plaintiffs elaborate that they "seek to recover under the laws of their 11 respective home states as well as seek[] redress on behalf of a nationwide class under state laws that are substantially similar." *See* Doc. No. 62 at 25. Although Plaintiffs argue in their opposition motion that they bring their warranty cause of action under laws of each individual state, *see* Doc. No. 62 at 25, they do not clearly allege the state laws that they seek to apply. Undercutting their own position, Plaintiffs list the separate laws in their first cause of action for violation of the consumer protection acts throughout the nation. *See* FAC ¶¶ 163 n.41, 166. The list appears to refer to consumer protection laws distinct from warranty laws, and Plaintiffs fail to provide similar applicable law as to their warranty claim. *Compare id.* ¶¶ 163 n.41, 166 (listing state slack-fill and consumer protection laws), *with id.* ¶¶ 211–216 (not listing a reference to an applicable state's law for breach of warranty).

Plaintiffs must allege the applicable law to determine whether they plead a sufficient claim. *See Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1333 (S.D. Cal. 2019) (dismissing under Rule 12(b)(6) the plaintiff's common law

1  claims on behalf of a nationwide class because they failed to allege the applicable law).

2  "Even if the basic elements of . . . breach of express warranties . . . are unlikely to differ

3  much from state to state, 'there may be (and likely are) differences from state to state

4  regarding issues such as applicable statute of limitations and various equitable defenses.'"

5  *Id.* (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D.

6  Cal. 2011)) (citing *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No.

7  16-cv-06391-BLF, 2018 WL 1576457, at *4 (N.D. Cal. Mar. 30, 2018)).  Plaintiffs

8  cannot remedy the pleading defect through argument in their opposition brief.  Plaintiffs

9  fail to identify which state laws govern their breach of express warranty cause of action

10  and, thus, fail to adequately plead their claims brought on behalf of the nationwide class.

11  *See id.*; *In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2018 WL

12  1576457, at *4 (citing *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d at 933) ("[D]ue

13  to variances among state laws, failure to allege which state law governs a common law

14  claim is grounds for dismissal.").

15  　　　Additionally, as with Plaintiffs' first cause of action, any separate state law claims

16  should not be lumped together into one cause of action.  *See supra* Section IV.B.1.i.

17  Further, as already noted, the Court has dismissed the causes of action under laws of the

18  states where named Plaintiffs do not reside or did not purchase the at-issue products

19  based on lack of Article III standing.  *See supra* Section III.B.1.

20  　　　Given the FAC's defects, the Court declines to address the parties' arguments as to

21  whether Plaintiffs plead a viable breach of express warranty claim under California law.

22  *See Augustine*, 386 F. Supp. 3d at 1333 (not analyzing whether the California plaintiffs

23  state a viable warranty claim under California law after finding they needed to allege the

24  applicable law).  Accordingly, the Court **GRANTS** Defendant's motion and

25  **DISMISSES** Plaintiffs' breach of express warranty cause of action with leave to amend.

26  If Plaintiffs wish to file a second amended complaint, the Court directs Plaintiffs to

27  identify the applicable state laws and separate their allegations of various state law

28  violations into separate causes of action.

19-cv-2454-MMA (MSB)

### 3. "Restitution Based on Quasi-Contract and Unjust Enrichment" Cause of Action

Defendant asserts that a claim for "restitution based on quasi-contract and unjust enrichment" does not exist because restitution is only a remedy. *See* Doc. No. 44-1 at 35–36; Doc. No. 65 at 25. Similar to the warranty claim, Defendant argues that Plaintiffs fail to allege which law applies. *See* Doc. No. 44-1 at 20, 36; Doc. No. 65 at 9. Further, Defendant contends that a claim based on quasi-contract cannot stand where there is an express contract, such as Plaintiffs' direct purchases. *See* Doc. No. 44-1 at 36; Doc. No. 65 at 25. Finally, Defendant argues Plaintiffs cannot allege unjust enrichment because they purchased the products for years. *See* Doc. No. 44-1 at 36. Plaintiffs respond that restitution and unjust enrichment are viable causes of action. *See* Doc. No. 62 at 42.

Plaintiffs allege their "restitution based on quasi-contract and unjust enrichment" claim on behalf of the nationwide class. *See* FAC ¶¶ 217–22. As with their warranty claim, Plaintiffs do not clearly allege the state law that they seek to apply. Thus, Plaintiffs' claim fails for the same reasons as its warranty claim. *See supra* Section IV.B.2; *see also In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, 2018 WL 1576457 (dismissing the plaintiffs' unjust enrichment claim because it did not specify the applicable law because of potential differences between how states treat the claim), at *4 (same); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d at 933 (same); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d at 966 (same).

The Court now turns to separately address this claim to the extent Plaintiffs bring it under California law. "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (first citing *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010); and then citing *Jogani v. Superior Ct.,* 81 Cal. Rptr. 3d 503, 511 (Ct. App. 2008)); *see also Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("Under both California and New York law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable,

19-cv-2454-MMA (MSB)

binding agreement exists defining the rights of the parties."). "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana*, 783 F.3d at 762 (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014)). "[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *See O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *10 (N.D. Cal. Dec. 5, 2013) (*Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 51 Cal. Rptr. 2d 622, 628 (Cal App. 1996)).

Here, Plaintiffs bring claims for breach of an express warranty and quasi-contract. *See* FAC ¶¶ 211–16, 217–22. To the extent Plaintiffs assert a claim under California law, the Court construes this claim as a quasi-contract claim. *See Astiana*, 783 F.3d at 762 (quoting *Rutherford Holdings, LLC*, 166 Cal. Rptr. 3d at 872). Plaintiffs do not respond to Defendant's argument that a quasi-contract claim cannot stand where there is an express contract. The allegations underlying Plaintiffs' express warranty claim overlap with their quasi-contract claim. *Compare* FAC ¶¶ 211–16, *with id.* ¶¶ 217–22. Under California law, "there cannot be a claim based on quasi contract where there exists between the parties a valid express contract covering the same subject matter." *Smith v. Allmax Nutrition, Inc.*, No. 1:15-cv-00744-SAB, 2015 WL 9434768, at *9 (E.D. Cal. Dec. 24, 2015) (citations omitted) (dismissing without leave to amend the plaintiff's unjust enrichment claim where he alleged damages based on a breach of express warranty over the same subject matter); *see also Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 949 (C.D. Cal. 2012) (citing *A. A. Baxter Corp. v. Colt Indus., Inc.*, 88 Cal. Rptr. 842, 848 (Ct. App. 1970)) ("An express warranty is a term of the parties' contract."). Therefore, the Court finds that Plaintiffs cannot bring a California quasi-contract claim while bringing an express warranty claim. *See Roper v. Big Heart Pet Brands, Inc.*, No. 1:19-cv-00406-DAD-BAM, 2020 WL 7769819, at *15 (E.D. Cal. Dec. 30, 2020) ("Because plaintiff may not assert a quasi-contract claim while also alleging an express

warranty claim, the court will grant defendant's motion to dismiss plaintiff's quasi-contract restitution claim."); *see also Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2017 WL 2797810, at \*14 (N.D. Cal. June 28, 2017); *Smith*, 2015 WL 9434768, at \*9.

Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' "restitution based on quasi-contract and unjust enrichment" cause of action with leave to amend.  If Plaintiffs wish to file a second amended complaint, the Court directs Plaintiffs to identify the applicable state laws and separate their allegations of various state law violations into separate causes of action.  Additionally, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' quasi-contract claim without leave to amend to the extent it is based under California law.

### 4. Equitable Relief Claims

Defendant separately argues that "Plaintiffs' claims for equitable relief fail on the ground that they do not and cannot plead that they lack an adequate remedy at law."  *See* Doc. No. 44-1 at 37; *see also* Doc. No. 65 at 25–26.  In doing so, Defendant relies on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020).  *See* Doc. No. 44-1 at 37–38.  Defendant asserts Plaintiffs' claims rest on overpayments, triggering an adequate monetary remedy at law.  Plaintiffs respond they may pursue alternative or different types of relief.  *See* Doc. No. 62 at 43 (citing Fed. R. Civ. P. 8(a)(3)).  Plaintiffs fail to directly confront Defendant's *Sonner* argument.  Rather, in a footnote without citing to support, Plaintiffs argue that *Sonner*'s facts "are inapposite considering the allegations and the posture of the FAC."  *See id.* at 43 n.15.

As the Court already noted in Defendant's Article III standing challenge, Plaintiffs do show future harm as to the "non-GMO" deceptive marketing statements.  *See supra* Section III.B.2.  Thus, Plaintiffs have plausibly shown that they lack an adequate remedy at law to at least some degree.  The Court finds this finding sufficient to overcome Defendant's *Sonner* challenge at this stage.  Additionally, unlike *Sonner*, Plaintiffs are not pursuing equitable remedies to the exclusion of a remedy at law.  Accordingly, the

Court declines to dismiss Plaintiffs' equitable claims at this time. *Cf. Roper*, 2020 WL 7769819, at *9 (quoting *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-cv-01515-KJM-AC, 2020 WL 3893395, at *5 (E.D. Cal. July 10, 2020)) ("Although monetary damages may ultimately fully address plaintiff's harm, at this stage of the litigation there is 'an ongoing, prospective nature to [plaintiff's allegations]' given her contention that she and other future purchasers will continue to be misled.").

## C. Conclusion

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss brought under Rule 12(b)(6).

## V. MOTION TO STRIKE

## A. Legal Standard

A Rule 12(f) motion to strike allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  For the purposes of this rule, "'[i]mmaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (1990)), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc.*, 984 F.2d at 1527 (quoting 5 Charles A. Wright & Arthur R. Miller, at 711); *see also Whittlestone, Inc.*, 618 F.3d at 974.  "In order to show that a defense is insufficient, 'the moving party must demonstrate that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *Diaz v. Alternative Recovery Mgmt.*, No. 12-cv-1742-MMA (BGS), 2013 WL 1942198, at *1 (S.D. Cal. May 8, 2013) (quoting *S.E.C. v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995)).

The purpose of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally disfavored, unless 'it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.'" *Haghayeghi v. Guess?, Inc.*, No. 14-cv-00020 JAH-NLS, 2015 WL 1345302, at *5 (S.D. Cal. Mar. 24, 2015) (quoting *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992); *see also Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)). In ruling on a motion to strike, the court may only consider the face of the pleading or matters subject to judicial notice. *See Fantasy, Inc.*, 984 F.2d at 1528; *Sands*, 902 F. Supp. at 1165. "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Snap! Mobile, Inc. v. Croghan*, No. 18-cv-04686-LHK, 2019 WL 884177, at *3 (N.D. Cal. Feb. 22, 2019) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)). Ultimately, the decision about whether to strike allegations is a matter within the Court's discretion. *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citing *Fantasy, Inc.*, 984 F.2d at 1528); *see also Whittlestone, Inc.*, 618 F.3d at 974 (quoting *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000)).

**B. Discussion**

In Defendant's notice of motion, it seeks to strike the following from Plaintiffs' FAC: (1) "[e]very reference to the laws of states in which the named plaintiffs do not reside"; (2) "Plaintiffs' slack-fill theory to the extent it relies on online purchases"; (3) "[a]ny representation or liability theory to the extent the Court finds that it fails"; and (4) "[a]ll requests for equitable relief including injunctive relief and restitution." Doc. No. 44 at 2. However, Defendant fails to argue why or how these allegations should be struck under the Rule 12(f) legal standard in their memorandum of points and authorities. It

19-cv-2454-MMA (MSB)

appears that Defendant seeks to strike these allegations under the same arguments underlying its motion to dismiss.

Defendant's motion to strike is an attempt to have certain portions of the FAC dismissed—"actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." *Whittlestone, Inc.*, 618 F.3d at 974. Reading Rule 12(f) as a means to dismiss some or all of a pleading would create a redundancy within the Federal Rules of Civil Procedure "because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose." *Id.*

Furthermore, the Court finds that the motion to strike does not meet the Rule 12(f) standard. First, the four strike requests do not pertain to an insufficient defense. Second, the allegations desired to be stricken are not redundant. Third, the allegations are not immaterial because they amount to Plaintiffs' asserted causes of action. Fourth, the allegations are not impertinent because the allegations desired to be stricken pertain directly to Plaintiffs' asserted claims. Fifth, the at-issue allegations, theories, or causes of action do not appear to be scandalous. Therefore, Defendant fails to satisfy Rule 12(f)'s requirements to show that Plaintiffs' allegations or causes of action should be stricken from their FAC.

**C. Conclusion**

Accordingly, the Court **DENIES** Defendant's motion to strike. *Cf. Howe v. Target Corp.*, No. 20-cv-252-MMA (DEB), 2020 WL 5630273, at *15–16 (S.D. Cal. Sept. 21, 2020) (denying the defendant's motion to strike the plaintiff's request for attorneys' fees where the request was improper under Rule 12(f) and the defendant did not meet the Rule 12(f) standard).

/ / /

/ / /

/ / /

/ / /

/ / /

# VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss brought under Rule 12(b)(1), **GRANTS in part and DENIES in part** Defendant's motion to dismiss brought under Rule 12(b)(6), and **DENIES** Defendant's motion to strike brought under Rule 12(f).  Plaintiffs must file an amended complaint curing the deficiencies noted herein on or before **May 17, 2021**.

**IT IS SO ORDERED**.

Dated: April 28, 2021

HON. MICHAEL M. ANELLO
United States District Judge

19-cv-2454-MMA (MSB)