1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12
13
14
15
16

| | |
|---|---|
| TY STEWART, et al., | Case No.:  19-cv-2454-MMA (MSB) |
| Plaintiffs, | **ORDER GRANTING IN PART AND** |
| v. | **DENYING IN PART DEFENDANT'S** |
| KODIAK CAKES, LLC, | **MOTION TO DISMISS** |
| Defendant. | [Doc. No. 91] |

17
18
19
20
21
22
23
24

On May 17, 2021, Ty Stewart along with twenty-one (21) other named plaintiffs (collectively, "Plaintiffs") filed a second amended class action complaint against Kodiak Cakes, LLC ("Defendant") alleging violations of numerous state consumer protection laws.  *See* Doc. No. 90 ("SAC").  Before the Court is Defendant's second motion to dismiss.  *See* Doc. No. 91.  Plaintiff filed an opposition, to which Defendant replied.  *See* Doc. Nos. 92, 93.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

25

### I. BACKGROUND

26
27
28

In their First Amended Complaint, Plaintiffs brought six causes of action against Defendant based on two issues with Defendant's products: "(1) the non-functional slack fill and (2) deceptive marketing practices."  Doc. No. 37 ("FAC") ¶ 3.  Regarding the

former, Plaintiffs asserted that some of Defendant's products contain "empty space in a package that is filled to less than its capacity . . . that serves no lawful purpose. *Id.* ¶ 5 (internal citation and quotation marks omitted). As to the latter, Plaintiffs alleged Defendant misleadingly labels and advertises its products as having "no preservatives," being "free of artificial additives," "non-GMO," "healthy," and "protein-packed." *See id.* ¶¶ 10, 63, 97–126, 127–31, 132–48. Plaintiffs thus brought the following causes of action: (1) "violation of the consumer protection acts of all 50 states (and the District of Columbia)" on behalf of the nationwide class; (2) violation of the California Consumers Legal Remedies Act (CLRA), Cal Civ. Code §§ 1750–1784, on behalf of the California class; (3) violations of the California Unfair Competition Law (CUCL), Cal. Bus. & Prof. Code §§ 17200–17210, on behalf of the California class; (4) violation of the California False Advertising Law (CFAL), Cal. Bus. & Prof. Code §§ 17500–17606; (5) breach of express warranty on behalf of the nationwide class; and (6) "[restitution] based on quasi-contract and unjust enrichment" on behalf of the nationwide class. *See id.* ¶¶ 161–222. On October 28, 2020, Defendant moved to dismiss each cause of action in the Plaintiffs' FAC. *See* Doc. No. 44.

On April 29, 2021, this Court issued an order granting in part and denying in part Defendant's motion to dismiss and denying Defendant's motion to strike. *See* Doc. No. 87 ("FAC Dismissal Order"). The Court dismissed Plaintiffs' first cause of action with leave to amend and directed Plaintiffs to separate their allegations of various state law violations into independent causes of action. *See id.* at 23.[1] The Court further directed Plaintiffs to identify the state laws applicable to their breach of express warranty claims. *See id.* at 66. The Court denied the motion to dismiss with respect to Plaintiffs' CLRA, CUCL, and CFAL causes of action. *See id.* at 63. The Court dismissed Plaintiffs' quasi-contract claim. *See id.* at 69.

---

[1] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

With respect to the five deceptive marketing terms, the Court denied the motion to dismiss as to Plaintiffs': (1) "no preservatives" theory; (2) "free of artificial additives" theory; and (3) "healthy" theory as it relates to the description of Defendant's Double Dark Chocolate Muffin Mix. *See id.* at 18, 57. The Court dismissed with leave to amend Plaintiffs' "non-GMO" and "protein-packed" theories. *See id.* at 52, 58.

On May 17, 2021, Plaintiffs filed the SAC. Plaintiffs are from eleven states: California, Colorado, Connecticut, Florida, Illinois, Massachusetts, Michigan, Missouri, New Jersey, New York, and Washington. *See* SAC at ¶¶ 16–66. In the SAC, Plaintiffs reallege the three California consumer protection causes of action identified above—violations of the CLRA, CUCL, CFAL—as well as bring a California state law claim for breach of express warranty, Cal. Com. Code § 2313. *See id* at 53–60. As to the remaining ten states, Plaintiffs bring a state law claim under each respective consumer protection laws for deceptive practices,[2] as well as a state law claim for breach of warranty.[3] *See id.* at 60–83. In essence, Plaintiffs assert that some of Defendant's products contain the non-functional slack-fill, *see id.* ¶ 64, and some are misleadingly

_____

[2] The ten remaining state law consumer protection claims are: (1) violation of Colorado Deceptive Trade Practices, Colo. Rev. Stat. Ann. § 6-1-105; (2) violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110b(a); (3) violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201; (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1; (5) violation of Massachusetts Regulation of Business Practices for Consumer Protection Act, Mass Gen. Laws ch. 93A, §§ 1; (6) violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903; (7) violation of Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010; (8) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1; (9) violation of the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349; and (10) violation of the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010.

[3] The ten remaining state law breach of warranty claims are: (1) breach of express warranty, Colo. Rev. Stat. §§ 4-2-313; (2) breach of warranty, CT Gen Stat § 42a-2-313; (3) breach of express warranty, Fla. Stat. § 672.313; (4) breach of express warranty, 810 Ill. Comp. Stat. 5/2-313; (5) breach of express warranty, Mass Gen. Laws ch. 106, § 2-313; (6) breach of express warranty in violation of Mich. Comp. Laws Ann. § 440.2313; (7) breach of express warranty, Mo. Rev. Stat. §§ 400.2-313; (8) breach of warranty, N.J. Stat. Ann. § 12A:2-313; (9) breach of express warranty, N.Y. UCC § 2-313; and (10) breach of express warranty, Wash. Rev. Code § 62A.2-313.

labeled and advertised as: (1) "no preservatives;" (2) "free of artificial additives;" (3) "non-GMO;" and (4) "nourishing" and "healthy." *See id.* ¶¶ 65.

## II. Requests For Judicial Notice

In support of their briefing on this matter, both parties have filed requests for judicial notice. *See* Doc. Nos. 91-2, 92-8. Plaintiffs object to Defendant's request for judicial notice. *See* Doc. No. 92-7.

While, generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint, *see Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003), a court may, however, consider certain materials, including matters of judicial notice, without converting the motion to dismiss into a motion for summary judgment, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). For example, "a court may take judicial notice of matters of public record," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 899 (9th Cir. 2018) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002)), and of "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125–26; *see also* Fed. R. Evid. 201. A judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).

Defendant asks the Court to take judicial notice of fifty-nine exhibits in support of its motion to dismiss. *See* Doc. No. 91-2. Exhibits 1 through 58 are publicly available images from Defendant's website of various products' labelling. Plaintiffs object to the fifty-eight exhibits on the ground that they are "*current* printouts of the labels." Doc. No. 92-7 at 2. As Defendant notes, the Court previously took judicial notice of these

documents, which are publicly available images not subject to reasonable dispute.  *See* Doc. No. 91-2 at 2 (citing Doc. No. 87 at 4–7).  Accordingly, for the same reasons set forth in the FAC Dismissal Order, the Court **OVERRULES** Plaintiffs' objection and **GRANTS** Defendant's request to judicially notice Exhibits 1 through 58.

Exhibit 59 is a sixty-four page compilation of what appears to be the Non-GMO Project's website and prospectus.  *See* Doc. No. 91-61.  Defendant explains that these images and information are publicly available and thus not reasonably subject to dispute.  Alternatively, Defendant argues that the Court may consider Exhibit 59 through the incorporation by reference doctrine.  Plaintiffs do not oppose this request.

The Court agrees that Exhibit 59 contains publicly available information that is not reasonably subject to dispute.  Accordingly, the Court **GRANTS** the request and judicially notices Exhibit 59.[4]

Plaintiffs request that the Court take judicial notice of the verified complaint in *Kodiak Cakes, LLC v. JRM Nutrasciences, LLC*, 2:20-cv-00581-DBB (D. Utah Aug. 12, 2020).  Courts may take judicial notice of their own records, and may also take judicial notice of other court proceedings if they "directly relate to matters before the court." *Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1136-37 (S.D. Cal. 2006).  Because this document is a matter of judicial record, and its authenticity is not in question, the Court **GRANTS** Plaintiffs' request and takes judicial notice of the existence of the verified complaint in *Kodiak Cakes, LLC v. JRM Nutrasciences, LLC*, 2:20-cv-00581-DBB (D. Utah Aug. 12, 2020).  *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) ("[T]he court may take judicial notice of the existence of unrelated court documents, although it will not take judicial notice of such documents for the truth

---

[4] The Court notes, however, that Exhibit 59 is not appropriate for incorporation by reference.  Plaintiffs only reference the Non-GMO Project once in the entire SAC, *see* SAC at ¶ 124, and certainly the Non-GMO Project's website and prospectus do not "form[] the basis of the [] claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

of the matter asserted therein.").

That said, the Court reminds the parties that while it may take judicial notice of these exhibits, the Court will not rely on them to the extent they are irrelevant to the issues presented in the present motion or are offered in an attempt to "short-circuit the resolution of a well-pleaded claim." *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829–30 (N.D. Cal. 2019).

### III. LEGAL STANDARD

#### A.   Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "If the challenge to jurisdiction is a facial attack . . . the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *San Luis & Delta–Mendota Water Auth. v. U.S. Dep't of the Interior*, 905 F. Supp. 2d 1158, 1167 (E.D. Cal. 2012) (internal citation and quotation omitted).  The "lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *see also Wright v. Incline Vill. Gen. Imp. Dist.*, 597 F. Supp. 2d 1191, 1199 (D. Nev. 2009) ("lack of standing is a defect in subject-matter jurisdiction and may be properly challenged under Rule 12(b)(1)") (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).

#### B.   Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).  Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts.  *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."  *Id.* at 908; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).  "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## IV. DISCUSSION

Defendant moves to dismiss the SAC on various grounds. *See* Doc. No. 91 at 2. The Court considers each in turn.

### A.   Noncompliance with Local Rule 15.1(c)

As an initial matter, Defendant asserts the Court should strike the entire SAC due to Plaintiffs' failure to timely comply with Local Rule 15.1(c). *See* Doc. No. 91-1 at 8. Local Rule 15.1(c) provides that "[a]ny amended pleading filed after the granting of a motion to dismiss . . . must be accompanied by a version of that pleading that shows—through redlining . . . or other similarly effective typographic methods—how that pleading differs from the previously dismissed pleading." CivLR 15.1(c). Defendant correctly notes that Plaintiffs failed to attach a redline comparison to their SAC. However, Plaintiffs explain that the mistake was inadvertent, and thereafter attached a redline comparison of the FAC and SAC to their opposition. *See* Doc. Nos. 92-1 ¶ 3; 92-2 ("Exhibit A"). Defendant does not argue, nor does the Court find, that any prejudice resulted from Plaintiffs' delayed compliance. *See* Doc. No. 91-1 at 8. Moreover, this oversight could have been promptly cured during meet-and-confer discussions, which apparently did not occur. *See* Doc. No. 92 at 9. Therefore, the Court **DENIES** Defendant's request to strike the entire SAC on this basis.

### B.   Claim-Specific Standing

Defendant argues that some named Plaintiffs lack claim-specific standing. *See* Doc. No. 91-1 at 12–15. The Court has already concluded that at least one Plaintiff, Ty

Stewart, has satisfied both Article III standing and claim-specific standing.[5]   *See* FAC Dismissal Order at 53.   Defendant does not renew its prior standing arguments.   Instead, Defendant's request for Rule 12(b)(1) dismissal is based on the argument that ten Plaintiffs did not purchase a product that makes a "no preservatives" claim and eleven Plaintiffs did not purchase a product that makes a "free of artificial additives" claim.   *See* Doc No. 91-1 at 12–15.

As Plaintiffs explain in opposition, "Plaintiffs specifically alleged that they do not seek to represent a class of purchases based on representations they were not deceived by."   Doc. No. 92 at 9.   For example, Plaintiffs "allege that [Plaintiff Chad Humphrey] brings his statutory consumer fraud claim only '[o]n behalf of all other Colorado consumers regarding Defendants' non-functional slack fill practices and deceptive marking claims based on non-GMO and healthy.'"   Doc. No. 92 at 10:7–13; *see also id.* at 9:15–17; 10:23–27.   Plaintiffs have also incorporated in the SAC a "Per-Product Misrepresentation Chart" in which Plaintiffs are tracking the manner of alleged deception to specific products.[6]   Doc. No. 90-2 at 26.   At the pleading stage, this is sufficient.

Moreover, the Court finds that Defendant's request that the Court parse through the SAC to determine *which* Plaintiffs can bring *which* claims based upon *which* alleged deceptions is premature.   This is precisely what will occur at class certification: Plaintiffs will propose classes whereby each named Plaintiff will seek to represent a class of persons who bought the same products based upon the same alleged deceptions.   Thus, it is unnecessary at this time to identify, parse, and group each Plaintiff, product, and theory

---

[5] In the context of class actions, "standing is satisfied if at least one named plaintiff meets the requirements."   *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc)); *see also* Doc. No. 87 at 12.

[6] The Court attempted to ascertain the specific products purchased according to state by comparing Plaintiff's Exhibit A with SAC ¶¶ 17–63 but was unable to do so either because product names did not match, or the product was omitted from the list.   *See, e.g., id.* ¶ 44.   Accordingly, at the class certification stage, thorough, accurate, and specific product lists per Plaintiff will likely be necessary.

1    as such an undertaking is more appropriate for the class certification stage.  Therefore,

2    the Court **DENIES** Defendant's motion to dismiss on this basis.

3    **C.    "Non-GMO" Theory**

4          Defendant next takes issue with Plaintiffs' allegations that support their "non-

5    GMO" theory.  *See* Doc. No. 91-1 at 16.  The Court previously found that the FAC failed

6    to provide a plausible definition of "non-GMO" for the court to assess how a reasonable

7    consumer could be misled.  *See* Doc. No. 87 at 50–51.  In the SAC, Plaintiffs assert that

8    Defendant's dairy ingredients are not GMO free "because the animals from which they

9    are derived eat feed containing GMOs."  SAC ¶ 124.

10         As the Court noted in *Pappas v. Chipotle Mexican Grill, Inc*., No. 16CV612-MMA

11   (JLB), 2016 WL 11703770 (S.D. Cal. Aug. 31, 2016), the prefix "non-" is defined by

12   Merriam-Webster's Dictionary as: not, other than, reverse of, or absence of.[7]  *Id*. at *7.

13   Thus, non-GMO would mean not genetically altered, or in the absence of genetically

14   altered organisms.  *See id.*  In *Pappas*, the Court found the plaintiff's definition of "non-

15   GMO"—"not derived from animals that have consumed GMO-containing feed"—was

16   implausible and unlikely to be shared by reasonable consumers.  *Id*. at *7.  Here,

17   Plaintiffs have provided a similar definition for "non-GMO": "100% GMO free, both in

18   genetic makeup and the absence of foreign material content."  SAC ¶ 123.  At bottom,

19   like the plaintiff in *Pappas*, Plaintiffs argue that Defendant's dairy ingredients are not

20   GMO-free "because the animals from which they are derived eat feed containing

21   GMOs."  *Id.* ¶ 124.  Accordingly, the Court concludes that it is not plausible for a

22   reasonable consumer to believe that "non-GMO" means ingredients not derived from

23   animals that eat feed containing GMOs.  The Court therefore finds that Plaintiffs' "non-

24   GMO" allegations lack plausibility.  The Court thus **GRANTS** Defendant's motion and

25

26

27

28   [7] *See* Merriam-Webster's Learner's Dictionary, http://www.merriam-webster.com/dictionary/non-
     ?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Oct. 15, 2021).

**DISMISSES** Plaintiffs' claims to the extent they are premised on the "non-GMO" theory.

**D.    "Healthy" and "Nourishing" Theories**

Defendant challenges Plaintiffs' "healthy" and "nourishing" theories on four different grounds. The Court addresses each in turn.

*1.    Reliance on "Healthy" Advertisements*

Defendant argues that because only two Plaintiffs allege that they were exposed to "healthy" terms, Plaintiffs' "healthy" theory should be dismissed as to the other twenty Plaintiffs who did not rely on any "healthy" terms. *See* Doc. No. 91-1 at 21. Defendant's reliance argument fails for the same reasons discussed above. The Court has already found that one plaintiff satisfies claim-specific standing. *See* FAC Dismissal Order. The Court declines to consider these issues now as they will be better addressed at class certification. And importantly, even if the Court agreed to undertake the task Defendant requests, no single cause of action would be extinguished at this stage. Accordingly, the Court **DENIES** Defendant's motion on this basis.

*2.    "Nourishing" Statements*

Defendant argues that statements asserting its products are "nourishing" constitute "mere puffery." *See* Doc. No. 91-1 at 22, 26. One "nourishing" statement is Defendant's slogan: "Nourishment for Today's Frontier." SAC ¶ 127. Other "nourishing" statements include "the nutritional benefits early pioneers relied on to get through each day," in relation to the Oatmeal Dark Chocolate Cookie Mix and the Double Chocolate Chunk Brownie Mix, and "a nourishing treat you can feel good about indulging in" in relation to the Double Dark Chocolate Muffin Mix. *Id.* ¶ 19, 139. The question is whether these "nourishing" statements constitute nonactionable puffery.

Mere puffery is described as "[g]eneralized, vague, and unspecified assertions . . . upon which a reasonable consumer could not rely." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) (citation omitted). Claims of product superiority and vague descriptions of product quality or features are non-actionable

puffery.  For example, statements such as: "superb, uncompromising quality," "higher performance," "longer battery life," "richer multimedia experience," "faster access to data," and "faster, more powerful, and more innovative than competing machines" are not actionable.  *Id.* (citing *Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2006 WL 3093685, at *4–5 (N.D. Cal. Oct. 31, 2006) (rejecting "high-performance" and "top of the line" as mere puffery)); *Long v. Hewlett-Packard Co.*, No. C 06-02816 JW, 2007 WL 2994812, at *7 (N.D. Cal. July 27, 2007), *aff'd*, 316 F. App'x 585 (9th Cir. 2009) (rejecting "reliable mobile computing solution" and "do more on the move" as puffery).  Conversely, "misdescriptions of specific or absolute characteristics of a product are actionable."  *Id.* (citation omitted).

Defendant asserts "there is no dispute Kodiak's product provide 'nutritional benefits' as all food has some nutritional benefit."  Doc. No. 91-1 at 26.  In opposition, Plaintiffs argue that a reasonable consumer could find that "nourishing" is synonymous with "healthy."  SAC ¶ 127; Doc. No. 92 at 24.  Plaintiffs cite to *Hadley v. Kellogg Sales Company*, in which the court found that comparable health-related terms such as "nutritious," "essential nutrients," and "wholesome" could lead "a reasonable consumer to think that a product is healthy."  *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1083 (N.D. Cal. 2017) (citing *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010)).  While the Court agrees with the reasoning in *Hadley* and *Chacanaca*, the context in which Defendant's "nourishing" statements are presented here make it implausible for a reasonable consumer to find that "nourishing" is synonymous with "healthy."

The crux of Plaintiffs' "healthy" theory is that Defendant has "deceive[d] consumers into believing that several of its baking mixes create a 'healthy' food, which is misleading."  SAC ¶ 139.  Specifically, Plaintiffs allege Defendant's products that include "healthy" claims are unhealthy for the following reasons:

they actually contain unhealthy levels of (1) fat and saturated fat, the consumption of which has been shown to cause heart disease and other serious health problems, (2) cholesterol, which has been shown to increase the risk of heart attack, stroke, and narrowed arteries (atherosclerosis), among other serious health problems; (3) contains high levels of sugar that can lead to heart disease, type 2 diabetes, and cancer, among other serious health conditions and (4) fails to meet at least 10% of the DV of Vitamin A, Vitamin C, calcium, iron, protein or fiber.

*Id.* ¶ 130. The Court can infer that a reasonable consumer could conclude the term "healthy" refers to foods that: are low-fat; can lower cholesterol; contain low sugar; or meet recommended daily values of vitamins, minerals, and proteins. "Nourishment," on the other hand, is defined by Merriam-Webster's Dictionary as simply "food, nutriment" or "sustenance."[8] Based on Plaintiffs' pleading of "healthy," it is implausible for a reasonable consumer to infer from the statements "Nourishment for Today's Frontier" and "the nutritional benefits early pioneers relied on to get through each day" that Defendant's products are healthy as that term is defined by Plaintiffs, *i.e.*, that the products are low-fat; can lower cholesterol; contain low sugar; or meet the recommended daily values of vitamins, minerals, and proteins. Instead, the Court concludes that the "nourishing" statements in this context constitute mere puffery and that no reasonable consumer could be misled by Defendant's "nourishing" marketing statements. Because these "nourishing" statements constitute nonactionable puffery, the Court **GRANTS** the motion and **DISMISSES** Plaintiffs' claims to the extent they are premised on the "nourishing" allegations.

### 3. New Amendments to the "Healthy" Theory

Defendant next asserts that Plaintiffs' amendments to their "healthy" theory are impermissible under the FAC Dismissal Order. *See* Doc. No. 91-1 at 25. In the FAC Dismissal Order, the Court dismissed Plaintiffs' "healthy" theory as it pertained to

---

[8] *See* Merriam-Webster's Learner's Dictionary, https://www.merriam-webster.com/dictionary/nourishment (last visited Oct. 15, 2021).

1    Defendant's general comments on the importance of breakfast on its blog post.  *See* FAC

2    Dismissal Order at 56.  The Court granted Plaintiffs leave to amend "to the extent

3    Plaintiffs can show that the blog post shows a direct connection that implies Defendant's

4    products are healthy and goes beyond mere generalizations on health and breakfast."  *Id.*

5    Plaintiffs contend the Court should allow the amendments to the "healthy" theory

6    pursuant to Federal Rule of Civil Procedure Rule 15.  *See* Doc. No. 91 at 29.

7        Rule 15 provides: "A party may amend its pleading only with the opposing party's

8    written consent or the court's leave. The court should freely give leave when justice so

9    requires."  Fed. R. Civ. P. 15(a)(2).  A court's discretion to grant leave to amend "must

10   be guided by the strong federal policy favoring the disposition of cases on the merits."

11   *Valley v. Automated Sys. of Am., Inc.*, No. 11CV0325 JAH WMC, 2012 WL 113753, at

12   *2 (S.D. Cal. Jan. 13, 2012) (citing *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186

13   (9th Cir. 1987)).  "The district court may deny a motion for leave to amend if permitting

14   an amendment would, among other things, cause an undue delay in the litigation or

15   prejudice the opposing party."  *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087

16   (9th Cir. 2002).

17       Plaintiffs have consistently pleaded a "healthy" theory at various stages throughout

18   this litigation.  *See, e.g.*, Doc. No. 1 ¶¶ 9, 18, 34, 42; Doc. No. 37 ¶¶ 63, 137.  Plaintiffs'

19   factual allegations sufficiently provide Defendant fair notice of the nature of their claims.

20   *See Bell Atl. Corp. v. Twombly*, 550 U.S. at 555.  At the pleading stage, and in

21   accordance with the federal policy favoring disposition of cases on the merits, the Court

22   finds Defendant will not be prejudiced by allowing Plaintiffs to supplement their

23   "healthy" theory with additional examples.[9]  Accordingly, the Court **DENIES**

24   Defendant's motion on this basis.

25

26

27   [9] To the extent Defendant challenges Plaintiffs' "nourishing" allegations as an extension of their
     "healthy" theory, the Court declines to address those arguments, having already dismissed those
28   allegations.  *See* Part IV.D.2.

4.      *"Healthy" Statements*

Finally, Defendant challenges four statements that support Plaintiffs' "healthy" theory on the ground that Plaintiffs "fail to plausibly allege any facts showing the abovementioned new terms are misleading." Doc. No. 91-1 at 27, 29. The four new "healthy" statements include: (1) "healthy end to your day," which appears on the Defendant's Oatmeal Dark Chocolate Cookie Mix and the Triple Chocolate Brownie Mix; (2) "healthy end to your meal" with respect to the Double Chocolate Chunk Brownie Mix; and (3) "healthier end to your day" in relation to the Chocolate Fudge Brownie Mix. SAC ¶¶ 19, 25, 26, 27. Plaintiffs also point to (4) Defendant's representations on the television show *Shark Tank* in which Defendant highlighted customers "can't believe [pancakes made from Defendant's products] are so healthy." *Id.* ¶ 138. The Court now turns to whether a reasonable consumer would be deceived by each new "healthy" statement.

Defendant argues that the first "healthy" statement should be understood in context. *See* Doc. No. 91-1 at 11, 12. The "healthy" statement, in full, is: "*Made with 100% whole grains* for a healthy end to your day." *Id.* (citing SAC ¶ 66, Figure 4) (emphasis added). Defendant argues that the advertisement is focused on the health benefit derived from whole grains, generally. Doc. No. 91-1 at 27. But as noted above, Plaintiffs allege that Defendant's products are unhealthy because they include high levels of fat, cholesterol, sugar and fall below the recommended daily values of vitamins, minerals, and proteins. *See* SAC ¶ 130. Thus, the Court finds that this first statement does not speak to any of these unhealthy attributes. Because the advertisement in full refers to the health benefit derived from whole grains, the Court finds that it is implausible for the reasonable consumer to be deceived by this statement.

The second and third new "healthy" statements are: "healthy end to your meal" in relation to the Double Chocolate Chunk Brownie Mix and "healthier end to your day" in relation to the Chocolate Fudge Brownie Mix. SAC ¶ 25. Defendant's assumption that these statements must be read in connection to whole grains is improper. *See* Doc.

No. 91-1 at 28.  "[U]nwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto*, 139 F.3d at 699.  Unlike the first "healthy" statement, these—according to the SAC and documents duly incorporated by reference—are not made in the whole grain context.  Thus, the Court can plausibly infer that the reasonable consumer could read these statements and believe the products are low in fat, cholesterol, sugar and provide the recommended daily values of vitamins, minerals, and proteins.

Finally, Plaintiffs' "healthy" theory is premised on a *Shark Tank* episode in which Defendant "highlight[s] how consumers 'can't believe they are so healthy.'"  SAC ¶ 138.  Defendant argues that such statements are "just other consumers' opinions."  Doc. No. 91-1 at 29.  At this stage, the Court must accept Plaintiffs' factual allegations as true and construe them in Plaintiffs' favor.  *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Bell Atl. Corp.*, 550 U.S. at 555–56).  The Court finds that a reasonable consumer could be misled by consumer opinions about a product when those opinions are used to advertise and market the product in question.  The Court thus finds that this particular TV advertisement could lead a reasonable consumer to believe that Defendant's products are healthy.

Accordingly, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' "healthy" theory as it pertains to the "Made with 100% whole grains for a healthy end to your day" statement which appears on the Kodiak Cakes Oatmeal Dark Chocolate Cookie Mix and the Triple Chocolate Brownie Mix.  The Court **DENIES** the motion as to the "healthy" statements on the Double Chocolate Chunk Brownie Mix and Chocolate Fudge Brownie Mix, as well as the "healthy" description in the *Shark Tank* episode.

## V. CONCLUSION

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss.  The Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' claims to the extent they are based upon the following: (1) the "non-GMO" theory; (2) the "nourishing" allegations; and (3) the "Made with 100% whole grains for a healthy end to your day" statement which appears on the Kodiak Cakes Oatmeal Dark

Chocolate Cookie Mix and the Triple Chocolate Brownie Mix with prejudice. The Court **DENIES** the remainder of Defendant's motion.

This case has now been pending for nearly two years and it remains stalled in the pre-answer stage. The Court finds that none of the above deficiencies can be cured via amendment, and it is time to move forward. For that reason, and based on the procedural posture of this case, the Court **DIRECTS** Plaintiffs to file a Third Amendment Complaint, removing the above dismissed theories and allegations, on or before **November 19, 2021**. Defendant must then file an answer in the time prescribed by Federal Rule of Civil Procedure 15(a)(3).

The Court cautions Plaintiffs that amendment is solely granted to secure a clean operative pleading upon which the case can proceed. Amendment to include any further allegations, theories, or causes of action is not permitted.[10] Moreover, the Court reminds the parties that they must meet and confer and propose a joint briefing schedule on Plaintiffs' forthcoming motion for class certification within fourteen (14) days of the date of this Order. *See* Doc. No. 100.

**IT IS SO ORDERED**.

Dated: October 25, 2021

HON. MICHAEL M. ANELLO
United States District Judge

---

[10] This is without prejudice to Plaintiffs seeking leave to further amend after class certification.